UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

**LEXINGTON INSURANCE COMPANY
and NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH,**

Plaintiffs

v.

**VIRGINIA SURETY COMPANY, INC.,**

Defendant.

**Civil Action No. 04-11109 RGS**

### UNOPPOSED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiffs, Lexington Insurance Company ("Lexington") and National Union Fire Insurance

Company of Pittsburgh, PA ("National Union"), move, pursuant to Fed. R. Civ. P. 15, for leave to

file the attached Amended Complaint. In support of this motion, the plaintiffs state that on

September 17, 2004, the Court allowed Virginia Surety's Motion to Strike Exhibit E and Paragraph

17 of Plaintiffs' Original Complaint. The Amended Complaint deletes Exhibit E and Paragraph 17

of Plaintiff's Original Complaint, and makes other changes consistent with the Court's ruling.

Counsel for the Plaintiffs has discussed this matter with counsel for the Defendant. The

Defendant, Virginia Surety Company, Inc., does not oppose this motion.

WHEREFORE, Plaintiffs, Lexington and National Union, move for leave to file the attached

Amended Complaint.

**Dated:** November 23, 2004

Respectfully submitted,

Mark E. Cohen [BBO #089800]
Robert J. Maselek [BBO #564690]
**McCormack & Epstein**
One International Place - 7th Floor
Boston, MA 02110
(617) 951-2929 Phone
(617) 951-2672 Fax

*Attorneys for Plaintiffs Lexington Insurance*
*Company and National Union Fire*
*Insurance Company of Pittsburgh, PA*

ASSENTED TO:

Joseph G. Blute [BBO #047300]
John M. Stephan [BBO #649509]
**Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.**
One Financial Center
Boston, MA 02111
(617) 542-6000 Phone
(617) 542-2241 Fax

*Attorneys for Defendant Virginia Surety Company, Inc.*

#68466v1<MEBOS> -Lexington v. Virginia Surety - Motion to File Amen

2



EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

**LEXINGTON INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,**
                              Plaintiffs,

v.

**VIRGINIA SURETY COMPANY, INC.,**
                              Defendant.

**Civil Action No. 04-11109 RGS**

## PLAINTIFFS' AMENDED COMPLAINT

COME NOW Plaintiffs Lexington Insurance Company ("Lexington") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and file this Amended Complaint against Defendant Virginia Surety Company, Inc. ("Virginia Surety").

### I. INTRODUCTION

1.     Lexington and National Union seek a declaration from the Court as to their rights and responsibilities arising under numerous excess commercial general liability and stand alone excess liability insurance policies issued by Lexington and National Union to the National Coalition of Building Owners and Managers, Inc. and numerous coalition members which are insured under these policies. Specifically, Lexington and National Union seek a declaration that all of their policies are "true excess" policies and, therefore, neither Lexington nor National

Union has any obligation to pay any defense or indemnity costs in connection with any underlying claim, until Virginia Surety's $250,000 indemnity limits of liability are exhausted by payment of a judgment or settlement.

## II. PARTIES

2.      Plaintiff Lexington Insurance Company is a duly organized and existing insurance carrier, organized under the laws of the State of Delaware. Lexington maintains its principal place of business in Boston, Massachusetts.

3.      Plaintiff National Union is a duly organized and existing insurance carrier, organized under the laws of the State of Pennsylvania. National Union maintains its principal place of business in New York, New York. National Union and Lexington are sister companies.

4.      On information and belief, Defendant Virginia Surety is a duly organized and existing insurance carrier, organized under the laws of the State of Illinois. Virginia Surety maintains its principal place of business in Chicago, Illinois. Virginia Surety is authorized to do business in Massachusetts and has done business in Massachusetts throughout the period described in this pleading.

## III. JURISDICTION AND VENUE

5.      This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332, because no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000, exclusive of costs and interest.

6.      This court has personal jurisdiction over the Defendant because the Defendant maintains continuous and systematic contacts with the Commonwealth of Massachusetts and

because the Defendant insured risks located in Massachusetts and issued insurance policies to insureds located in Massachusetts.

7.    Venue is proper in this District because one of the Defendants resides in this District within the meaning of 28 U.S.C. § 1391(c).

