# VIRGINIA SURETY COMPANY, INC.

## 123 NORTH WACKER DRIVE, CHICAGO, IL 60606

## COMMON POLICY DECLARATIONS

Policy No.: IPGA7000000120002                                    Renewal of No.  NEW

Named Insured          : Apartment Investment and Management Company (AIMCO)
and Mailing Address    : 3410 South Galena Street, #210, Denver, CO 80231

Policy Period:  From: 12/31/2000 to 12/31/2003
                at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

FORM OF INSURED'S BUSINESS: Real Estate Ownership / Management

THIS OCCURRENCE POLICY ALSO CONTAINS CLAIMS MADE COVERAGE.  THIS POLICY CONTAINS AGGREGATE
LIMITS; REFER TO SECTION III – LIMITS OF INSURANCE FOR DETAILS.

LIMITS OF INSURANCE:
Commercial General Liability ;

| | |
|---|---|
| GENERAL AGGREGATE (Other Than Products – Completed Operations) | $Not Applicable. |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $Not Applicable. |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 250,000. |
| EACH OCCURRENCE LIMIT | $ 250,000. |
| FIRE DAMAGE LIMIT (ANY ONE FIRE) | $  50,000. |
| MEDICAL EXPENSE LIMIT (ANY ONE PERSON) | $Not Applicable. |
| AUTOMOBILE LIABILITY (HIRED NONOWNED) PER ACCIDENT | $ 250,000. |

Commercial Automobile Liability ;

| | |
|---|---|
| GARAGEKEEPERS LEGAL LIABILITY – Each Occurrence Limit | $ 250,000. |
| Comprehensive &Collision – If Applicable | |

Employee Benefits Liability (Claims Made Form) :

| | |
|---|---|
| PER EMPLOYEE LIMIT | $ 250,000. |
| ANNUAL AGGREGATE LIMIT | $ 250,000. |

Deductible: None   /  Retroactive Date: None

FORMS AND ENDORSEMENTS:  See Page 2 – Forms Inventory.

ADVANCE PREMIUM: $9,027,582.00, due at inception.  Minimum Premium: Not Applicable
Rating Basis: No. of Units - Each; Square Ft.–Per 1000; No.of Empl.-Each; Receipts-Flat., Mgt.Cost-Per $1000.

---

Countersigned: 2-26-2001
Agency: Cedar Knolls, NJ 07927             By _____ *Vito B. Chuppuso*
                                                        Authorized Representative

THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S), COMMON POLICY CONDITIONS &
ENDORSEMENTS, IF ANY, ARE ISSUED AND FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED
POLICY, WHOSE COVERAGE IS ISSUED THROUGH MASTER POLICY NUMBER:IPGA7000000, FOR INSURANCE
PURCHASING GROUP ASSOCIATION, A PURCHASING GROUP DOMICILED IN THE STATE OF ILLINOIS.

---

Form No.: VSC-IPG-500D1100
Page 1 of 2

**DUPLICATE**

Virgina Surety Company, Inc.
Policy No.: IPGA7000000

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1

Virginia Surety Company
Policy Number: IPGA7000000

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A. CANCELLATION (Common Policy Conditions) is replaced by the following:**

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least;

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B. The following is added and supercedes any provision to the contrary:**

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

   a. You; and

   b. The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   a. On the expiration date, if:

      (1) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      (2) We have indicated our willingness to renew this policy to you or your representative; or

      (3) You have notified us or our agent that you do not want to renew this policy.

   b. On the effective date of any other insurance replacing this policy.

