UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LEXINGTON INSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

    Plaintiffs,

v.

VIRGINIA SURETY COMPANY, INC.

    Defendant.

CIVIL ACTION NO. 04-11109 RGS

### DEFENDANT VIRGINIA SURETY COMPANY'S
### FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO
### NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Definitions and Instructions below, Defendant Virginia Surety Company, Inc. hereby requests that Plaintiff National Union Fire Insurance Company produce and serve copies of the documents identified below to the offices of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, counsel for the Defendant, within thirty (30) days.

### DEFINITIONS

1.    "Complaint," as used herein, refers to Plaintiffs' Original Complaint, filed May 26, 2004.

2.    "Person," as used herein, means any natural person or any business, legal, or governmental entity or association.

3.    The terms "contact" and "communications" mean the transmittal of any form of information (including, without limitation, in the form of facts, ideas, inquiries, or otherwise) by

any means (including oral or written), from one person or entity to another. A "communication between A and B" includes both communication from A to B and communication from B to A. Contact and/or communications include, but are not limited to, correspondence between individual persons or business entities using electronic mail, facsimile and any other computer-assisted means of correspondence whether or not hard copies of such contact and/or communication were maintained.

   4.  "Document" or "documents," as used herein, shall be defined to the broadest extent permitted by Rule 34(a) and includes wherever applicable, without limitation, the original, all non-identical copies, and all drafts of writings, typewritings, microfilms, electronic mail, facsimiles, documents maintained on any computer hard-drive or software from which copies can be retrieved, drawings, graphs, charts, photographs, phone records, computer inputs and printouts, and other data compilations of any description whatsoever, including, without limiting the generality of the foregoing, minutes, memoranda, records, reports, diaries, journals, notes, witness statements, analyses, studies, appraisals, surveys, circulars, bulletins, books of account, tables, computer models or programs, recordings, presentations, summaries, telexes, correspondence, telegrams, letters, messages (including reports, notes, minutes and memoranda of telephone conversations and meetings and conferences), calendar and diary entries, periodicals, seminar materials, ledgers, bank statements, financial statements, checks and canceled checks, check stubs, applications, proposals, contracts, agreements, working papers, invoices, orders, receipts, certificates of condition, guidelines, manuals, regulations, by-laws, books, pamphlets, advertisements, scripts, transcripts, and any other designated documents specifically referred to in the following numbered requests.

5. The term "relating to" means embodying, containing, comprising, indicating, concerning, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

6. "Concern" and "concerning," as used herein, means embodying, containing, comprising, indicating, concerning, relating to, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

7. The term "Lexington" as used herein, means Plaintiff Lexington Insurance Company and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

8. The term "NUFIC" as used herein, means Plaintiff National Union Fire Insurance Company of Pittsburgh, PA and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

9. The terms "VSC" or "Defendant" as used herein, mean Defendant Virginia Surety Company and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

3

10. The term "Plaintiffs" means Lexington and NUFIC, whether alone or in combination, and any of their agents or representatives, or any other persons acting on their behalf, including but not limited to, attorneys.

11. The term "Purchasing Group," as used herein, means the National Coalition of Building Owners and Managers, Inc./Insurance Purchasing Group Association, and includes any of its members.

12. The term "Program," as used herein, means participation by Plaintiffs or VSC with NPS in providing policies of insurance to members of the Purchasing Group.

13. The term "Program Policies," as used herein, includes each and every policy of insurance issued by Plaintiffs to the Purchasing Group.

14. The term "Post-Program Policies," as used herein, includes each and every policy of insurance, other than the Program Policies, issued by Plaintiffs to entities that had been insured under the Program.

15. The term "Plaintiffs' Policies," as used herein, means the Program Policies and the Post-Program Policies.

16. The term "VSC Policies," as used herein, means any policy of insurance issued by VSC to the Purchasing Group.

17. The term "NPS" as used herein, means National Program Services, Inc. and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

18. The use of the singular in this Request includes the plural, and the use of the plural includes the singular. The use of the word "and" in this Request includes the word "or," and the use of the word "or" in this Request includes the word "and." The use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb so used.

## INSTRUCTIONS

19. You are requested to produce all documents that are in your custody, possession or control, including all documents that are in the custody of your servants, attorneys, consultants, accountants or agents, regardless of the location of such documents.

20. In responding to this Request, pursuant to Rule 34 of the Federal Rules of Civil Procedure, you are requested to state which documents you will produce for inspection and copying. If you object to a request for production, you are requested to state the precise grounds upon which your objection rests.

21. With respect to each document withheld from production on any basis whatsoever, please state or identify: (a) the date of the document; (b) the document's author(s) or originator(s) and any persons involved in creating the document; (c) the title and duties of the author(s) or originators(s) and all persons involved in creating the document; (d) all recipients of the document and all persons coming into possession of the documents; (e) the subject matter(s) of the document; (f) the number of pages of the document; and (g) the precise basis, in detail, for the privilege claimed or the objection made with respect to the document.

