UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LEXINGTON INSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,

    Plaintiffs,

v.

VIRGINIA SURETY COMPANY, INC.

    Defendant.

CIVIL ACTION NO. 04-11109 RGS

### DEFENDANT VIRGINIA SURETY COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR MODIFICATION OF THE SCHEDULING ORDER AND AN ORDER LIMITING DISCOVERY

Defendant Virginia Surety Company, Inc. ("Virginia Surety") hereby opposes Plaintiffs Lexington Insurance Company ("Lexington") and National Union Fire Insurance Company of Pittsburgh's ("National Union") (collectively "the AIG Insurers")[1/] Motion for Modification of the Scheduling Order and an Order Limiting Discovery.

### Introduction

The AIG Insurers filed this declaratory judgment action in May 2004 following Virginia Surety's demand that they comply with their obligations to contribute to defense and indemnity costs incurred by policyholders insured both by the AIG Insurers and Virginia Surety under a specialty insurance program developed and managed by a New Jersey insurance broker, National Program Services, Inc. ("NPS"). Last November, Virginia Surety served document requests to

---

[1/]    Both Lexington Insurance Company and National Union Fire Insurance Company are members of the AIG family of insurance companies.

the AIG Insurers.[2] To date, despite Virginia Surety's offer to limit the scope of its requests to reduce the alleged burden on Plaintiffs,[3] the AIG Insurers have yet to provide any written response or particularized objections to Virginia Surety's requests. Plaintiffs have not sought a protective order. Instead, they have filed a motion under the guise of a change to the Scheduling Order that seeks to drastically restrict discovery and prematurely obtain potentially significant choice of law rulings.

Plaintiffs' request for a modification of the scheduling order is a thinly-veiled attempt to dodge their obligation to respond to Virginia Surety's pending discovery requests. In lieu of objections to particular requests Plaintiffs ask the Court to rule whole categories of discovery off limits. Plaintiffs' motion is based on the assertion that New York law governs this dispute and that New York law categorically prohibits examination of extrinsic evidence in the absence of a preliminary finding of ambiguity in the underlying contract, thereby prohibiting Virginia Surety's discovery requests. As argued more fully below, Plaintiffs' arguments should be rejected for several reasons.

First, under a Massachusetts choice of law analysis, there are several other jurisdictions with significant interests in the outcome of this litigation, including Massachusetts, Illinois and most notably New Jersey, which permits the introduction of extrinsic evidence. The choice of law question is itself a mixed question of law and fact that requires discovery and resolution on a fully-developed record. Plaintiffs' attempt to have that issue resolved on a scheduling motion and without any discovery is premature and procedurally improper. Second, substantive rules

---

[2]   A copy of the Requests are attached as Exhibit A to Plaintiffs' Memorandum of Law in Support of Their Motion for Modification of the Scheduling Order and an Order Limiting Discovery.
[3]   This action involves the AIG Insurers' obligation to pay defense and indemnity costs once the $250,000 Self Insured Retention or "SIR" in their policies is exhausted by defense or indemnity payments. Accordingly, Virginia Surety offered to limit the scope of its requests concerning claims files (which Plaintiffs claim is unduly burdensome) to claims where either (i) defense and/or indemnity costs exceeded $250,000 or (ii) where Lexington or National Union posted reserves of $250,000 or more. The AIG Insurers rejected this proposal.

2

concerning the use of extrinsic evidence in interpreting contracts and determining contractual rights and obligations is a question of *admissibility* of evidence at trial, and do not control the discoverability of such information. That issue is governed by the broad discovery principles of Fed. R. Civ. P. 26. Regardless of the ultimate resolution of the choice of law question, Virginia Surety is entitled to the discovery it seeks because the standard for discoverability is *not* whether the requests seek evidence admissible at trial but whether the discovery sought is relevant or is reasonably calculated to lead to the discovery of admissible evidence on any issue in dispute.

