UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LEXINGTON INSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,

    Plaintiffs,

v.

VIRGINIA SURETY COMPANY, INC.

    Defendant.

CIVIL ACTION NO. 04-11109 RGS

**DEFENDANT VIRGINIA SURETY COMPANY'S MOTION FOR
RECONSIDERATION OF ORDER DENYING THE PARTIES' JOINT MOTION
FOR EXTENSION OF TIME TO COMPLETE DISCOVERY**

Defendant Virginia Surety Company, Inc. ("Virginia Surety") hereby requests that the Court reconsider its March 31, 2006 Order denying the parties' Joint Motion for Extension of Time to Complete Discovery. Unless the Court reconsiders, Virginia Surety will be unfairly prejudiced by the Court's decision to the advantage of the Plaintiffs.

**Procedural Background**

Lexington Insurance Company ("Lexington") and National Union Fire Insurance Company of Pittsburg, PA ("National Union") (collectively, the "Plaintiffs") filed this declaratory judgment action defensively in May 2004 following Virginia Surety's demand that the Plaintiffs contribute to defense and indemnity costs paid by Virginia Surety to policyholders insured both by the Plaintiffs and Virginia Surety under a specialty insurance program developed and managed by a New Jersey insurance broker, National Program Services, Inc. ("NPS" and the "NPS Program"). The Court held its scheduling conference on September 1, 2004. Virginia

Surety made its first document request on November 17, 2004. However, the Plaintiffs failed to produce documents to Virginia Surety in a timely fashion.

After trying unsuccessfully to negotiate the scope of discovery, the Plaintiffs informed Virginia Surety on March 1, 2005 that they planned to ask the Court to prevent Virginia Surety from taking any discovery, arguing that the parties' policies could be interpreted on their face. The Plaintiffs, however, did not file their motion until April 12, 2005. *See* Plaintiffs' Motion for Order Limiting Discovery, Docket No. 19 (4/12/2005) ("Motion to Limit Discovery"). The Court summarily denied the Plaintiffs' Motion by its May 2, 2005 Order, and the parties began document discovery. The collection and production of documents was substantial. The parties have collectively gathered, reviewed and exchanged over 400,000 pages of documents.[1] These documents were maintained in, and had to be collected from, at least 6 different cities outside of Massachusetts, including Cibolo, Texas; Rancho Cordova, California; Bethlehem, Pennsylvania; New York, New York; Freehold, New Jersey; and Chicago, Illinois.[2]

Despite their early disagreement, the parties have been cooperating amicably since the Court denied the Plaintiffs' Motion to Limit Discovery.[3] Nearing the completion of document discovery, the parties conducted a discovery conference in early March 2006 and agreed that they needed to collectively depose approximately fifteen witnesses. However, in order to complete the depositions in an efficient and fair fashion, *the parties agreed* not to begin depositions until after completing document discovery. Accordingly, now that document

---

[1] This figure includes 100 boxes of underwriting files and 46 boxes of claim files that Virginia Surety reviewed and produced to the Plaintiffs, in addition to 9 boxes of underwriting files and 23 boxes of claim files that the Plaintiffs produced to Virginia Surety.

[2] In order to complete document production, the parties previously filed a joint motion on August 12, 2005, seeking an extension of time to complete discovery, which was granted on August 16, 2005, and another joint motion on November 22, 2005, which was also granted on November 23, 2005.

[3] However, one of the Plaintiffs has not yet responded to Virginia Surety's interrogatories, which were propounded on September 13, 2005. Lexington responded on December 8, 2005, after Virginia Surety's repeated demands, but National Union's response is still outstanding.

discovery is now substantially complete, the parties agreed to jointly ask the court for 120 days in order to complete the depositions, and filed their Joint Motion for Extension of Time to 120 days to Complete Discovery ("Joint Motion").

