**EXHIBIT A**

# MINTZ LEVIN

Nicholas C. Cramb | 617 348 1740 | nccramb@mintz.com

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

March 15, 2006

*VIA FIRST CLASS MAIL*

Gerald S. Frim
Robert J Maselek, Jr.
The McCormick Firm
One International Place - 7th Floor
Boston, MA 02110

    Re:    <u>Lexington Insurance Company et al. v. Virginia Surety Co., Inc.</u>

Dear Gerald:

    With reference to the above-captioned matter, enclosed for service please find the following:

1.    Rule 30(b)(6) Notice of Deposition of Lexington Insurance Company; and

2.    Rule 30(b)(6) Notice of Deposition of National Union Fire Insurance Company of Pittsburgh, PA

    As we discussed, we are noticing these depositions to allow you determine who will serve as the plaintiffs' witnesses. We understand that they will not go forward on the dates in the notice, but expect to work out a mutually convenient schedule with you in the next couple of weeks.

    If you have any questions, please do not hesitate to call me.

                               Very truly yours,

                               Nicholas C. Cramb

NCC/nb
Enclosures
cc:    Joseph G. Blute
        John M. Stephan
        Paul A. Henmueller

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>　　Plaintiffs,<br><br>v.<br><br>VIRGINIA SURETY COMPANY, INC.<br><br>　　Defendant. | CIVIL ACTION NO. 04-11109 RGS |

### RULE 30(b)(6) NOTICE OF DEPOSITION OF
### NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

TO:　Mark E. Cohen
　　　Robert J. Maselek
　　　Gerald S. Firm
　　　The McCormack Firm, LLC
　　　One International Place, Seventh Floor
　　　Boston, MA  02110

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, **on Tuesday, March 21, 2006, at 10:00 a.m.**, at the offices of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA, the Defendant Virginia Surety Company, Inc., by their attorneys, will take the deposition upon oral examination of Plaintiff National Union Fire Insurance Company before a Notary Public, or before some other officer authorized by law to administer oaths.

The deponent shall identify and designate one or more officers, directors, managing agents or other knowledgeable person(s) to testify on its behalf regarding the subject matter identified in **Schedule A**.

The oral examination will continue from day to day until completed. You are hereby invited to attend and cross-examine.

Respectfully submitted,

VIRGINIA SURETY COMPANY, INC.

By Its Attorneys,

/s/ Nicholas Cramb
Joseph G. Blute (BBO# 047300)
John M. Stephan (BBO# 649509)
Nicholas C. Cramb (BBO# 654368)
MINTZ LEVIN COHN FERRIS
  GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (fax)

Dated: 3/15/06

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Rule 30(b)(6) Notice of Deposition to National Union Fire Insurance Company of Pittsburgh, PA, was served this 15 day of March, 2006 on counsel of record for all other parties, by mailing by First-class Mail a copy to:

Mark E. Cohen
Robert J. Maselek
Gerald S. Firm
The McCormack Firm, LLC
One International Place, Seventh Floor
Boston, MA 02110
Tel. (617)951-2929
Fax (617)951-2672

/s/ Nicholas Cramb
Nicholas C. Cramb

## SCHEDULE A

## DEFINITIONS

1.  "Complaint," as used herein, refers to Plaintiffs' Amended Complaint, dated November 23, 2004.

2.  "Person," as used herein, means any natural person or any business, legal, or governmental entity or association.

3.  The terms "contact" and "communications" mean the transmittal of any form of information (including, without limitation, in the form of facts, ideas, inquiries, or otherwise) by any means (including oral or written), from one person or entity to another. A "communication between A and B" includes both communication from A to B and communication from B to A. Contact and/or communications include, but are not limited to, correspondence between individual persons or business entities using electronic mail, facsimile and any other computer-assisted means of correspondence whether or not hard copies of such contact and/or communication were maintained.

