**EXHIBIT B**

# $100 Million Scam Part of Growing Trend in Insurance Professional Fraud Uncovered by OIFP

by Lewis Korngut



Vito Gruppuso stole over $100 million in the largest insurance fraud scheme ever prosecuted by the State of New Jersey. Gruppuso's case is indicative of a growing trend in insurance fraud scams being perpetrated by some licensed insurance/securities agents and some other licensed insurance professionals. Difficult economic times have intensified competition in the insurance industry and increased insurance rates. While most insurance professionals tighten their belts, others choose to defraud both insurance companies and unsuspecting individuals. Often, it's the promise of lucrative commissions and easy access to money that lures agents to fraudulent schemes.

## Insurance Agent Stole Over $100 Million

An investigation by the Office of the Insurance Fraud Prosecutor (OIFP) revealed Gruppuso's theft of more than $100 million. Gruppuso, a licensed insurance agent, was the owner and former president of National Program Services (NPS), an insurance brokerage servicing the commercial community.

Gruppuso pled guilty on January 30, 2004, and admitted that he failed to remit approximately $15.8 million of insurance premiums obtained from his insurance customers, primarily commercial businesses, to the Virginia Surety Insurance Company between May of 1998 and March of 2003. Gruppuso also admitted to stealing $6,320,055 from AIG Insurance Company, $3,746,524 from Wausau Insurance Company, and $4.9 million from XL Reinsurance Company as part of the scheme. Gruppuso used the money to finance his expensive lifestyle and his business ventures.

OIFP's investigation also revealed that Kemper Insurance Company, through a bonding company known as Universal Bonding Insurance Company (UBIC), suffered $48 million in losses as a result of fraud committed by Gruppuso. Gruppuso's premium loan finance company, United Premium Services (UPS), provided insurance premium finance loans. Allegedly, many of those fictitious loans defaulted because Gruppuso and another individual falsely placed the insurance risks with a commercial risk management plan known as AIMCO, which was created to provide insurance coverage for certain commercial real estate properties. Gruppuso wrongfully placed ineligible commercial insureds who sought insurance for only one year into the AIMCO risk management program for three years and, without the knowledge of those insured, falsely financed their insurance premiums through his premium financing business for three years. This scheme enabled Gruppuso to have easy access to vast sums of money intended only

45

# $100 Million Scam Part of Growing Trend in Insurance Professional Fraud Uncovered by OIFP

## Ex-broker charged with stealing $300,000

to be used by those who needed to borrow money to finance insurance coverage. Eventually, AIMCO became aware of this aspect of Gruppuso's fraud and pulled out of the program. UBIC was called upon to reimburse lenders for more than $90 million representing premium finance loan money stolen through Gruppuso's company, UPS. Since UPS's premium finance loans were purportedly backed by Kemper Insurance in its capacity as a lender, through UBIC, Kemper was required to pay the defaulted loans.

### Insurance Broker Charged with Stealing Life Savings of Senior Citizen

A State Grand Jury has indicted former insurance broker and financial planner Michael Chamberlain with stealing nearly $300,000 from the retirement accounts of a 78-year-old senior citizen. Chamberlain, a licensed securities broker, is charged with theft by unlawful taking, misapplication of entrusted property, and forgery. The indictment alleges that Chamberlain systematically looted the victim's annuity accounts, invested the monies for his own benefit, and ultimately purchased a resort home valued at more than $400,000 in Florida. If convicted, Chamberlain faces possible prison time, a fine of up to $355,000, and the loss of his New Jersey securities license. He could also be ordered to pay restitution to the victim.

The alleged victim is a decorated WW II veteran who was shot down over the Philippines. In 2003, the senior was notified by the Internal Revenue Service that he owed more than $56,000 in back taxes from taxable withdrawals from his annuity accounts. When he contacted Chamberlain to inquire about the status of the accounts, the senior was allegedly told that the monies had been invested and stolen. As a result of the alleged fraud, the senior is without retirement funds, nearly penniless, and living in a room in a retirement home.