## IV. FACTUAL BACKGROUND

8.    Beginning in May 2000, National Union began participating with an insurance broker, National Program Services, Inc. ("NPS"), in providing certain excess general liability insurance policies to various real estate owners and property managers who were members of the National Coalition of Property Owners and Managers/Insurance Purchasing Group Association. **Exhibit A**, incorporated herein, contains a list of these "program polices" issued by National Union to the National Coalition of Building Owners and Managers, Inc.  Although the number and locations of covered properties was constantly in a state of flux, the program policies covered numerous properties located in virtually every jurisdiction in the United States.

9.    All of the program policies are essentially identical to each other (with the exception of the policy period and the identity of insureds and the covered locations).  The program policies were all written over a $250,000 self-insured retention amount with defense costs inside the self-insured retention amounts. The self-insured retention endorsement in each of these policies states:

> It is agreed that: the Company's obligation under the coverages provided by this policy to pay 'ultimate net loss' on behalf of the 'insured,' applies only to the 'ultimate net loss' in excess of the self-insured retention stated below and subject to the limits of liability stated in the policy.  The terms of this policy, including those with respect to the Company's rights and duties with respect to defense of suits apply in excess of the application of the self-insured retention amount. . . . The insured shall at all times maintain a company-approved claims handling service with

> respect to the self-insured retention. . . . Self-insured retention $250,000
> per occurrence including expenses.

10.   Virginia Surety also participated in the NPS program.   The Virginia Surety policies were specifically written to provide primary coverage to Virginia Surety's insureds for the $250,000 self-insured retention amount in the National Union policies.  Upon information and belief, Virginia Surety insured most of the same entities that were insured by National Union and used the same policy form for each insured or group of related insured entities.

11.   The Virginia Surety policies provide that defense costs are outside Virginia Surety's limits of liability.  Specifically, the Virginia Surety policies provide:

> Attorney's fees incurred by us in the defense of the indemnitee,
> necessary litigation expenses incurred by us and necessary litigation
> expenses incurred by the indemnitee at our request will be paid as
> supplementary payments, notwithstanding the provisions of Paragraph
> 2B(2) of coverage A-Bodily injury and property damage liability (Sec. 1-
> Coverages), such payments will not be deemed to be damages for bodily
> injury and property damage and will not reduce the limits of insurance.

12.   After the National Coalition of Property Owners and Managers program was cancelled by National Union in mid-2002, National Union and Lexington wrote about seventy-seven one year or three-month policies to numerous entities that had been insured under the program. These "post- program policies" were all issued by either Lexington or National Union, with a self insured retention endorsement.  Some of these policies were issued by Lexington as stand alone excess policies.  **Exhibit B**, incorporated herein, contains a list of the post program policies issued by National Union and Lexington to individual insureds or groups of insureds which had been members of the National Coalition of Property Owners and Managers, Inc.

13.   Upon information and belief, Virginia Surety continued to provide primary coverage to most of National Union and Lexington's insureds for the $250,000 self-insured retention amount in the post program National Union/Lexington policies.

- 4 -

14. Until recently, Virginia Surety has always recognized that its policies provide the primary layer of coverage for this program and that the National Union and Lexington policies provide excess coverage. In correspondence that he sent to Jay Maul of York Claims,[1] dated September 23, 2003 (attached hereto as **Exhibit C**), Patrick Jops, Claims Manager for Virginia Surety, explicitly recognized that the National Union policies are excess over the Virginia Surety policies and that the Virginia Surety policies were specifically designed to apply to the National Union $250,000 self-insured retention amount. Jops asserted in this letter, however, for the first time, that the Virginia Surety policies would be exhausted when defense and indemnity costs combined in any one case reached $250,000; notwithstanding the clear language in the Virginia Surety policies saying that defense costs would be outside of the policy limits.

15. Specifically, in this letter, Mr. Jops acknowledged:

> The NUFIC policy may have required [the insured] . . . to satisfy a self-insured retention ("SIR") limit of Two Hundred Fifty Thousand Dollars ($250,000) including expenses. Accordingly, to the extent that the NUFIC policy requires the SIR limit, the NUFIC policy will be considered excess of the SIR. To the extent that there is no SIR limit, the NUFIC policy is primary and your policy obligations are triggered upon receipt of the notice of this underlying matter. . . . Our policy was issued with a limit of Two Hundred Fifty Thousand Dollars ($250,000) specifically to satisfy the SIR limit required by the NUFIC policy. To the extent that the SIR limit is applicable in this case, we have undertaken the defense of our mutual insured, up to the policy/SIR limit of Two Hundred Fifty Thousand Dollars ($250,000) including expenses. Upon exhausting the SIR limit of Two Hundred Fifty Thousand Dollars ($250,000) including expense and indemnity payments, the NUFIC policy will be triggered and NUFIC will take over the defense of its insured.