**C. Mailing of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1987, 1992

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES
### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1994

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Copyright, Insurance Services Office, Inc., 1994

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96   □

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96     □

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

CG 00 01 01 96

Copyright, Insurance Services Office, Inc., 1994

## 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

Copyright, Insurance Services Office, Inc., 1994

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96   □

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

# AIG    AMERICAN INTERNATIONAL COMPANIES
## UMBRELLA PRESTIGE
## COMMERCIAL UMBRELLA LIABILITY POLICY

# DECLARATIONS

☐ American Home Assurance Company

☐ American International South Insurance Company    ☒ National Union Fire Insurance Company of Pittsburgh, PA

☐ Illinois National Insurance Company    ☐ National Union Fire Insurance Company of Louisiana

(each of the above being a capital stock company)

**Executive Offices: 70 Pine Street, New York, NY 10270**

---

**POLICY NUMBER:** BE 7396968                    **RENEWAL OF:** 3570773

**ITEM 1. NAMED INSURED:** AIMCO PROPERTIES L.P.

**MAILING ADDRESS:** 1873 S. BELLAIRE ST.
DENVER, CO 80222

**ITEM 2. POLICY PERIOD:** FROM: June 1, 2000        TO: June 1, 2002
(at 12:01 A.M. standard time at the address of the Named Insured stated above)

**ITEM 3. LIMITS OF INSURANCE - COVERAGE A AND COVERAGE B**

The Limits of Insurance, subject to the terms of this policy, are:

A. $50,000,000        Each Occurrence

B. $50,000,000        General Aggregate (in accordance with Section IV. Limits of Insurance)

C. $50,000,000        Products-Completed Operations Aggregate (in accordance with Section IV. Limits of Insurance)

**ITEM 4. SELF-INSURED RETENTION - COVERAGE B:** $25,000        Each Occurrence

**ITEM 5. PREMIUM AND PREMIUM COMPUTATION**

ESTIMATED TOTAL ANNUAL EXPOSURE $396,638,000
RATES PER                            FLAT
MINIMUM PREMIUM                      $826,000
ADVANCE PREMIUM                      $826,000

**ITEM 6. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE:**
#1 - #12

**PRODUCER NAME:** LOCKTON COMPANIES OF COLORADO INC
**ADDRESS:**    4500 CHERRY CREEK DR., #400
DENVER, CO 802469000

Authorized Representative
Or Countersignature (In States
Where Applicable)        Date

73757 (2/99)
A-10031        Issue Date: 06/28/00

## COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word Insured means any person or organization qualifying as such under Section V. Definitions.

Other words and phrases that appear in bold print have special meaning. See Section V. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

## I. INSURING AGREEMENT - COVERAGE A: EXCESS FOLLOW FORM INSURANCE

A.   We will pay on behalf of the Insured those sums in excess of the total applicable limits of Scheduled Underlying Insurance that the Insured becomes legally obligated to pay as damages provided the damages would be covered by Scheduled Underlying Insurance, except for exhaustion of the total applicable limits of Scheduled Underlying Insurance by the payment of Loss.

B.   Coverage A shall follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of Scheduled Underlying Insurance conflict with any provisions of this policy, the provisions of this policy will apply.

C.   Coverage A of this policy will not, in any event, provide broader coverage than that provided by Scheduled Underlying Insurance.

D.   If we are prevented by law or statute from paying damages on behalf of the Insured, then we will indemnify the Insured for those sums in excess of the total applicable limits of Scheduled Underlying Insurance.

E.   The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

## II. INSURING AGREEMENT - COVERAGE B: UMBRELLA LIABILITY INSURANCE

A.   We will pay on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury not covered by Scheduled Underlying Insurance, provided that:

   1.   the Bodily Injury or Property Damage is caused by an Occurrence happening anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period.

   2.   the Personal Injury or Advertising Injury is caused by an Occurrence happening anywhere, and the Occurrence takes place during the Policy Period.

B.   Coverage B will not apply to damages that would have been covered by Scheduled Underlying Insurance even if the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss.

73756 (5/99)
AH0048
© 1999 American International Group, Inc.

C. If we are prevented by law or statute from paying damages on behalf of the insured, then we will indemnify the insured for those sums in excess of the Self Insured Retention.

D. The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

---

### III. DEFENSE PROVISIONS

A. We shall have the right and duty to defend any Suit against the Insured that seeks damages covered by this policy:

 1. under Coverage A, when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss.

 2. under Coverage B, when the damages sought because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury would not be covered by Scheduled Underlying Insurance.