22. In the event that you object to, or claim a privilege with respect to any Request for Production, in whole or in part, you are required to produce all documents (or portions thereof)

requested in that portion of the Request for Production as to which you have no objection or claim of privilege.

23.  If any document responsive to a Request for Production was, but no longer is, in your possession, custody or control, please identify that document and state whether any such document (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily; or (d) has been otherwise disposed of, and, in each instance, please explain in detail the circumstances surrounding any such disposition thereof.

24.  All documents are to be produced in or with their original file folders, file jackets, envelopes, or covers or copies thereof.

25.  This First Request for Production of Documents shall be deemed continuing so as to require an immediate supplemental response if any additional responsive documents are discovered, located, identified or obtained after you complete production of documents responsive to this Request for Production of Documents.

## **REQUESTS FOR PRODUCTION**

1.  All Program Policies, including, but not limited to, those listed in Exhibit A to the Complaint.

2.  All Post-Program Policies, including, but not limited to, those listed in Exhibit B to the Complaint.

3.  All documents relating to any endorsement to any of the Plaintiffs' Policies referring to or establishing a self-insured retention or self-insured retention amount.

4.  All communications with NPS and/or Vito Gruppuso, including proposed meeting agendas, concerning or describing VSC's policies, the Program, and/or NUFIC's and/or Lexington's participation in the Program.

6

5. All communications with NPS and/or Vito Gruppuso concerning or reflecting decisions or threats to end participation in the Program.

6. All documents that describe or explain the relationship between VSC's policies and NUFIC's and/or Lexington's policies issued in connection with the NPS Program.

7. All contracts or agreements with NPS, including, but not limited to, managing general agency agreements.

8. All communications with the Purchasing Group.

9. All communications with insureds covered by the Plaintiffs' Policies.

10. All communications regarding claims made under any of the Plaintiffs' Policies.

11. All underwriting guidelines relating to the Plaintiffs' Policies.

12. All underwriting files relating to the Plaintiffs' Policies.

13. Copies of exemplar policy forms (i.e. standard terms and conditions) for all excess, umbrella and commercial general liability policies sold by Plaintiffs from January 1, 1999 to the present

14. All excess and umbrella policies issued by NUFIC, Lexington, or any other AIG-affiliated entity that insured Program participant insureds for amounts beyond those covered by the VSC and NUFIC/Lexington policies that were issued under the NPS Program.

15. All excess and umbrella policies that cover the same risks covered by the Plaintiffs' Policies.

16. All reinsurance agreements, contracts, policies, cover notes, and/or placement slips covering the Plaintiffs' Policies and/or the risks covered by the Plaintiffs' Policies.

17. All documents relating to forecasted profit or loss from the Program.

18. All documents relating to the Plaintiffs' participation in the Program, including any and all documents concerning whether or not to participate in the Program.

19. All documents concerning the events and allegations that are the subject of the Complaint.

20. All documents relating to the contention in paragraph 14 of the Complaint that "Until recently, Virginia Surety has always recognized that its policies provide the primary layer of coverage for the program and that the National Union and Lexington policies provide excess coverage."

21. All documents relating to any interpretation of the Plaintiffs' Policies.

22. All documents relating to premiums for the Plaintiffs' Policies, including but not limited to, premium indications prepared for insureds or prospective insureds.

23. All communications with any third party administrators involved in the claims handling for the program and the Plaintiffs' Policies, including but not limited to, York Claims Administrators, Tower Risk Management, Cambridge Integrated Services Group, Inc. and Countrywide Services Group.

24. All documents relating to reinsurance for the risks covered by the Plaintiffs' Policies.

25. All documents relating to the VSC Policies.

26. All communications with VSC relating to the subject matter of the Complaint.

27. All communications with any governmental regulatory agency, whether state, federal, or otherwise, including but not limited to, any insurance departments and divisions, relating to the Plaintiff's Policies, the Program, or the VSC Policies.

28. All documents concerning premium financing for the Plaintiffs' Policies.

29. All communications with the Apartment Investment and Management Company ("AIMCO") relating to the Plaintiffs' Policies or the Program.

30. All documents relating to claims auditing for the Plaintiffs' Policies.

31. All documents relating to expected loss ratios on participation in the Program.

32. All documents relating to denials of coverage under the Plaintiffs' Policies.

33. All documents concerning claims arising from the Program brought against errors and omissions policies of the Plaintiffs, the Plaintiffs' third party administrators or NPS.

Respectfully submitted,

VIRGINIA SURETY COMPANY, INC.