Finally, the question of admissibility of extrinsic evidence arises in a contract action where the obligations of the parties to the contract are at issue. That is not the situation here. Virginia Surety and the AIG Insurers have no contractual relationship. Rather, they have common insureds under a specialty insurance program run by NPS. The "intent" that is relevant here is the parties' intent in participating in the NPS program and the intended structure and operation of that program. While the language of the parties' respective insurance policies is certainly relevant to that intent, it is not necessarily dispositive and resolution of the issues may ultimately depend upon application of general insurance law principles such as equitable contribution. The discovery that Virginia Surety seeks is essential to understanding the structure and intent of the NPS program, the AIG Insurers' understanding of that program at the time they decided to participate, the AIG Insurers' understanding and intent as evidenced by their course of conduct under the program, and the AIG insurers' understanding of the scope of the risks they undertook by participating in the NPS program, as evidenced by underwriting evaluations and premium computations. The discovery is also directly relevant to the choice of law issue that Plaintiffs seek prematurely to have resolved on this motion.

Accordingly, Virginia Surety requests that this Court deny Plaintiffs' request for a modification of the scheduling order and order Plaintiffs to respond to Virginia Surety's discovery requests.

**Factual Background**

Virginia Surety believes that the evidence developed through discovery will establish the following facts. Beginning in mid- to late-2000, National Union was approached by NPS and asked to replace a prior insurer in a specialty insurance program developed and managed by NPS that provided insurance for owners of multi-unit residential housing projects nationwide. Initially, National Union was asked to provide $1 million general liability policies for participants in the program. National Union, however, did not want to write so-called "first-dollar coverage" and would agree to provide the insurance only if the policyholders assumed a $250,000 Self Insured Retention or "SIR"[4] that would be satisfied by both defense and indemnity (settlement or judgment) payments. In that event, National Union would provide $750,000 in coverage over the $250,000 SIR. When presented with this new program, one of NPS's largest clients, accounting for a significant percentage of the program's annual premium revenue, balked at the notion of assuming such a large retention, presumably because it would expose the insured to the larger number of relatively small claims.

Responding to this concern, NPS approached Virginia Surety and asked whether Virginia Surety would be willing to write first-dollar coverage up to a $250,000 limit in order to insure the amounts within National Union's $250,000 SIR. Virginia Surety agreed to do so and

---

[4]  A Self Insured Retention is essentially a deductible that must be borne by the insured before an insurance policy is triggered. The distinction between a SIR and a deductible is that, as the name suggests, with a SIR the policyholder has no insurance in the SIR layer and payments meeting the SIR are a condition precedent to the insurer's obligation in the first instance. The distinction becomes clearest in the event of a policyholder bankruptcy filing where the debtor cannot pay the deductible or SIR amounts. In theory, with a deductible, the insurer would still have insurance obligations and would then have an unsecured claim against the bankruptcy estate for the unpaid deductible. With a SIR, the insurer should have no obligation for payments within the SIR, even if the policyholder is unable to make the SIR payments.

4

appointed NPS as Managing General Agent with authority to place Virginia Surety policies covering the $250,000 SIR amounts. With the participation of both Virginia Surety and National Union, the policyholders in the NPS program would then have the desired $1 million in liability insurance coverage, albeit with two policies instead of one. Virginia Surety's policies make no mention of Plaintiffs' policies and Virginia Surety believes that Plaintiffs' policies do not refer to Virginia Surety's policies. It is Virginia Surety's understanding that the National Union policy (later replaced by Lexington policies) were written as standard form primary insurance policies with a $250,000 Self Insured Retention that would be eroded by both defense and indemnity payments. In other words, it was National Union's (and presumably, although Plaintiffs have not yet produced the policies, Lexington's) understanding and intent that it would have an insurance obligation for any claim where $250,000 in defense and/or indemnity payments was made by or on behalf of a policyholder in the NPS program. The AIG Insurers' policies were not intended to be and, Virginia Surety believes, were not written as "pure excess" or "true excess" policies, *i.e.*, policies that would apply only upon exhaustion of an underlying insurer's policy *indemnity* limits. Indeed, the one policy that Virginia Surety has obtained expressly includes *defense costs within the National Union SIR*, something that a true excess policy would never do.