I.  **The Court's Denial Of The Joint Motion Unfairly Prejudices Virginia Surety To The Advantage Of The Plaintiffs.**

The Plaintiffs' flat refusal to join in this motion for reconsideration is a result of their implicit recognition that the parties further inability to obtain discovery prejudices Virginia Surety. Moreover, since the Court's denial of the Joint Motion, the Plaintiffs informed Virginia Surety that they will not permit it to pursue any additional discovery and that the Plaintiffs will refuse to make their own witnesses available without a court order, in spite of the fact that Virginia Surety properly noticed the Plaintiffs' depositions pursuant to Fed. R. Civ. P. 30(b)(6) within the discovery deadline and for dates within the deadline. *See* 3/15/06 Letter from Nicholas Cramb to Mark Cohen, enclosing Rule 30(b)(6) Deposition Notices of the Plaintiffs, (Cramb Aff., Ex. A). As a concession to the Plaintiffs, Virginia Surety agreed that the dates the depositions were originally noticed for could be rescheduled to dates mutually agreeable and convenient for all parties once the Plaintiffs identified the witnesses they would need to testify about the topics in the notices. However, the Plaintiffs did not identify their witnesses within the discovery period, and now refuse to identify or allow us to depose their witnesses, despite the fact that they were properly noticed (which has not been contested by the Plaintiffs).[4]

---

[4]  Until the very instant that the Court entered its Order, the Plaintiffs agreed that the parties would take as many as 15 party and non-party depositions, many of which would require travel. In addition to party witnesses, there were many people involved in the NPS Program, including, but not limited to, NPS employees, who brokered the insurance, the National Coalition of Property Owners and Managers/Insurance Purchasing Group Association, whose members were insured under the parties' policies, and York Claims Services, Cambridge Integrated Services Group, Inc and Tower Risk Management, the parties' third-party claims administrators. Moreover, Lexington admits in its answers to interrogatories that there are over 30 witnesses who have knowledge of the events and allegations that are the subject of the complaint and/or Plaintiffs' Answer to Virginia Surety's Counterclaim.

To date, *no party* has taken any depositions in this case, and *only Virginia Surety* has noticed depositions. If the Court does not reconsider its March 31 Order or otherwise permit the parties some time to take depositions, Virginia Surety's cooperation with the Plaintiffs through document discovery, and agreement to wait before deposing the Plaintiffs, will unfairly prejudice Virginia Surety. Moreover, in refusing to reconsider its Order, the Court will essentially grant the relief sought by Plaintiffs in their Motion to Limit Discovery, which was denied summarily on May 2, 2005.[5/]

**II.    The Deposition Discovery Sought By Virginia Surety Is Essential To A Fair Resolution of This Case.**

Substantively, the Plaintiffs assert that their insurance policies are "true excess" insurance policies, which are not triggered until the complete exhaustion of Virginia Surety's policies. "True excess," however, is a legal term which means an insurance policy that explicitly requires the existence of a primary policy as a condition of coverage. *Progressive Ins. Co. v. Universal Cas. Co.,* 347 Ill. App. 3rd 10, 19 (2004). After reviewing the documents produced by the Plaintiffs, Virginia Surety is confident that it can establish the following: (1) that the Plaintiffs' Policies *do not* require the existence of a primary policy as a condition of coverage; and (2) that the term "true excess" was not used by the Plaintiffs in the operation of the insurance program. Since this implies that there may be an ambiguity inherent in the interaction of the policies, it is essential that the parties conduct discovery as to the context of the NPS Program as a whole and the parties' intent in participating in the Program. This is a vital aspect of contractual interpretation under controlling New Jersey law, which specifically permits the consideration of contextual evidence as to the intent of the parties. *See Communication Workers of Am., Local 1087 v. Monmouth County Bd. of Soc. Servs.,* 476 A.2d 777, 781 (N.J. 1984) (citing *Tessmar v.*

---

[5/]    The Court issued its March 31 Order on the final day of the discovery period. Therefore, if the Court does not reconsider its Order, discovery is closed.