4.  "Document" or "documents," as used herein, shall be defined to the broadest extent permitted by Rule 34(a) and includes wherever applicable, without limitation, the original, all non-identical copies, and all drafts of writings, typewritings, microfilms, electronic mail, facsimiles, documents maintained on any computer hard-drive or software from which copies can be retrieved, drawings, graphs, charts, photographs, phone records, computer inputs and printouts, and other data compilations of any description whatsoever, including, without limiting the generality of the foregoing, minutes, memoranda, records, reports, diaries, journals, notes, witness statements, analyses, studies, appraisals, surveys, circulars, bulletins, books of

account, tables, computer models or programs, recordings, presentations, summaries, telexes, correspondence, telegrams, letters, messages (including reports, notes, minutes and memoranda of telephone conversations and meetings and conferences), calendar and diary entries, periodicals, seminar materials, ledgers, bank statements, financial statements, checks and canceled checks, check stubs, applications, proposals, contracts, agreements, working papers, invoices, orders, receipts, certificates of condition, guidelines, manuals, regulations, by-laws, books, pamphlets, advertisements, scripts, transcripts, and any other designated documents specifically referred to in the following numbered requests.

5. The term "relates to," as used herein, including its other forms, means embodying, containing, comprising, indicating, concerning, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

6. "Concern" and "concerning," as used herein, means embodying, containing, comprising, indicating, concerning, relating to, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

7. The term "Lexington" as used herein, means Plaintiff Lexington Insurance Company and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

8. The term "NUFIC" as used herein, means Plaintiff National Union Fire Insurance Company of Pittsburg, PA and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors,

employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

9. The terms "VSC" or "Defendant" as used herein, mean Defendant Virginia Surety Company, Inc. and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

10. The term "Plaintiffs" means Lexington and NUFIC, whether alone or in combination, and any of their agents or representatives, or any other persons acting on their behalf, including but not limited to, attorneys.

11. The term "Purchasing Group," as used herein, means the National Coalition of Building Owners and Managers, Inc./Insurance Purchasing Group Association, and includes any of its members.

12. The term "NPS" as used herein, means National Program Services, Inc. and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

13. The term "Program," as used herein, means participation by Plaintiffs or VSC with NPS in providing policies of insurance to members of the Purchasing Group.

14. The term "Program Policies," as used herein, means any policy of insurance issued by Plaintiffs to the Purchasing Group, and shall include, at minimum, the policies listed in Exhibit A to the Complaint.

15. The term "Post-Program Policies," as used herein, means any policy of insurance issued by Plaintiffs to entities that had been insured under the Program prior to its cancellation, and shall include, at minimum, the policies listed in Exhibit B to the Complaint.

16. The term "Plaintiffs' Policies," as used herein, means the Program Policies and the Post-Program Policies, and shall include, at a minimum, the policies listed in Exhibits A and B to the Complaint and any policies produced by Plaintiffs to VSC.

17. The term "VSC Policies," as used herein, means any policy of insurance issued by VSC to the Purchasing Group.

## TOPICS FOR EXAMINATION

**Topic No. 1:** The identity of all persons who participated or played any role in negotiating NUFIC's participation in the Program, or the terms of the Plaintiffs' Policies.

**Topic No. 2:** The function, as it relates to this lawsuit, provided by each of the individuals named in Lexington's Answers to Virginia Surety Company's First Set of Interrogatories, Interrogatory No. 2.

**Topic No. 3:** NUFIC's understanding of its participation in the Program, and the terms of the Plaintiffs' Policies, including, but not limited to, the coverage that it was to provide to insureds under the Program Policies, the coverage that its was to provide to insureds under the Post-Program Policies, and whether its understanding, or the coverage provided, changed over time.

**Topic No. 4:** NUFIC's expectations as to its liabilities for defense and indemnity costs under the Plaintiffs' Policies before agreeing to participate in the Program or issue insurance policies to the Purchasing Group.

**Topic No. 5:** NUFIC's expectations as to its liabilities for defense and indemnity costs under the Plaintiffs' Policies after agreeing to participate in the Program or issue insurance policies to the Purchasing Group.

**Topic No. 6:** When NUFIC became aware of the coverage provided by VSC in the Program, or under the insurance policies issued by the VSC to the Purchasing Group.

**Topic No. 7:** NUFIC's expectations as to its liabilities for defense and indemnity costs under the Plaintiffs' Policies before and after it became aware of the coverage provided by VSC in the Program, or the insurance policies issued by VSC to the Purchasing Group.