### Insurance Company Claims Processing Specialist Convicted of $614,000 Theft

Linda Clements-Wright was convicted, following an eight-day trial, of conspiracy, theft by unlawful taking, and money laundering for stealing over $614,000 from Allstate Insurance Company while employed as a Claims Processing Specialist.

The jury found that Clements-Wright fraudulently issued more than



Civil Investigator Bud Fifield and State Investigator Earl Washington document evidence obtained while executing a search warrant at the office of an insurance professional.

150 insurance claim checks totaling over $614,000. The fraudulent checks were issued to at least 11 friends and relatives who were not entitled to the monies. OIFP presented evidence at trial that Clements-Wright had devised several schemes whereby unauthorized persons would receive and cash Allstate claim checks and then split the money. One scheme involved cashing claim checks payable to purported elderly Allstate claimants living in senior care facilities who were unable to directly receive the funds. Clements-Wright paid a ten percent commission to conspirators who cashed the claim checks; Clements-Wright kept the balance of the monies. In another scheme, Clements-Wright issued unauthorized insurance claim checks to purported claimants for unreported property damage claims. Six co-conspirators who cashed insurance claim checks for Clements-Wright in the schemes previously pled guilty to conspiracy charges.

### Agent Scammed Family and Friends

Camden County insurance provider Peter Clark is serving a three-year prison sentence for stealing more than $429,000 in a complex insurance fraud and investment scheme in which he convinced family and friends to invest in non-existent investments.

Clark, 36, pled guilty before Camden County Superior Court Judge Linda G. Baxter to crimes contained in a criminal Accusation that charged Clark with theft by failure to make required disposition of property received and theft by deception. The Court sentenced Clark on August 6, 2004, to three years in State prison and ordered him to pay $390,484 in restitution. Clark, as part of the sentence, also surrendered his insurance license to the Division of Banking and Insurance.

Clark was an independent insurance agent with contracts to write annuity and/or insurance policies for various insurance companies and brokers. Clark admitted he purchased several annuity policies for himself and family members between June 7, 2001, and October 28, 2003, in order to receive commissions for the sales. The personal checks he submitted to pay for premiums were returned for insufficient funds. OIFP's investigation determined that Clark fraudulently collected unauthorized commissions from the following insurance companies:

- American National Insurance Company: **$56,034**
- Allianz Life Insurance Company: **$36,125**
- Conseco Services LLC: **$38,500**
- American Equity Investment Life Insurance Company: **$9,400**
- American Investors Life: **$6,717**
- ING USA Annuity & Life Insurance Company: **$44,603**
- Midland National Life-Annuity Division: **$15,961**
- North American Company Life and Health Insurance: **$9,948**



*Insurance Fraud Prosecutor Greta Gooden Brown announced charges against Michael Chamberlain for allegedly scamming more than $300,000 from a senior citizen. Senior investors were also given investment tips and were encouraged to report fraud to law enforcement authorities.*

Clark also admitted that from January 1, 1999, through December 31, 2000, he defrauded at least ten people, including his mother and other family members, by convincing them to invest a lump sum of money in phony investments that would pay the investor 12 percent annual interest. The investment accounts were non-existent. Clark used the monies for personal expenses. This case was referred to OIFP by Allianz Life Insurance Company of North America.

### Public Adjuster was Leader of "Arson-for-Profit" Ring

Marc Rossi operated the biggest "arson-for-profit" ring ever uncovered in Mercer County. OIFP successfully prosecuted all seven individuals who made up the ring. The leader of the ring was public adjuster Marc Rossi. Rossi, a former investigator with the Mercer County Prosecutor's Office, pled guilty to operating an "arson-for-profit" and insurance fraud scheme responsible for at least six burned buildings. The Court sentenced him to eight years in prison and ordered him to pay a total of $537,673 in restitution to six insurance companies.