16. Mr. Maul responded to Jops' September 23, 2003 correspondence on October 9, 2003 (see **Exhibit D**). Mr Maul explained that he disagreed with Jops' position and said:

---

[1] York Claims is adjusting claims arising involving the policies at issue on behalf of National Union and Lexington; these claims are all being administered by Lexington at its home office in Massachusetts.

> As in the past, your full primary $250,000 indemnity limit should be made available for settlement purposes at the mediation, in an effort to resolve this matter, with no erosion by expenses incurred being applied. Based on our review of the portions of your policies relating to other insureds handled under this program, we interpret the terms and conditions of your policy to state that your $250,000 policy limits are primary, and your policy is responsible for all expenses until a $250,000 indemnity payment is issued when final settlement has been reached.

17.    Virginia Surety's position is contrary to the course of dealings between the parties, as Virginia Surety has recognized from the onset of the program that its policies provide the first layer of coverage and that National Union and Lexington are excess over the Virginia Surety policies.

## COUNT ONE

## DECLARATORY JUDGMENT

18.    Lexington and National Union repeat and reallege the allegations stated in paragraphs 1-17 of this Complaint as if such allegations were fully set forth in this paragraph.

19.    An actual controversy now exists between Lexington/National Union and Virginia Surety as to whether the Lexington/National Union policies are excess of the Virginia Surety policies.

20.    Lexington and National Union contend that their policies are true excess policies and therefore neither Lexington nor National Union has any obligation to pay any defense or indemnity costs in connection with any underlying claim, until Virginia Surety's $250,000 indemnity limits of liability are exhausted by the payment of a judgment or settlement. Virginia Surety disputes this contention.

21.    Virginia Surety asserts that the Lexington and National Union policies are primary policies, and that once Virginia Surety has paid $250,000 in defense and indemnity

- 6 -

costs combined in any one claim, Virginia Surety and National Union/Lexington have to share the loss. Lexington and National Union dispute this contention.

22.    Under all applicable laws, the policies of insurance issued by Lexington and National Union are excess over the Virginia Surety policies.

23.    Lexington and National Union seek and are entitled to a declaratory judgment resolving the above-described controversy. In particular, Lexington and National Union are entitled to—and hereby pray for—a judgment declaring that, under all applicable laws:

      a.    the National Union and Lexington policies enumerated in **Exhibits A** and **B** are excess over any and all policies that were issued by Virginia Surety to entities that are insured by Virginia Surety as well as by Lexington and Nation Union, and, therefore, neither Lexington nor National Union has any obligation to pay any defense or indemnity costs in connection with any underlying claim, until Virginia Surety's $250,000 indemnity limits of liability are exhausted by the payment of a judgment or settlement; and

      b.    the National Union and Lexington policies are not co-primary with the respective Virginia Surety policies.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray that the Court enter judgment against Defendant as follows:

      (1)    grant the declaration described in paragraph 23, above;

      (2)    awarding Plaintiffs their reasonable attorneys' fees;

(3)    awarding Plaintiffs their costs of suit; and

(4)    awarding Plaintiffs such other and further relief to

which they may be entitled

**Dated:**    November $\underline{23}$, 2004        Respectfully submitted,

Mark E. Cohen            [BBO #089800]
Robert J. Maselek        [BBO #564690]
**McCormack & Epstein**
One International Place - 7th Floor
Boston, MA    02110
(617) 951-2929 Phone
(617) 951-2672 Fax

*Attorneys for Plaintiffs Lexington Insurance
Company and National Union Fire Insurance
Company of Pittsburgh, PA*