We shall have the right and duty to defend any Suit against the Insured that seeks damages covered by this policy, even if the Suit is groundless, false or fraudulent.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B. When we assume the defense of any Suit against the Insured that seeks damages covered by this policy, we will:

 1. investigate, negotiate and settle the Suit as we deem expedient; and

 2 pay the following supplementary payments to the extent that such payments are not covered by Scheduled Underlying Insurance:

  a. premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

  b. premiums on appeal bonds required by law to appeal the Suit, but we are not obligated to apply for or furnish any such bond;

  c. all costs taxed against the Insured in the Suit;

  d. pre-judgment interest awarded against the Insured on that part of the judgment we pay. If we make a settlement offer within the applicable Limits of Insurance of this policy that is acceptable to the claimant, we will not pay any pre-judgment interest accruing after we make such offer;

  e. post-judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

  f. the Insured's expenses incurred at our request or with our consent.

C. Except as provided in Paragraph A. above, we shall have no duty to defend any Suit against the Insured. We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

D. We will not defend any Suit or investigate any claim after the exhaustion of the applicable Limits of Insurance of this policy by the payment of Loss.

MAY-
Jul-17-0
CSIC
P.19/23
Case 1:04-cv-11109-RGS    Document 17-4    Filed 12/06/2004    Page 18 of 24
JUL-17-2005


**YORK** CLAIMS SERVICES INC.

Date  _7/17/03_

**Please deliver this fax to:**

_Linda Peary / c.c Sloane-F. Chris_
NAME

_Cambridge_
COMPANY/OFFICE

_800-693-4641  866-862-5436_
FAX NUMBER

_Paul O'Donnell_
FROM

_x# 2701_
SENDER'S PHONE NUMBER

_5_                      _re: Hopkins v. Eagle's Nest._
Number of Pages FAXED        _File # AIM. 2258041_

Additional Comments:  _Linda, Attached is our_
_dec page, forms and SIR endorse-_
_ment which limits defense obligation to_
_excess of the 250K SIR. Please_
_confirm Tender of your policy limit_
_to National Union Fire.    Thanks_
_Paul O'Donnell_

MAY-05-20      CSLC      P-20/23
JUl-17-03   04
JUL-17-2003(THU) 14:44       212 732 1789  P.01/03
JUN-06-2003  16:19     YORK CLAIMS SERVICE

212 344 3281 TO 7321799      P.02/75

DEC    JAY MAUL, FAX 7324098212

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA
## NEW YORK, NEW YORK
## COMMERCIAL GENERAL LIABILITY POLICY
## DECLARATIONS

Renewal of: N/A

Policy No.: 0151158

Item 1. Named Insured and Address: (No., Street, Town or City, County, State)

Apartment Investment & Mgt. Co./Real Estate Risk Management
C/O NPP Specialty Coverages of New York, Inc.
59 John Street, 4th Floor
New York, New York 10038

Item 2. Policy Period: (Mo. Day Yr.)     From: December 31, 2000  to: December 31, 2003 12:00 A.M., standard
time
at the address of the Named Insured as stated herein.

The Named Insured is: Per Named Insured Endorsement Schedule Attached ( Endorsement #1 )

Business of the Named Insured is: Real Estate Owner &/or Management

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in
this policy.
                                                          Free Trade Zone (Class 1)

Item 3. Limits of Insurance

| | |
|---|---|
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit | $ 50,000 - Any one fire |
| Personal & Advertising Injury Limit | $ 1,000,000 - Any person or organization |
| General Aggregate Limit | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ 1,000,000 |

Item 4. Location of all premises owned by, rented to or controlled by the Named Insured: As per Endorsement #1
Interest of Named Insured in such premises:   As per application on file with Company
Part occupied by Named Insured:   As per application on file with Company

Item 5. Premium = $1,914,942

| Hazard Description | Premium Basis | Rate | Advance Premium |
|---|---|---|---|
| | | Included | Included $1,251,064 |
| Real Estate Owner &/or Management | 1,331,000 Square Feet | Included | |
| | 276,851 | | $1,914,042 |
| | Total Advance Premium For This Policy | | $1,914,042 |

Annual Minimum Premium for this Policy: $1,914,942
Minimum Earned Premium at Inception for this Policy: $889,915

Item 6. Audit Period: Annual

Item 7. Forms and Endorsements attached hereto: As per Schedule attached.