By Its Attorneys,

Joseph G. Blute (BBO# 047300)
John M. Stephan (BBO# 649509)
Nicholas C. Cramb (BBO# 654368)
MINTZ LEVIN COHN FERRIS
 GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (fax)

Dated: November 17, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing **DEFENDANT VIRGINIA SURETY COMPANY'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**, was served this 17th day of November, 2004 on counsel of record for all other parties, by hand-delivering a copy to:

Mark E. Cohen, Esq.
McCormack & Epstein
One International Place – 7th Floor
Boston, MA 02110

_____
Nicholas C. Cramb

LIT 1489416v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LEXINGTON INSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

    Plaintiffs,

v.

VIRGINIA SURETY COMPANY, INC.

    Defendant.

CIVIL ACTION NO. 04-11109 RGS

### DEFENDANT VIRGINIA SURETY COMPANY'S
### FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS
### TO LEXINGTON INSURANCE COMPANY

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Definitions and Instructions below, Defendant Virginia Surety Company, Inc. hereby requests that Plaintiff Lexington Insurance Company produce and serve copies of the documents identified below to the offices of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111, counsel for the Defendant, within thirty (30) days.

### DEFINITIONS

1.     "Complaint," as used herein, refers to Plaintiffs' Original Complaint, filed May 26, 2004.

2.     "Person," as used herein, means any natural person or any business, legal, or governmental entity or association.

3.     The terms "contact" and "communications" mean the transmittal of any form of information (including, without limitation, in the form of facts, ideas, inquiries, or otherwise) by

any means (including oral or written), from one person or entity to another. A "communication between A and B" includes both communication from A to B and communication from B to A. Contact and/or communications include, but are not limited to, correspondence between individual persons or business entities using electronic mail, facsimile and any other computer-assisted means of correspondence whether or not hard copies of such contact and/or communication were maintained.

  4. "Document" or "documents," as used herein, shall be defined to the broadest extent permitted by Rule 34(a) and includes wherever applicable, without limitation, the original, all non-identical copies, and all drafts of writings, typewritings, microfilms, electronic mail, facsimiles, documents maintained on any computer hard-drive or software from which copies can be retrieved, drawings, graphs, charts, photographs, phone records, computer inputs and printouts, and other data compilations of any description whatsoever, including, without limiting the generality of the foregoing, minutes, memoranda, records, reports, diaries, journals, notes, witness statements, analyses, studies, appraisals, surveys, circulars, bulletins, books of account, tables, computer models or programs, recordings, presentations, summaries, telexes, correspondence, telegrams, letters, messages (including reports, notes, minutes and memoranda of telephone conversations and meetings and conferences), calendar and diary entries, periodicals, seminar materials, ledgers, bank statements, financial statements, checks and canceled checks, check stubs, applications, proposals, contracts, agreements, working papers, invoices, orders, receipts, certificates of condition, guidelines, manuals, regulations, by-laws, books, pamphlets, advertisements, scripts, transcripts, and any other designated documents specifically referred to in the following numbered requests.

5. The term "relating to" means embodying, containing, comprising, indicating, concerning, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

6. "Concern" and "concerning," as used herein, means embodying, containing, comprising, indicating, concerning, relating to, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

7. The term "Lexington" as used herein, means Plaintiff Lexington Insurance Company and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

8. The term "NUFIC" as used herein, means Plaintiff National Union Fire Insurance Company of Pittsburgh, PA and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

9. The terms "VSC" or "Defendant" as used herein, mean Defendant Virginia Surety Company and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

10. The term "Plaintiffs" means Lexington and NUFIC, whether alone or in combination, and any of their agents or representatives, or any other persons acting on their behalf, including but not limited to, attorneys.

11. The term "Purchasing Group," as used herein, means the National Coalition of Building Owners and Managers, Inc./Insurance Purchasing Group Association, and includes any of its members.

12. The term "Program," as used herein, means participation by Plaintiffs or VSC with NPS in providing policies of insurance to members of the Purchasing Group.

13. The term "Program Policies," as used herein, includes each and every policy of insurance issued by Plaintiffs to the Purchasing Group.

14. The term "Post-Program Policies," as used herein, includes each and every policy of insurance, other than the Program Policies, issued by Plaintiffs to entities that had been insured under the Program.

15. The term "Plaintiffs' Policies," as used herein, means the Program Policies and the Post-Program Policies.

16. The term "VSC Policies," as used herein, means any policy of insurance issued by VSC to the Purchasing Group.

17. The term "NPS" as used herein, means National Program Services, Inc. and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

18. The use of the singular in this Request includes the plural, and the use of the plural includes the singular. The use of the word "and" in this Request includes the word "or," and the use of the word "or" in this Request includes the word "and." The use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb so used.