There have been numerous claims filed by policyholders of Plaintiffs and Virginia Surety in connection with the insurance program NPS coordinated. To date, Virginia Surety has made defense and indemnity payments in excess of $44 million for claims submitted in conjunction with the NPS insurance program. Resolution of existing claims and future claims will significantly increase this number. Plaintiffs are obligated by the express terms of their policies and the agreed structure and intent of the NPS program to share in those payments in all cases where any combination of defense or indemnity expenses exceeds $250,000. The AIG insurers,

however, have refused to comply with their clear obligations under the NPS program, asserting that they have no obligation to pay until Virginia Surety has made an *indemnity* payment of at least $250,000, something that is not required either by the structure of the NPS program or the AIG Insurers' policies. Plaintiffs sued Virginia Surety in Massachusetts and now refuse to respond to Virginia Surety's reasonable discovery requests. Plaintiffs' motion should be denied and they should be ordered to respond in full to Virginia Surety's outstanding discovery requests.

## **Argument**

### I. VIRGINIA SURETY'S DISCOVERY IS REASONABLE IN SCOPE AND RELEVANT TO THE ISSUES IN THIS CASE.

#### A. The Federal Rules Favor Broad Discovery.

Fed. R. Civ. P. 26(b)(1) authorizes discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." "[T]he broad mandates of Fed. R. Civ. P. 26 demand that the scope of discovery be liberally construed so as to provide both parties with information essential to proper litigation on all the facts." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D. Mass. 1984). *See also Navarro de Cosme v. Hospital Pavia,* 922 F.2d 926, 930 (1st Cir. 1991); *Santiago v. Fenton,* 891 F.2d 373, 379 (1st Cir. 1989). "The basic philosophy of the present federal procedure is that prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." *M. Berenson Co.*, 103 F.R.D. at 637 (quoting *Donovan v. Prestamos Puerto Rico, Inc.*, 91 F.R.D. 222, 223 (D.P.R. 1981)). "Thus, '[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.'" *Gagne v. Reddy,* 104 F.R.D. 454, 455 (D. Mass. 1984) (quoting *Miller v. Doctor's General Hospital,* 76 F.R.D. 136, 138 (W.D. Okla. 1977)). Information is relevant if it "appears

reasonably calculated to lead to the discovery of admissible evidence." *Walsh v. Pullman Co.,* 9 F.R.D. 107 (D. Mass. 1949); *Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73, 75 (D. Mass. 1976); *see also Gagne v. Reddy,* 104 F.R.D. 454, 456 (D. Mass. 1984) (noting that information is relevant if "there is *any* possibility" the information "may be relevant to the subject matter of the action"). This is because

> [m]utual knowledge of all of the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.

*Klonoskie v. Mahlab,* 156 F.3d 255 (1st Cir. 1998) (citing *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)). Under these liberal standards, the material sought by Virginia Surety's requests must be deemed relevant and discoverable.

### B.    The Information Sought Is Relevant To The Issues In This Case.

The Requests seek information concerning a number of allegations raised in the pleadings. Plaintiffs' underwriting and claims files are critical to determining how they understood their obligations in the context of the insurance program. As discussed above, the insurance program at the heart of this litigation was designed and implemented by NPS, a third-party insurance broker. Discovery related to the genesis of the NPS insurance program and communications between Plaintiffs and NPS may be essential to an understanding of how the parties' policies were supposed to operate, both in that program and in relation to each other. This is particularly true here because Plaintiffs and Virginia Surety are not parties to the same contract. Moreover, in a bizarre twist, the principal of NPS, Vito Gruppuso, pleaded guilty in January 2004 to state charges that he embezzled more than $70 million in premiums intended for several insurers, including the parties to this suit. Mr. Gruppuso has been sentenced to prison and his availability for discovery is questionable.

### C. Virginia Surety's Requests Are Not Unduly Burdensome.

Plaintiffs' claim that allowing their motion will reduce overly-burdensome discovery is a red herring. First, both Virginia Surety and Plaintiffs will bear discovery burdens in this case and those burdens are expected to be roughly equivalent. Second, this lawsuit, which Plaintiffs brought, concerns significant sums of money against which the costs of discovery are properly considered. Plaintiffs' cannot reasonably assert that the discovery burdens are disproportionate to the amount of money at stake in this litigation. Moreover, as noted above, Virginia Surety has proposed reasonable limitations on the scope of its discovery, which Plaintiffs have rejected. The alleged burdens and costs on Plaintiffs do not justify depriving Virginia Surety of crucial discovery on issues involving tens of millions of dollars.