*Grosner,* 128 A.2d 467, 471 (N.J.1957); *Atlantic Northern Airlines v. Schwimmer*, 12 N.J. 293, 96 A.2d 652, 545 (1953); A. Corbin, *Contracts,* § 579 (1951); E. Farnsworth, *Contracts,* § 7.10, at 492-93)). *See also Newport Assocs. Dev. Co. v. Travelers Indemn. Co.*, 162 F.3d 789 (1998) (under New Jersey law, extrinsic evidence is relevant to determining whether insurance policy is ambiguous)*; Affiliated FM Ins. Co. v. Kusner Cos.*, 265 N.J. Super 454, 627 A.2d 70 (1993) ("A party's intent to cover a particular risk may appear from the policy or it may be inferred from the circumstances or established by extrinsic evidence.").

The deposition discovery that Virginia Surety seeks is essential to understanding the structure and intent of the NPS Program, the Plaintiffs' understanding of that program at the time they decided to participate, and the Plaintiffs' understanding of the scope of the risks they undertook by participating in the NPS Program. All of these issues are relevant to resolving the potential ambiguities in the policies and the interaction of policies in the NPS Program.

Without the benefit of deposition testimony, which will serve to narrow and focus the issues, the parties will have to argue about the interpretation of an incredible volume of documents, consisting of over 90 insurance policies, which were written on several different forms. It will be impractical and inefficient for the Court to determine the parties' rights without the benefit of deposition testimony to discuss, describe and distinguish those policies from one another.

**III.    Other Factors Weigh in Favor of Reconsideration.**

This case concerns a significant amount of money. As of February 2004, Virginia Surety had paid over $44 million to policyholders, and the Plaintiffs have thus far refused to contribute or reimburse them for their share. This amount has increased significantly, and will continue to increase as additional claims are resolved. Because of the amount at issue, and despite its interest in resolving this quickly so as to obtain reimbursement of the funds that it has already

5

disbursed, it is important to Virginia Surety that it is able to obtain full and fair discovery of all issues which may weigh in the court's resolution of this case.

Furthermore, the parties intent may be particularly difficult to ascertain from the face of the policies due to the context surrounding the issuance of the policies. The broker that masterminded the NPS Program, Vito Gruppuso, has been convicted of defrauding both Virginia Surety and the Plaintiffs, among numerous others, and is now serving a 10 year sentence. *See* $100 Million Scam Part of Growing Trend in Insurance Professional Fraud Uncovered by New Jersey Office of the Insurance Fraud Prosecutor, www.state.nj.us/lps/dcj/njinsurancefraud/report/2004/OIFP-AR-sec.5-p44.pdf (Cramb Aff., Ex. B) at 45 (noting that "Vito Gruppuso stole over $100 million in the largest insurance fraud scheme ever prosecuted by the state of New Jersey"). This makes deposition discovery of the parties and their agents particularly important, as intent is a central issue in interpreting the policies.

## **Conclusion**

WHEREFORE, Virginia Surety respectfully requests that the Court Reconsider its March 31, 2006 Order denying the parties' Joint Motion for Extension of Time to Complete Discovery, which may operate to preclude Virginia Surety from taking any depositions in this case. Further, Virginia Surety requests the opportunity to address any of the Court's concerns during oral argument, at the Court's earliest possible convenience. If the Court finds that the additional 120 days the Parties jointly requested in their motion is unreasonable, Virginia Surety respectfully requests that the Court permit it some time to complete depositions on an expedited basis. Finally, if the Court allows this Motion, Virginia Surety agrees that it will request no further extensions.

**Request for Oral Argument**

Virginia Surety requests the opportunity to present oral argument in support of the foregoing Motion for Reconsideration.

Respectfully submitted,

VIRGINIA SURETY COMPANY, INC.

By its attorneys,

\_\_\_/s/ Nicholas C. Cramb_____
Joseph G. Blute (BBO# 047300)
John M. Stephan (BBO# 649509)
Nicholas C. Cramb (BBO# 654368)
MINTZ LEVIN COHN FERRIS
 GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (fax)

Dated: April 5, 2006

**Certificate of Service**

I, Nicholas C. Cramb, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 5, 2006.

  /s/ Nicholas C. Cramb                    Dated: April 5, 2006

LIT 1567860v.1