**Topic No. 8:** The total revenue derived by NUFIC from its participation in the Program and the Plaintiffs' Policies.

**Topic No. 9:** NUFIC's total liability for defense costs under the Plaintiffs' Policies.

**Topic No. 10:** NUFIC's total liability for indemnity costs under the Plaintiffs' Policies.

**Topic No. 11:** NUFIC's business relations, agreements and or contracts with NPS and/or Vito Gruppuso from January 1, 1997 to the present.

**Topic No. 12:** The policy forms used by Plaintiffs in the Plaintiffs' Policies.

**Topic No. 13:** The Plaintiffs' expectations of their liabilities under "stand alone excess" forms and commercial general liability forms.

**Topic No. 14:** NUFIC's cancellation of the Program.

**Topic No. 15:** Any policies or agreements, whether written or otherwise, which governed claims administration by any third party who performed claims administration for claims made against the Plaintiffs' Policies.

**Topic No. 16:** The basis for your claim that the Plaintiffs' Policies are "true excess."

**Topic No. 17:** The basis for your claim in Paragraph 14 of the Complaint that "VSC has always recognized that its policies provide the primary layer of coverage for this program and that the National Union and Lexington policies provide excess coverage."

**Topic No. 18:** Any reinsurance treaties, agreements or contracts that covered or may cover the risks covered by the Plaintiffs' Policies.

**Topic No. 19:** Any excess or umbrella insurance policies obtained by NUFIC covering any of the risks insured by the Plaintiffs' Policies.

**Topic No. 20:** NUFIC's understanding of the circumstances under which Plaintiffs are liable for defense costs and expenses under the Plaintiffs' Policies.

**Topic No. 21:** The basis for your affirmative defense that VSC's "claim against Lexington is barred in whole or in part by the terms and conditions contained in the policies at issue herein."

**Topic No. 22:** The basis for your affirmative defense that "some or all of Virginia Surety's claim against Plaintiffs is barred, in whole or in part, by the applicable statutes of limitation and/or by the doctrine of laches."

**Topic No. 23:** The basis for your affirmative defense that VSC "has waived its right to dispute Plaintiffs' position that Plaintiffs' policies are not triggered until the applicable underlying Virginia Surety policy is exhausted by the payment of $250,000 in indemnity costs."

**Topic No. 24:** The basis for your affirmative defense that VSC "is estopped from disputing Plaintiffs' position that Plaintiffs' policies are not triggered until the applicable underlying Virginia Surety policy is exhausted by the payment of $250,000 in indemnity costs."

**Topic No. 25:** NUFIC's record retention policies.

**Topic No. 26:** The search conducted for documents responsive to VSC's Requests for the Production of Documents to Plaintiffs.

**Topic No. 27:** The allegations in the Complaint.

LIT 1552189v.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>    Plaintiffs,<br><br>v.<br><br>VIRGINIA SURETY COMPANY, INC.<br><br>    Defendant. | CIVIL ACTION NO. 04-11109 RGS |

## RULE 30(b)(6) NOTICE OF DEPOSITION
## OF LEXINGTON INSURANCE COMPANY

TO:   Mark E. Cohen
      Robert J. Maselek
      Gerald S. Firm
      The McCormack Firm, LLC
      One International Place, Seventh Floor
      Boston, MA  02110


   PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, **on Thursday, March 23, 2006, at 10:00 a.m.,** at the offices of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA, the Defendant Virginia Surety Company, Inc., by their attorneys, will take the deposition upon oral examination of Plaintiff Lexington Insurance Company before a Notary Public, or before some other officer authorized by law to administer oaths.

Lexington Insurance Company shall identify and designate one or more officers, directors, managing agents or other knowledgeable person(s) to testify on its behalf regarding the subject matter identified in Schedule A.

The oral examination will continue from day to day until completed. You are hereby invited to attend and cross-examine.

Respectfully submitted,

VIRGINIA SURETY COMPANY, INC.

By Its Attorneys,

*/s/ Nicholas C. Cramb/*

Joseph G. Blute (BBO# 047300)
John M. Stephan (BBO# 649509)
Nicholas C. Cramb (BBO# 654368)
MINTZ LEVIN COHN FERRIS
  GLOVSKY & POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
(617) 542-2241 (fax)

Dated: 3/15/06

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Rule 30(b)(6) Notice of Deposition to Lexington Insurance Company, was served this 15 day of March, 2006 on counsel of record for all other parties, by mailing by First-class Mail a copy to:

Mark E. Cohen
Robert J. Maselek
Gerald S. Firm
The McCormack Firm, LLC
One International Place, Seventh Floor
Boston, MA 02110
Tel. (617)951-2929
Fax (617)951-2672

*/s/ Nicholas C. Cramb/*
Nicholas C. Cramb

2

## SCHEDULE A

## DEFINITIONS

1. "Complaint," as used herein, refers to Plaintiffs' Amended Complaint, dated November 23, 2004.