Rossi owned and operated Rossi Adjustment Services, a Trenton-based insurance claims adjusting firm. Rossi planned the setting of fires to at least six buildings. In most cases, Rossi knew the owners of the buildings he

# $100 Million Scam Part of Growing Trend in Insurance Professional Fraud Uncovered by OIFP

## Investment Tips for Senior Investors

- Map out financial goals before meeting with a financial planner, broker, or investment advisor
- Know your investment professional
- Understand your investment
- Understand how a financial professional is making money by selling an investment
- Exercise caution when buying investments
- Understand your account statements
- Never be afraid to ask questions at any stage of the investment process

targeted for arson. While the fires were still raging, Rossi would appear at the scene to entice building owners to give their insurance claim adjusting business to Rossi over competing adjusters. Once hired, Rossi advocated for the property owner and attempted to receive the highest dollar amount from the insurance company. Rossi received a percentage of the settlement for his efforts.

As part of his guilty plea, Rossi admitted he purposely caused property damage to an apartment he owned in Bordentown to collect an insurance claim reimbursement. He also pled guilty to participating in a conspiracy to inflate costs and steal money from a construction project involving the East Windsor Police Athletic League. Rossi further pled guilty to offering a bribe to a member of a Hamilton Township volunteer fire company to obtain work for his insurance adjustment business.

One of the businesses that Rossi targeted for arson was the Country Barrel Inn, a historic Mercer County landmark located in Hamilton, New Jersey. The fire completely destroyed the building valued at over $350,000. Investigators suspected arson when they found a broken beer bottle with a wick sticking out of it and noticed pour patterns on the ground. Pour patterns generally indicate use of an accelerant which causes the fire to burn. When the Bureau of Alcohol, Tobacco, and Firearms offered a reward for tips, a caller gave investigators a list of names including Rossi's. The investigation ultimately led to all seven ring members.

One of the ring members, Michael Winberg of Levittown, Pennsylvania, pled guilty to second degree aggravated arson for setting the fire at the Country Barrel Inn. The Court sentenced Winberg to five years in State prison. Winberg was also a former licensed public insurance adjuster who had been employed by Rossi Adjustment Services. He had previously been convicted of theft related to his insurance business as a public adjuster. The Court sentenced Winberg on the theft charge to three years probation and ordered him to pay $15,337 in restitution.

*Lewis Korngut is a Supervising Deputy Attorney General in charge of OIFP's Property and Casualty Section. He was a Mercer County Assistant Prosecutor where he tried capital cases including State v. Timmendequas.*



OIFP receives the Outstanding Achievement in Arson Investigations Award from the International Association of Arson Investigators, Inc. for OIFP's prosecution of the State v. Rossi "arson for profit" ring. Pictured from left to right: Supervising Deputy Attorney General Lewis Korngut, Chief State Investigator Anne Kriegner, Insurance Fraud Prosecutor Greta Gooden Brown, State Investigator Robert Stemmer, Civil Investigator Joseph Salvatore, and NJ Division of Criminal Justice Director Vaughn McKoy.

## Indicators of Financial Abuse Against the Elderly

- A recent acquaintance expresses an interest in finances, promises to provide care, or ingratiates him- or herself with the elder
- A relative or caregiver has no visible means of support and is overly interested in the elder's financial affairs
- A relative or caregiver expresses concern over the cost of caring for the elder, or is reluctant to spend money for needed medical care
- The utility and other bills are unpaid
- The elder's placement, care, or possessions are inconsistent with the size of his or her estate
- A relative or caregiver isolates the elder, makes excuses when friends or family call or visit, and does not give the elder messages
- A relative or caregiver gives implausible explanations about finances, and the elder is unaware of or unable to explain the arrangements
- Checking account and credit card statements are sent to a relative or caregiver and are not accessible to the elder
- At the bank, the elder is accompanied by a relative or caregiver who refuses to let the elder speak for him- or herself, and/or the elder appears nervous and afraid of the person
- The elder is concerned or confused about "missing" money
- There are suspicious signatures on the elder's checks, or the elder signs checks and another third party fills in the payee and amount
- There is an unusual amount of banking activity, particularly after joint accounts are set up or someone begins helping the elder with finances
- A will, power of attorney, or other legal document is drafted, but the elder does not understand the implications