#68990v1-MEBOS - Virginia Surety Amended Declaratoy Judgment Compla

- 8 -

# EXHIBIT A

## National Coalition of Property Owners & Managers, Inc. Program Policies

| National Union Policy Number | Term |
|---|---|
| 107-3202 | May 31, 2000 - June 30, 2003 |
| 107-3203 | July 1, 2000 - July 31, 2003 |
| 107-3204 | August1, 2000 - August 31, 2003 |
| 107-3205 | September 1, 2000 - September 30, 2003 |
| 015-1127 | October 1, 2000 - October 31, 2001 |
| 015-1128 | November 1, 2000 - November 30, 2001 |
| 015-1129 | December 1, 2000 - December 31, 2003 |
| 015-1138 | December 31, 2000 -December 31, 2002 |
| 015-1131 | January 1, 2001 - January 31, 2002 |
| 015-1134 | February 1, 2001 - February 15, 2004 |
| 015-1136 | March 1, 2001 - March 31, 2002 |
| 015-1140 | April 1, 2001 - April 30, 2002 |
| 015-1142 | April 1, 2001 - April 1, 2004 |
| 015-1143 | May 1, 2001 - May 31, 2002 |
| 015-1156 | June 1, 2001 - June 30, 2002 |
| 015-1158 | July 1, 2001 - July 31, 2002 |
| 015-1159 | August 1, 2001 - August 31, 2002 |
| 015-1161 | September 1, 2001 - September 30, 2002 |

62604.1

# EXHIBIT B

## National Program Services, Inc. Post-Program Individual Policies

| Insured | Policy No. | Term |
|---|---|---|
| Reckson Associates | 015-5614 | 9/2/02-8/22/02 |
| Dr. Stavitsky | 015-5619 | 5/31/02-8/29/02 |
| Windsor Park | 015-5665 | 7/23/02-8/22/02 |
| Raamco Int'l Prop. | 015-5612 | 5/31/02-5/31/03 |
| Langsam Prop. Serv. | 015-5642 | 7/1/02-7/1/03 |
| Ettore Realty Inc. | 015-5631 | 6/20/02-8/22/02 |
| Lafayette-Morrison | 401-5547 | 3/27/02-3/27/03 |
| Krause Management | 401-5554 | 4/10/02-4/10/03 |
| Pasqualina, Tobia | 401-5563 | 4/26/02-4/26/03 |
| Trans World Equities | 401-5560 | 4/17/02-4/17/03 |
| Atlantis Management | 015-1178 | 12/18/01-12/18/02 |
| Professional Coverage | 015-1189 | 3/1/02-3/1/03 |
| Richman Group | 015-5656 | 6/2/02-7/2/02 |
| Reckson Associates | 015-5613 | 6/1/02-8/22/02 |
| Neshaminy Square | 015-5615 | 6/1/02-6/1/03 |
| Ingerman Group | 015-5617 | 6/1/02-8/22/02 |
| Mark/Susan Edelstein | 015-5658 | 6/30/02-8/22/02 |
| 2855, Inc. | 015-5648 | 7/1/02-8/22/02 |
| Brisben Companies | 015-5610 | 6/1/02-8/22/02 |
| Axelrod Management | 401-5523 | 1/31/02-1/31/03 |
| Ceebraid Signal Mgmt | 401-5565 | 4/27/02-4/27/03 |
| Houlihan Parnes | 401-5562 | 4/19/02-4/19/03 |

1

| Wiener Realtors | 401-5532 | 3/12/02-3/12/03 |
|---|---|---|
| Henderson-Webb | 401-5518 | 12/31/01-12/31/02 |
| Mid-Atlantic Realty | 401-5528 | 2/10/02-2/10/03 |
| J. Brunnetti Constr. | 401-5570 | 4/30/02-4/30/03 |
| The Heights Mgmt. | 401-5517 | 12/31/01-12/31/02 |
| Woodward Properties | 401-5559 | 4/14/02-4/14/03 |
| The Korman Services | 401-5564 | 4/27/02-4/27/03 |
| Leib Puritz | 401-5556 | 4/12/02-4/12/03 |
| LSL Services | 401-5521 | 1/4/02-1/4/03 |
| M & D Management | 401-5567 | 4/30/02-4/30/03 |
| Wharton Equities | 401-5534 | 3/15/02-3/15/03 |
| Covered Bridge | 401-5519 | 12/31/01-12/31/02 |
| Renaissance | 401-5552 | 4/4/02-4/4/03 |
| Tri-State Mgmt. | 401-5549 | 3/31/02-3/31/03 |
| 59 Maiden Lane | 401-5527 | 2/3/02-2/3/03 |
| Capital Associates | 401-5525 | 2/1/02-2/1/03 |
| Prime Realty | 401-5557 | 4/13/02-4/13/03 |
| AW Perry | 401-5524 | 2/1/02-2/1/03 |
| Mark Winkler Co. | 015-5604 | 5/21/02-5/21/03 |
| Sterling Equities | 015-1174 | 12/10/01-12/10/02 |
| Aimco | 015-5691 | 12/31/02-12/31/03 |
| Essex Plaza Mgmt | 564-1742 | 3/1/02-3/1/03 |
| Eilat Management | 015-1131 | 1/1/03-1/1/04 |
| NOC IV New Jersey | 015-5633 | 6/17/02-8/22/02 |
| Rosin Company | 015-5655 | 7/14/02-8/22/02 |
| M & D Management | 401-5533 | 3/13/02-3/13/03 |