Date Issued: _____

AUTHORIZED REPRESENTATIVE OR
COUNTERSIGNATURE (in states where applicable)

LEXDCC-CCL-DEC (1/96)
LX905

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## SELF INSURED RETENTION-PER OCCURRENCE

It is agreed that:

1. The Company's obligation, under the coverages provided by this policy, to pay "Ultimate Net Loss" on behalf of the "Insured", applies only to the "Ultimate Net Loss" in excess of the Self Insured Retention stated blow, and subject to the Limits of Liability stated in the policy. The terms of this policy including those with respect to the Company's rights and duties with respect to defense of suits apply in excess of the application of the Self Insured Retention amount.

2. The "Insured" shall immediately notify the Company in writing of any "Claim" to which this policy applies which

   a) involved serious "Bodily Injury" or Fatality;
   b) the "Insured" has received notice of suit in which the damage demand exceeds the Self Insured Retention;
   c) may exceed 25% of the Self Insured Retention.

3. The "Insured" shall at all times maintain a Company approved claims handling service with respect to the Self Insured Retention.

4. The Self Insured Retention stated below shall apply to the coverages afforded by this policy on a "Per Occurrence" basis to the "Ultimate Net Loss as a result of any one "Occurrence" regardless of the number of persons or organizations who sustain damages because of the occurrence.

Self Insured Retention:        $250,000 per "Occurrence" including expenses.

——————————————<br>
Authorized Representative OR<br>
Countersignature (In state where applicable)

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA
### NEW YORK, NEW YORK
### COMMERCIAL GENERAL LIABILITY POLICY
### DECLARATIONS

Renewal of: N/A

Policy No.: 0151155

Item 1. Named Insured and Address:  (No., Street, Town or City, County, State)

National Coalition of Property Owners & Managers. Inc. &/or
Insurance Purchasing Group Association, LLC ( as per Endorsement #1 )
C/O NPP Specialty Coverage's of New York, Inc.

FORMS SCHEDULE

Named Insured:    National Coalition of Property Owners & Managers, Inc. &/or Insurance Purchasing Group Association, LLC ( as per Endorsement #1 )

Effective Date: June 1, 2001

Policy No:    015 11 56

| Form Number | Edition Date | Title |
|---|---|---|
| LEX OCC CGL | 01/96 | NUFIC DEC |
| | | NUCLEAR ENERGY LIABILITY EXCLUSION |
| ENDT#1 | | NAMED INSURED ENDORSEMENT |
| ENDT#2 | | ADDTN'L INSURED-DESIGNATED PERSON |
| ENDT#3 | | ADDTN'L INSURED-MANAGERS OR LESSORS |
| ENDT#4 | | ADDTN'L INSURED-CONDOMINIUM UNIT OWNERS |
| ENDT#5 | | ADDTN'L INSURED-LESSOR OF LEASED EQUIPMENT |
| ENDT#6 | | ADDTN'L INSURED-DESIGNATED PERSON |
| ENDT#7 | | AMENDMENT AGGREGATE LIMITS/PER LOCATION |
| ENDT#8 | | NY CHANGES-CALCULATION OF PREMIUM |
| ENDT#9 | | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| ENDT#10 | | PESTICIDE OR HERBICIDE APPLICATOR COVERAGE |
| ENDT#11 | | ADDTN'L INSURED-CONTROLLING INTEREST |
| ENDT#12 | | AMENDMENT OF POLLUTION EXCLUSION |
| ENDT#13 | | ADDTN'L INSURED-MORTGAGEE, ASSIGNEE |
| ENDT#14 | | ADDITIONAL NAMED INSUREDS SCHEDULE |
| ENDT#15 | | ADDITIONAL NAMED INSUREDS ENDORSEMENT |
| ENDT#16 | | CANCELLATION/NONRENEWAL/COVERAGE |
| ENDT#17 | | EMPLOYEE BENEFITS LIABILITY INSURANCE |
| ENDT#18 | | EMPLOYMENT RELATED PRACTICES |
| ENDT#19 | | NOTICE OF OCCURRENCE |