## INSTRUCTIONS

19. You are requested to produce all documents that are in your custody, possession or control, including all documents that are in the custody of your servants, attorneys, consultants, accountants or agents, regardless of the location of such documents.

20. In responding to this Request, pursuant to Rule 34 of the Federal Rules of Civil Procedure, you are requested to state which documents you will produce for inspection and copying. If you object to a request for production, you are requested to state the precise grounds upon which your objection rests.

21. With respect to each document withheld from production on any basis whatsoever, please state or identify: (a) the date of the document; (b) the document's author(s) or originator(s) and any persons involved in creating the document; (c) the title and duties of the author(s) or originators(s) and all persons involved in creating the document; (d) all recipients of the document and all persons coming into possession of the documents; (e) the subject matter(s) of the document; (f) the number of pages of the document; and (g) the precise basis, in detail, for the privilege claimed or the objection made with respect to the document.

22. In the event that you object to, or claim a privilege with respect to any Request for Production, in whole or in part, you are required to produce all documents (or portions thereof)

requested in that portion of the Request for Production as to which you have no objection or claim of privilege.

23. If any document responsive to a Request for Production was, but no longer is, in your possession, custody or control, please identify that document and state whether any such document (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily; or (d) has been otherwise disposed of, and, in each instance, please explain in detail the circumstances surrounding any such disposition thereof.

24. All documents are to be produced in or with their original file folders, file jackets, envelopes, or covers or copies thereof.

25. This First Request for Production of Documents shall be deemed continuing so as to require an immediate supplemental response if any additional responsive documents are discovered, located, identified or obtained after you complete production of documents responsive to this Request for Production of Documents.

## REQUESTS FOR PRODUCTION

1. All Program Policies, including, but not limited to, those listed in Exhibit A to the Complaint.

2. All Post-Program Policies, including, but not limited to, those listed in Exhibit B to the Complaint.

3. All documents relating to any endorsement to any of the Plaintiffs' Policies referring to or establishing a self-insured retention or self-insured retention amount.

4. All communications with NPS and/or Vito Gruppuso, including proposed meeting agendas, concerning or describing VSC's policies, the Program, and/or NUFIC's and/or Lexington's participation in the Program.

5.  All communications with NPS and/or Vito Gruppuso concerning or reflecting decisions or threats to end participation in the Program.

6.  All documents that describe or explain the relationship between VSC's policies and NUFIC's and/or Lexington's policies issued in connection with the NPS Program.

7.  All contracts or agreements with NPS, including, but not limited to, managing general agency agreements.

8.  All communications with the Purchasing Group.

9.  All communications with insureds covered by the Plaintiffs' Policies.

10. All communications regarding claims made under any of the Plaintiffs' Policies.

11. All underwriting guidelines relating to the Plaintiffs' Policies.

12. All underwriting files relating to the Plaintiffs' Policies.

13. Copies of exemplar policy forms (i.e. standard terms and conditions) for all excess, umbrella and commercial general liability policies sold by Plaintiffs from January 1, 1999 to the present

14. All excess and umbrella policies issued by NUFIC, Lexington, or any other AIG-affiliated entity that insured Program participant insureds for amounts beyond those covered by the VSC and NUFIC/Lexington policies that were issued under the NPS Program.

15. All excess and umbrella policies that cover the same risks covered by the Plaintiffs' Policies.

16. All reinsurance agreements, contracts, policies, cover notes, and/or placement slips covering the Plaintiffs' Policies and/or the risks covered by the Plaintiffs' Policies.

17. All documents relating to forecasted profit or loss from the Program.

29. All communications with the Apartment Investment and Management Company ("AIMCO") relating to the Plaintiffs' Policies or the Program.

30. All documents relating to claims auditing for the Plaintiffs' Policies.

31. All documents relating to expected loss ratios on participation in the Program.

32. All documents relating to denials of coverage under the Plaintiffs' Policies.

33. All documents concerning claims arising from the Program brought against errors and omissions policies of the Plaintiffs, the Plaintiffs' third party administrators or NPS.

Respectfully submitted,

VIRGINIA SURETY COMPANY, INC.

By Its Attorneys,

*/s/ Nicholas Cramb*

Joseph G. Blute (BBO# 047300)
John M. Stephan (BBO# 649509)
Nicholas C. Cramb (BBO# 654368)
MINTZ LEVIN COHN FERRIS
 GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (fax)

Dated: November 17, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing **DEFENDANT VIRGINIA SURETY COMPANY'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO LEXINGTON INSURANCE COMPANY**, was served this 17th day of November, 2004 on counsel of record for all other parties, by hand-delivering a copy to:

Mark E. Cohen, Esq.
McCormack & Epstein
One International Place -- 7th Floor
Boston, MA 02110

_____
Nicholas C. Cramb

LIT 1483579v1