### II. PLAINTIFFS' ASSUMPTION THAT NEW YORK LAW APPLIES IS PREMATURE AND NO BAR TO VIRGINIA SURETY'S DISCOVERY REQUESTS.

The only basis for Plaintiffs' claim that the revised schedule will prevent unnecessary discovery is Plaintiffs' assertion – unsupported by any fact in the record – that New York law governs this dispute and renders the information Virginia Surety seeks non-discoverable. First of all, New York has no more interest in this case than Illinois, Virginia Surety's domicile. Moreover, New Jersey clearly has a more significant interest than New York in the dispute at issue in this is litigation. This case involves the relative obligations of Virginia Surety and the AIG Insurers with respect to claims brought by policyholders participating in the NPS program. It involves the intent, structure, and operation of the NPS program. The parties have no contract but only a connection through this program. It is undisputed that the NPS program was based in and operated solely out of the State of New Jersey. All of the insurance policies issued under the program were placed in New Jersey. At the very least, there is a substantial possibility that when

8

the choice of law determination is made, on a full record after discovery, the Court will select New Jersey law as the governing law.

Even if the rules governing consideration of extrinsic evidence are relevant to this dispute, which is not at all clear, New Jersey law permits consideration of extrinsic evidence in interpreting insurance contracts. Under New Jersey law, the starting point in ascertaining contractual intent is the language of the insurance policy. *Communication Workers of Am., Local 1087 v. Monmouth County Bd. of Soc. Servs.*, 476 A.2d 777, 781 (N.J. 1984). However, "[i]t is also permissible, [in order] to shed further light on the parties' intent, to consider and examine the circumstances that existed when the contract was made." *Id.* (citing *Tessmar v. Grosner*, 128 A.2d 467, 471 (N.J.1957); *Atlantic Northern Airlines v. Schwimmer*, 12 N.J. 293, 96 A.2d 652, 545 (1953); A. Corbin, *Contracts,* § 579 (1951); E. Farnsworth, *Contracts,* § 7.10, at 492-93)). "This is so even when the contract on its face is free from ambiguity." *Atlantic Northern Airlines*, 96 A.2d at 656. *See also Newport Assocs. Dev. Co. v. The Travelers Indemn. Co.*, 162 F.3d 789 (1998) (applying New Jersey law and finding that extrinsic evidence is relevant to determining whether insurance policy is ambiguous); *Affiliated FM Ins. Co. v. Kusner Cos.*, 265 N.J. Super 454, 627 A.2d 70 (1993) ("A party's intent to cover a particular risk may appear from the policy or it may be inferred from the circumstances or established by extrinsic evidence."). Given the substantial possibility that New Jersey law will govern this dispute, Plaintiffs' attempt to dodge their discovery obligations based on their premature and presumptuous choice of New York law should be rejected.

In addition, Plaintiffs' attempt to preclude discovery because New York law holds that such evidence is inadmissible unless there is a finding that the policies are ambiguous[5/] is based

---

[5/]   Virginia Surety does not concede that Plaintiffs' policies are unambiguous, as Plaintiffs appear to claim in their brief. *See* Plaintiffs' Br. at 11.

9

on fundamentally flawed reasoning. The choice of law question itself requires full discovery, but even assuming that New York applies, extrinsic evidence is nonetheless discoverable. The law is clear that the *inadmissibility* of extrinsic evidence is not a bar to its *discovery*. These very issues were raised in *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989). The plaintiff in *Leksi* sought to discover extrinsic evidence concerning the intent and interpretation of insurance policies, including the drafting history of the insurance clauses at issue. *Id.* at 102. The defendants claimed that such information was not discoverable because Pennsylvania law applied and barred the admissibility of extrinsic evidence. *Id.* The *Leksi* court refused to decide the choice of law issue, noting "the choice of law issue is extremely premature in light of the fact that so little discovery has been conducted to date." *Id.* at 103.