2. "Person," as used herein, means any natural person or any business, legal, or governmental entity or association.

3. The terms "contact" and "communications" mean the transmittal of any form of information (including, without limitation, in the form of facts, ideas, inquiries, or otherwise) by any means (including oral or written), from one person or entity to another. A "communication between A and B" includes both communication from A to B and communication from B to A. Contact and/or communications include, but are not limited to, correspondence between individual persons or business entities using electronic mail, facsimile and any other computer-assisted means of correspondence whether or not hard copies of such contact and/or communication were maintained.

4. "Document" or "documents," as used herein, shall be defined to the broadest extent permitted by Rule 34(a) and includes wherever applicable, without limitation, the original, all non-identical copies, and all drafts of writings, typewritings, microfilms, electronic mail, facsimiles, documents maintained on any computer hard-drive or software from which copies can be retrieved, drawings, graphs, charts, photographs, phone records, computer inputs and printouts, and other data compilations of any description whatsoever, including, without limiting the generality of the foregoing, minutes, memoranda, records, reports, diaries, journals, notes, witness statements, analyses, studies, appraisals, surveys, circulars, bulletins, books of account, tables, computer models or programs, recordings, presentations, summaries, telexes,

3

correspondence, telegrams, letters, messages (including reports, notes, minutes and memoranda of telephone conversations and meetings and conferences), calendar and diary entries, periodicals, seminar materials, ledgers, bank statements, financial statements, checks and canceled checks, check stubs, applications, proposals, contracts, agreements, working papers, invoices, orders, receipts, certificates of condition, guidelines, manuals, regulations, by-laws, books, pamphlets, advertisements, scripts, transcripts, and any other designated documents specifically referred to in the following numbered requests.

5. The term "relates to," as used herein, including its other forms, means embodying, containing, comprising, indicating, concerning, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

6. "Concern" and "concerning," as used herein, means embodying, containing, comprising, indicating, concerning, relating to, referring to, identifying, describing, discussing, involving, evidencing, constituting, or otherwise pertaining to.

7. The term "Lexington" as used herein, means Plaintiff Lexington Insurance Company and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

8. The term "NUFIC" as used herein, means Plaintiff National Union Fire Insurance Company of Pittsburg, PA and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

9. The terms "VSC" or "Defendant" as used herein, mean Defendant Virginia Surety Company, Inc. and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

10. The term "Plaintiffs" means Lexington and NUFIC, whether alone or in combination, and any of their agents or representatives, or any other persons acting on their behalf, including but not limited to, attorneys.

11. The term "Purchasing Group," as used herein, means the National Coalition of Building Owners and Managers, Inc./Insurance Purchasing Group Association, and includes any of its members.

12. The term "NPS" as used herein, means National Program Services, Inc. and includes its current and former divisions, parent corporations, subsidiaries, affiliates, partners, predecessor or successor corporations, officers, directors, employees, agents, accountants, assigns, attorneys, other representatives, and/or any other person or entity acting for them or on their behalf, or under their direct or indirect control.

13. The term "Program," as used herein, means participation by Plaintiffs or VSC with NPS in providing policies of insurance to members of the Purchasing Group.

14. The term "Program Policies," as used herein, means any policy of insurance issued by Plaintiffs to the Purchasing Group, and shall include, at minimum, the policies listed in Exhibit A to the Complaint.

15. The term "Post-Program Policies," as used herein, means any policy of insurance issued by Plaintiffs to entities that had been insured under the Program prior to its cancellation, and shall include, at minimum, the policies listed in Exhibit B to the Complaint.

16. The term "Plaintiffs' Policies," as used herein, means the Program Policies and the Post-Program Policies, and shall include, at a minimum, the policies listed in Exhibits A and B to the Complaint and any policies produced by Plaintiffs to VSC.