| | | |
|---|---|---|
| Col-Mor Apartments | 015-5689 | 12/9/02-12/9/03 |
| Gemini Realty | 015-5687 | 12/6/02-12/6/03 |
| 69 East 96th Street | 015-5625 | 5/25/02-8/25/02 |
| United Properties | 401-5531 | 3/9/02-3/9/03 |
| Kossman Devel. | 015-5649 | 6/30/02-6/30/03 |
| Bassuk Brothers | 401-5542 | 3/22/02-3/22/03 |
| Pashtrick Holding | 401-5551 | 4/1/02-4/1/03 |
| Lindsay Park | 015-5668 | 8/22/02-8/22/03 |
| Community Realty | 401-5561 | 4/15/02-4/15/03 |
| WP Realty | 015-5650 | 7/1/02-7/1/03 |
| Prime Realty | 015-5717 | 4/13/03-4/13/04 |
| Rosenberg Diamond | 015-5603 | 5/18/02 - 5/18/03 |
| Sigma Management | 015-5618 | 5/19/02 - 5/19/03 |
| Vesta Corporation | 401-5526 | 2/1/02 - 2/1/03 |
| Royal Cliff Enterprises | 401-5544 | 3/22/02 - 3/22/03 |
| Platzner International | 015-5628 | 6/2/02 - 7/2/02 |
| Marken Property | 401-5558 | 4/10/02 - 4/10/03 |
| ET-AL | 401-5545 | 4/1/02 - 4/1/03 |
| WP Realty | 015-5730 | 7/1/03 - 7/1/04 |
| Eilat Management | 015-5681 | 1/1/03 - 1/1/04 |
| A. Puritz | 015-5683 | 11/15/02 - 11/6/03 |
| Yegan Companies | 015-5670 | 8/31/02 - 8/31/03 |
| Benerofe Properties | 015-5662 | 7/30/02 - 8/22/02 |
| JM Jayson and Company | 015-5664 | 7/21/02 - 8/22/02 |
| Radar Realty | 015-5652 | 7/1/02 - 8/22/02 |
| East Realty Company | 015-5660 | 7/1/02 - 8/22/02 |

| | | |
|---|---|---|
| Estate of Paul Maslin | 015-5634 | 6/28/02 - 8/28/02 |
| Extreme Realty Inc. | 015-5635 | 6/24/02 - 6/24/03 |
| 69 East 96th Street, LLC | 015-5626 | 5/25/02 - 8/25/02 |

63316.1

4

# Exhibit C

# Virginia Surety Company, Inc.

175 West Jackson Blvd. Suite 1100
Chicago, Illinois 60604
An **Aon** * Company

September 23, 2003

York Claims Service
111 John St. 10th Floor
New York, New York 10038
Attn: Mr. Jay Maul, Claim Management

RECEIVED
OCT 0 6 2003

Insured: Korman Services
Plaintiff: Gina Hunjak
Date of Loss: June 2, 2001
Venue: Clementon, New Jersey
Cambridge File # 2001.0.863351.00110
AIG Policy # 0151140

Dear Mr. Maul:

This serves to memorialize that Virginia Surety Insurance Company is the carrier for Korman Services by virtue of a company policy issued under NPS7-001. It is our understanding that National Union Fire Insurance Company, hereinafter ("NUFIC"), issued a policy of insurance to Korman Services for the period during which Gina Hunjak's claims' arise. The basis of this correspondence is to advise that we are in receipt of this claim exposure and have been handling a suit arising from such filed by Gina Hunjak against our mutual insured, Korman Services.

The NUFIC policy may have required Korman Services to satisfy a self-insured retention ("SIR") limit of Two Hundred Fifty Thousand Dollars ($250,000) including expenses. Accordingly, to the extent that the NUFIC policy requires the SIR limit, the NUFIC policy will be considered excess of the SIR. To the extent that there is no SIR limit, the NUFIC policy is primary and your policy obligations are triggered upon receipt of the notice of this underlying matter.