FORMS SCHEDULE (CONTINUED)

Named Insured:     National Coalition of Property Owners & Managers, Inc. &/or Insurance Purchasing
                   Group Association, LLC ( as per Endorsement #1 )

Policy No:     015 1156                        Effective Date: June 1, 2001

Form Number         Edition Date          Title

ENDT#20                                 KNOWLEDGE OF OCCURRENCE

ENDT#21                                 HIRED AND NONOWNED WATERCRAFT

ENDT#22                                 COVERAGE AMENDMENT ENDORSEMENT

ENDT#23                                 NET LEASED PROPERTY EXTENSION

ENDT#24                                 AMENDMENT OF POLLUTION EXCLUSION

ENDT#25                                 LEAD EXCLUSION ENDORSEMENT

ENDT#26                                 REAL ESTATE PROPERTY MANAGED ENDORSEMENT

ENDT#27                                 AGREED RATING DATE AND RATING PERIOD

ENDT#28                                 SELF INSURED RETENTION-PER OCCURRENCE

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Stephan, John**

| | |
|---|---|
| From: | ECFnotice@mad.uscourts.gov |
| ent: | Thursday, July 29, 2004 11:25 AM |
| To: | CourtCopy@mad.uscourts.gov |
| Subject: | Activity in Case 1:04-cv-11109-RGS Lexington Insurance Company et al v. Virginia Surety Company, Incorporated "Add and Terminate Attorneys" |

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

United States District Court
District of Massachusetts

Notice of Electronic Filing
The following transaction was received from Flaherty, Elaine entered on 7/29/2004 at 11:24 AM EDT and filed on 7/29/2004

Case Name: Lexington Insurance Company et al v. Virginia Surety Company, Incorporated
Case Number: 1:04-cv-11109 https://ecf.mad.uscourts.gov/cgi-bin/DktRpt.pl?92412

Document Number:
Copy the URL address on the line below into the location bar of your Web browser to view the document:

Docket Text:
***Attorney John Michael Stephan for Virginia Surety Company, Incorporated added.    (Flaherty, Elaine)

The following document(s) are associated with this transaction:

1:04-cv-11109 Notice will be electronically mailed to:
Joseph G. Blute                          jblute@mintz.com

John Michael Stephan                      jstephan@mintz.com

1:04-cv-11109 Notice will not be electronically mailed to:
Mark E. Cohen
McCormack & Epstein
One International Place
Boston, MA 02110-0140

## MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

Boston
Washington
Reston
New York
New Haven
Los Angeles
London



One Financial Center
Boston, Massachusetts 02111
617 542 6000
617 542 2241 fax
www.mintz.com

**John M. Stephan**

Direct dial 617 832 6940
jmstephan@mintz.com

July 28, 2004

**BY HAND**

Civil Clerk
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

> Re:   *Lexington Insurance Company et al. v. Virginia Surety Company, Inc.,*
> Civ. A. No. 04-11109 RGS

Dear Sir/Madam:

Enclosed for filing is Defendant Virginia Surety Company's Answer and Counterclaim to Plaintiffs' Original Complaint. Also enclosed for filing is Defendant Virginia Surety Company's Motion to Strike Exhibit E and Paragraph 17 of Plaintiffs' Original Complaint.

Kindly acknowledge receipt of these documents by date-stamping the enclosed copy of this letter and returning it to our messenger.

Sincerely,

John M. Stephan

Enclosure

cc:   Mark E. Cohen, Esq. (by first-class mail with enclosures)
      Joseph G. Blute, Esq.
      Nicholas C. Cramb, Esq.