The *Leksi* court went on to reject the defendants' argument that the inadmissibility of the extrinsic evidence was determinative of whether the information was discoverable. *Id.* at 104. As in *Leksi*, Plaintiffs here have cited cases from various jurisdictions in which extrinsic evidence was considered inadmissible at trial, but as the *Leksi* court concluded, this is "not determinative of whether the information in question could lead to other matter that may bear on the underlying declaratory judgment action. In other words, *the fact that such information may not be admissible at trial is not dispositive of whether it is discoverable at this juncture.*" *Id.* (emphasis added).

These principles should be well known to Plaintiff National Union, which itself has been permitted to discover extrinsic evidence concerning insurance disputes, even though such evidence may not have been admissible at trial. *See Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*, No. 90 Civ. 7811, 1993 WL 437767, at *1 (S.D.N.Y. Oct. 26, 1993). *Arkwright* concerned a dispute between two insurance companies over responsibility for the costs of

10

cleaning up environmental contamination. National Union sought and was permitted discovery of extrinsic evidence including the drafting history of Arkwright's policy with the insured. Arkwright argued that that information was not discoverable because it would not be admissible. The *Arkwright* court rejected this argument – precisely the same as the one pressed by Plaintiffs here – and permitted National Union the discovery it sought. *Id.* The court found that "while neither Arkwright nor National Union has claimed that the GE policy is ambiguous, they have interpreted the . . . provision of the policy to mean two completely different things." *Id.* That, the court held, justified the discovery of the extrinsic evidence because it was "reasonably calculated to lead to admissible evidence, even if it may not ultimately be admissible at trial." *Id.* Here, where *no* discovery has been taken, there can be no question that the choice of law issue is premature. Even if New York law applies the information is discoverable as it was in *Arkwright* and *Leksi* because whether or not the evidence is admissible is not determinative of whether it can be discovered.

The AIG Insurers themselves have recognized the potential relevance of extrinsic evidence to the resolution of this dispute in pleadings filed in this case. In Paragraph 7 to their Answer to Virginia Surety's Counterclaim, Plaintiffs allege:

> By way of further answer, Plaintiffs state that they were aware of Virginia Surety's policies when Plaintiffs issued their policies *and the Virginia Surety policies were taken into consideration when Plaintiffs determined the amount of premiums that should be charged.*

(emphasis added). Plaintiffs cannot affirmatively base their defense to Virginia Surety's counterclaim on extrinsic evidence and then assert that such evidence is off-limits to Virginia Surety's discovery. Moreover, their sudden change of heart at least suggests that the facts may be other than as alleged. The discovery must be permitted.

## Conclusion

Plaintiffs' proposal for a radical restructuring and limitation of discovery is based on the exaggeration of the burdens of production, the conflation of the *admissibility* and the *discoverability* of the information concerned, and the premature conclusion that New York law will apply. As detailed above, Virginia Surety's discovery is relevant to the interpretation not only of the policies at issue but to understanding the relationship of the parties to one another and to the NPS insurance program at the heart of this matter. Moreover, the choice of law question is entirely premature given that there has been *no* discovery on any issue, much less on that issue. The Court should deny the AIG Insurers' proposed limitations on discovery, and order Plaintiffs to respond to Virginia Surety's outstanding and now long overdue discovery requests.

## Request for Oral Argument

Virginia Surety requests the opportunity to present oral argument in support of the foregoing opposition to Plaintiffs' Motion for Modification of the Scheduling Order.

Respectfully submitted,

VIRGINIA SURETY COMPANY, INC.

By its attorneys,

_____
Joseph G. Blute (BBO# 047300)
John M. Stephan (BBO# 649509)
Nicholas C. Cramb (BBO# 654368)
MINTZ LEVIN COHN FERRIS
 GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (fax)

Dated: April 26, 2005

12

## CERTIFICATE OF SERVICE

I hereby certify that this 26th day of April 2005, a true and accurate copy of the foregoing **Defendant Virginia Surety Company's Opposition to Plaintiffs' Motion for Modification of the Scheduling Order and an Order Limiting Discovery** was served upon counsel for the Plaintiffs by hand-delivering a copy thereof to:

Mark E. Cohen
McCormack & Epstein
One International Place – 7th Floor
Boston, MA 02110

_____
John M. Stephan

LIT 1516022v3