17. The term "VSC Policies," as used herein, means any policy of insurance issued by VSC to the Purchasing Group.

## TOPICS FOR EXAMINATION

**Topic No. 1:** The identity of all persons who participated or played any role in negotiating NUFIC's participation in the Program, or the terms of the Plaintiffs' Policies.

**Topic No. 2:** The function, as it relates to this lawsuit, provided by each of the individuals named in Lexington's Answers to Virginia Surety Company's First Set of Interrogatories, Interrogatory No. 2.

**Topic No. 3:** Lexington's understanding of its participation in the Program, and the terms of the Plaintiffs' Policies, including, but not limited to, the coverage that it was to provide to insureds under the Program Policies, the coverage that its was to provide to insureds under the Post-Program Policies, and whether its understanding, or the coverage provided, changed over time.

**Topic No. 4:** Lexington's expectations as to its liabilities for defense and indemnity costs under the Plaintiffs' Policies before agreeing to participate in the Program or issue insurance policies to the Purchasing Group.

**Topic No. 5:** Lexington's expectations as to its liabilities for defense and indemnity costs under the Plaintiffs' Policies after agreeing to participate in the Program or issue insurance policies to the Purchasing Group.

**Topic No. 6:** When Lexignton became aware of the coverage provided by VSC in the Program, or under the insurance policies issued by the VSC to the Purchasing Group.

**Topic No. 7:** Lexington's expectations as to its liabilities for defense and indemnity costs under the Plaintiffs' Policies before and after it became aware of the coverage provided by VSC in the Program, or the insurance policies issued by VSC to the Purchasing Group.

**Topic No. 8:** The total revenue derived by Lexington from its participation in the Program and the Plaintiffs' Policies.

**Topic No. 9:** Lexington's total liability for defense costs under the Plaintiffs' Policies.

**Topic No. 10:** Lexington's total liability for indemnity costs under the Plaintiffs' Policies.

**Topic No. 11:** Lexington's business relations, agreements and or contracts with NPS and/or Vito Gruppuso from January 1, 1997 to the present.

**Topic No. 12:** The policy forms used by Plaintiffs in the Plaintiffs' Policies.

**Topic No. 13:** The Plaintiffs' expectations of their liabilities under "stand alone excess" forms and commercial general liability forms.

**Topic No. 14:** NUFIC's cancellation of the Program.

**Topic No. 15:** Any policies or agreements, whether written or otherwise, which governed claims administration by any third party who performed claims administration for claims made against the Plaintiffs' Policies.

**Topic No. 16:** The basis for your claim that the Plaintiffs' Policies are "true excess."

**Topic No. 17:** The basis for your claim in Paragraph 14 of the Complaint that "VSC has always recognized that its policies provide the primary layer of coverage for this program and that the National Union and Lexington policies provide excess coverage."

**Topic No. 18:** Any reinsurance treaties, agreements or contracts that covered or may cover the risks covered by the Plaintiffs' Policies.

**Topic No. 19:** Any excess or umbrella insurance policies obtained by Lexington covering any of the risks insured by the Plaintiffs' Policies.

**Topic No. 20:** Lexington's understanding of the circumstances under which Plaintiffs are liable for defense costs and expenses under the Plaintiffs' Policies.

**Topic No. 21:** The basis for your affirmative defense that VSC's "claim against Lexington is barred in whole or in part by the terms and conditions contained in the policies at issue herein."

**Topic No. 22:** The basis for your affirmative defense that "some or all of Virginia Surety's claim against Plaintiffs is barred, in whole or in part, by the applicable statutes of limitation and/or by the doctrine of laches."

**Topic No. 23:** The basis for your affirmative defense that VSC "has waived its right to dispute Plaintiffs' position that Plaintiffs' policies are not triggered until the applicable underlying Virginia Surety policy is exhausted by the payment of $250,000 in indemnity costs."

**Topic No. 24:** The basis for your affirmative defense that VSC "is estopped from disputing Plaintiffs' position that Plaintiffs' policies are not triggered until the applicable underlying Virginia Surety policy is exhausted by the payment of $250,000 in indemnity costs."

**Topic No. 25:** Lexington's record retention policies.

**Topic No. 26:** The search conducted for documents responsive to VSC's Requests for the Production of Documents to Plaintiffs.

**Topic No. 27:** The allegations in the Complaint.

LIT 1552189v.1

LIT 1552162v.1

9