Additionally, Virginia Surety Company, hereinafter ("VSC"), also issued a policy of insurance to Korman Services for the period during which Gina Hunjak's claims arise. Our policy was issued with a limit of Two Hundred Fifty Thousand Dollars ($250,000) specifically to satisfy the SIR limit required by the NUFIC policy.

To the extent that the SIR limit is applicable in this case, we have undertaken the defense of our mutual insured up to the policy/SIR limit of Two Hundred Fifty Thousand Dollars ($250,000) including expenses. Upon exhausting the SIR limit of Two Hundred Fifty Thousand Dollars ($250,000) including expense and indemnity payments, the NUFIC policy will be triggered and NUFIC will take over the defense of its insured.

As previously mentioned, to the extent that the NUFIC policy applicable in this case does not require an SIR, the NUFIC policy will be primary. In this situation, we will participate in a pro-rata sharing of expense and indemnity payments up to the limits of our policy. When our policy limits are exhausted, our policy obligations will expire and the NUFIC policy will then be the sole primary policy at which time NUFIC will be obligated to defend Korman Services.

Virginia Surety Insurance Company, through our third party administrator, Cambridge Integrated Services, has been advised that plaintiff has tendered a $3,000,000 settlement demand and mediation has been scheduled for October 13, 2003. Accordingly, this tender of policy limits may be inclusive of VSC reserving their right to secure the appropriate settlement agreements, partial releases, and covenants not to enforce judgment from both plaintiff and her counsel and the insured, Korman Services.

Please be advised that by submission of this tender, VSC does not intend to nor does it waive any of the terms or provisions of the referenced policy, or any of it rights under the law. Nothing contained in this letter should be construed as a waiver or estoppel of any of the terms and provisions of this policy, whether or not stated herein.

If you have any questions or wish to discuss this matter further, please do not hesitate to contact the undersigned; my direct line is 312-381-9552.

Sincerely,

*Patrick F. Jops*

Patrick Jops
VSC Claim Manager

cc: Cambridge

## EXHIBIT D



YORK CLAIMS SERVICE INC.

October 9, 2003

Patrick Jops, Claim Manager
Virginia Surety Company, Inc.
175 W. Jackson Boulevard, Suite 1100
Chicago, IL  60604

Our File No.:      AIM-22523A1
Assured:           Korman Services
Plaintiff:         Gina Hunjak
D/L:               6/2/01
CIS File No.:      2001.0.863351.00110

Dear Mr. Jops:

As you are aware, York Claims Service, Inc. is the authorized claims representative for National Union Fire Insurance Company in regard to the above-captioned matter.

We acknowledge receipt of your correspondence of 9/23/03 that was sent to our NY office and received in the proper handling office, Freehold, NJ, on 10/6/03. Please note, all correspondence regarding this program should be sent to our Freehold, NJ location.

We are reviewing the points you raise and will be responding more formally; however, at this time, we must advise you we do not agree with the position outlined in your correspondence.

In light of the short time frame we are dealing with, (mediation pending 10/13/03), we take the position that this case should be handled as all past mediations involving this program have been, where a case has a potential exposure in excess of your $250,000 primary limit. As in the past, your full primary $250,000 indemnity limit should be made available for settlement purposes at the mediation, in an effort to resolve this matter, with no erosion by expenses incurred being applied.

Based on our review of the portions of your policies relating to other insureds handled under this program, we interpret the terms and conditions of your policy to state that your $250,000 policy limits are primary, and your policy is responsible for all expenses until a $250,000 indemnity payment is issued when final settlement has been reached.

As we lack a complete copy of the Virginia Surety policy covering this insured, we ask that you provide us with a certified copy of your policy for our review.

2 PARAGON WAY  SUITE 600  FREEHOLD NJ 07728 • TEL 732-409-6200 FAX 732-409-6212

(N3)      10/22/2003 WED 17:37  [TX/RX NO 7268]  ☑002

Our File AJM-22523A1
October 9, 2003
Page 2

Once we have had an opportunity to review your policy we will provide you with our ultimate position.

Very truly yours,

YORK CLAIMS SERVICE, INC.

Jay R. Maul
Unit Manager

JRM/cb

2 PARAGON WAY  SUITE 600  FREEHOLD NJ 07728  •  TEL 732-409-6200 FAX 732-409-6212