# EXHIBIT D

# POLICY COVER PAGE

**Date Printed:** 02/25/02                    **Policy/Quote Number:** 7396968
**Time Printed:** 000001

**Underwriter Name:**
**Issuing Office Division:**
**Issuing Office Branch:**          0023
**Issuing Office Region:**
**Operator Name:**                  MOODY                    ,MOREY
**Operator Telephone:**             303-382-8533
**Policy Effective Date:**          June 1, 2000

**Transaction Type:**               REN

**Set Copy Name:**
**Set Copy Mailing Instructions:**

EPS TRACKING-ID:   0000491761000000000
JOB-ID:

*Archive Copy*

(Ed. 4-99)

## FORMS SCHEDULE

**Named Insured:**      AIMCO PROPERTIES L.P.

**Policy Number:**      BE     7396968
**Effective 12:01 AM:**   June 1, 2000

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AMERICAN INTERNATIONAL CO'S | 73757 | (02/99) |
| | UMB ELITE COMM UMB LIAB POL FORM | 73756 | (05/99) |
| | SCHEDULE OF UNDERLYING INS | UNDSCH | (05/99) |
| 1 | NAMED INSURED | MNSCPT | (06/00) |
| 2 | CRISIS RESPONSE AND EXCESS CASUALTY FUND | 72728 | (01/00) |
| 3 | CROSS CLAIM EXL APP TO COV B | 72730 | (03/99) |
| 4 | NOTICE OF OCCURRENCE APP TO COV A & B | 72769 | (03/99) |
| 5 | NAMED PERIL POLLUTION | 72776 | (03/99) |
| 6 | PROFESSIONAL SERVICES EXCL APP COV A&B | 72781 | (03/99) |
| 7 | CO AMENDATORY APPLICABLE TO COV A & B | 72816 | (06/99) |
| 8 | EMPLOYEE BENEFITS LIABILITY EXCLUSION / COV B | 72850 | (01/00) |
| 9 | LEAD PAINT EXCLUSION / COV B | 72888 | (01/00) |
| 10 | NO FAULT, UNINSURED OR UNDERINSURED MOTOR LAWS / C | 74700 | (12/99) |

*Archive Copy*

**AIG**     **AMERICAN INTERNATIONAL COMPANIES**
**UMBRELLA ELITE**[SM]
**COMMERCIAL UMBRELLA LIABILITY POLICY**

## DECLARATIONS

☐ American Home Assurance Company
☐ American International South Insurance Company     ☒ National Union Fire Insurance Company of Pittsburgh, PA
☐ Illinois National Insurance Company     ☐ National Union Fire Insurance Company of Louisiana

(each of the above being a capital stock company)
**Executive Offices: 70 Pine Street, New York, NY 10270**

**POLICY NUMBER:** BE   7396968                    **RENEWAL OF:** 3570773

**ITEM 1.   NAMED INSURED:**   AIMCO PROPERTIES L.P.

**MAILING ADDRESS:** 1873 S. BELLAIRE ST.
DENVER, CO 80222

**ITEM 2.   POLICY PERIOD:   FROM:** June 1, 2000          **TO:** June 1, 2002
(at 12:01 A.M. standard time at the address of the Named Insured stated above)

**ITEM 3.   LIMITS OF INSURANCE - COVERAGE A AND COVERAGE B**

The Limits of Insurance, subject to the terms of this policy, are:

A.  $50,000,000          **Each Occurrence**

B.  $50,000,000          **General Aggregate** (in accordance with Section IV. Limits of Insurance)

C.  $50,000,000          **Products-Completed Operations Aggregate** (in accordance with Section IV. Limits of Insurance)

**ITEM 4.   SELF-INSURED RETENTION - COVERAGE B:** $25,000          **Each Occurrence**

**ITEM 5.   PREMIUM AND PREMIUM COMPUTATION**

ESTIMATED TOTAL ANNUAL EXPOSURE   $396,638,000
RATES PER                                          FLAT
MINIMUM PREMIUM                            $826,000.00
ADVANCE PREMIUM                           $826,000.00

**ITEM 6.   THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE:**
**SEE ATTACHED SCHEDULE**

**PRODUCER NAME:** LOCKTON COMPANIES OF COLORADO INC
**ADDRESS:**              4500 CHERRY CREEK DR., # 400
DENVER, CO 802469000

_____          _____
Authorized Representative                     Date
Or Countersignature (In States
Where Applicable)

73757 (2/99)          *Archive Copy*
AH0031                                                                    Issue Date: 02/25/02

# UMBRELLA ELITE ℠
## COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section V. Definitions.

Other words and phrases that appear in bold print have special meaning. See Section V. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

---

### I. INSURING AGREEMENT - COVERAGE A: EXCESS FOLLOW FORM INSURANCE

A. We will pay on behalf of the **Insured** those sums in excess of the total applicable limits of **Scheduled Underlying Insurance** that the **Insured** becomes legally obligated to pay as damages provided the damages would be covered by **Scheduled Underlying Insurance**, except for exhaustion of the total applicable limits of **Scheduled Underlying Insurance** by the payment of **Loss**.

B. Coverage A shall follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of **Scheduled Underlying Insurance** conflict with any provisions of this policy, the provisions of this policy will apply.

C. Coverage A of this policy will not, in any event, provide broader coverage than that provided by **Scheduled Underlying Insurance**.

D. If we are prevented by law or statute from paying damages on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the total applicable limits of **Scheduled Underlying Insurance**.

E. The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

---

### II. INSURING AGREEMENT - COVERAGE B: UMBRELLA LIABILITY INSURANCE

A. We will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** not covered by **Scheduled Underlying Insurance**, provided that:

　　1. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** happening anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**.

　　2. the **Personal Injury** or **Advertising Injury** is caused by an **Occurrence** happening anywhere, and the **Occurrence** takes place during the **Policy Period**.

B. Coverage B will not apply to damages that would have been covered by **Scheduled Underlying Insurance** even if the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss**.

*Archive Copy*

©1999 American International Group, Inc.

C.    If we are prevented by law or statute from paying damages on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the **Self-Insured Retention**.

D.    The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

---

## III. DEFENSE PROVISIONS

A.    We shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy:

    1.    under Coverage A, when the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss**.

    2.    under Coverage B, when the damages sought because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** would not be covered by **Scheduled Underlying Insurance**.

We shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy, even if the **Suit** is groundless, false or fraudulent.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.    When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

    1.    investigate, negotiate and settle the **Suit** as we deem expedient; and

    2.    pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance**:

        a.    premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

        b.    premiums on appeal bonds required by law to appeal the **Suit**, but we are not obligated to apply for or furnish any such bond;

        c.    all costs taxed against the **Insured** in the **Suit**;

        d.    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make a settlement offer within the applicable Limits of Insurance of this policy that is acceptable to the claimant, we will not pay any pre-judgment interest accruing after we make such offer;

        e.    post-judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

        f.    the **Insured's** expenses incurred at our request or with our consent.

C.    Except as provided in Paragraph A. above, we shall have no duty to defend any **Suit** against the **Insured**. We will, however, have the right, but not the duty, to participate in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

D.    We will not defend any **Suit** or investigate any claim after the exhaustion of the applicable Limits of Insurance of this policy by the payment of **Loss**.

| IV. LIMITS OF INSURANCE |
| --- |

A.  With respect to Coverages A and B, the Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    1.  **Insureds;**

    2.  claims made or **Suits** brought against any or all **Insureds;**

    3.  persons or organizations making claims or bringing **Suits**; or

    4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under Coverage A and separately under Coverage B, except for:

    1.  damages covered by the **Products-Completed Operations Hazard**; and

    2.  damages covered by **Scheduled Underlying Insurance** to which no aggregate limit applies.

    In addition, with respect to Coverage A only, if **Scheduled Underlying Insurance** contains an aggregate limit, other than an aggregate applying to the **Products-Completed Operations Hazard**, the General Aggregate Limit stated in Item 3 of the Declarations will apply in the same manner as the aggregate limit of any such **Scheduled Underlying Insurance.**

C.  The Products-Completed Operations Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard** for Coverage A and Coverage B combined.

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3 of the Declarations is the most we will pay for the sum of all damages under Coverage A and Coverage B combined arising out of any one **Occurrence.**

E.  Coverage A applies only in excess of the total applicable limits of **Scheduled Underlying Insurance.** If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

    1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

    2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

F.  Under Coverage A, if the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss**, we will:

    1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance**; and

    2.  in the event of exhaustion, continue in force as underlying insurance.

G.  Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy, unless otherwise provided by **Scheduled Underlying Insurance.**

H.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

| V. DEFINITIONS |
|---|

A.  **Advertisement** under Coverage B means a paid broadcast, publication or telecast to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

B.  **Advertising Injury** under Coverage B means injury, other than **Bodily Injury** or **Personal Injury,** arising solely out of your **Advertisement** as a result of one or more of the following offenses:

1.  slander or libel of a person or organization, or disparagement of a person's or organization's goods, products or services in your **Advertisement;**

2.  violation of a person's right of privacy in your **Advertisement;**

3.  misappropriation of another's advertising idea in your **Advertisement;** or

4.  infringement upon another's copyright, trademark or slogan in your **Advertisement.**

C.  **Auto** under Coverage B and under any exclusion in this policy applicable to Coverage A means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **Mobile Equipment.**

D.  **Bodily Injury** under Coverage B and under any exclusion in this policy applicable to Coverage A means bodily injury, sickness, disability or disease, including death resulting from any of these at any time. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

E.  **Hostile Fire** under Coverage B and under any exclusion in this policy applicable to Coverage A means a fire that becomes uncontrollable or breaks out from where it was intended to be.

F.  **Impaired Property** under Coverage B means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  you have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

2.  your fulfilling the terms of the contract or agreement.

G.  **Insured** under Coverage A means:

1.  the **Named Insured;** and

2.  any person or organization that is an insured under **Scheduled Underlying Insurance.**

H.  **Insured** under Coverage B means:

1.  the **Named Insured;**

2.  if you are an individual, your spouse, but only with respect to the conduct of a business of which you are the sole owner;

3.  your partners, joint venture members, executive officers, employees, directors, stock-holders or volunteers while acting within the scope of their duties as such;

4.  any person or organization while acting as your real estate manager;

5.  your legal representative if you die, but only with respect to duties as such; and

6.  any person or organization to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of operations conducted by you or on your behalf.

Notwithstanding any of the above, no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated in Item 1 of the Declarations as a **Named Insured**.

I.  **Insured Contract** under Coverage B means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. However, the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** must arise out of an **Occurrence** that takes place subsequent to the execution of the **Insured Contract**. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Solely for the purposes of liability assumed under an **Insured Contract**, reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury**, provided:

1.  liability to such party for that party's reasonable attorney's fees and necessary litigation expenses has also been assumed in the same **Insured Contract**; and

2.  such reasonable attorney's fees and necessary litigation expenses are for defense of that party against a **Suit** seeking damages covered by this policy.

J.  **Loss** under Coverages A and B means those sums actually paid as judgments and settlements and, under Coverage A if provided by **Scheduled Underlying Insurance**, expenses incurred to defend any **Suit** or to investigate any claim.

K.  **Mobile Equipment** under Coverage B and under any exclusion in this policy applicable to Coverage A means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

    a.    equipment designed primarily for:

        i)    snow removal;

        ii)    road maintenance, but not construction or resurfacing; or

        iii)    street cleaning;

    b.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**L.**    **Named Insured** under Coverage A means any person or organization designated in Item 1 of the Declarations, and any person or organization that is a named insured or the equivalent thereof in **Scheduled Underlying Insurance.**

**M.**    **Named Insured** under Coverage B means:

    1.    any person or organization designated in Item 1 of the Declarations;

    2.    any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy and to which more specific insurance does not apply; and

    3.    any organization, except for a partnership or a joint venture, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

        a.    this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury** or **Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization; and

        b.    you give us prompt notice after you acquire or form such organization.

    A partnership or a joint venture that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period.**

**N.**    **Occurrence** under Coverage A means the definition given to that term or the equivalent thereof in **Scheduled Underlying Insurance.**

**O.**    **Occurrence** under Coverage B means:

    1.    as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions shall be deemed to arise out of one **Occurrence.**

    2.    as respects **Personal Injury** or **Advertising Injury**, an offense arising out of your business that causes **Personal Injury** or **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**P.**    **Other Insurance** under Coverages A and B means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, **Other Insurance** does not include **Scheduled Underlying Insurance,** the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

Q.    **Personal Injury** under Coverage B means injury arising out of your business, other than **Bodily Injury** or **Advertising Injury,** caused by one or more of the following offenses:

1.    false arrest, detention or imprisonment;

2.    malicious prosecution;

3.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.    oral, written or electronic publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.    oral, written or electronic publication of material that violates a person's right of privacy; or

6.    discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

    a.    not done intentionally by or at the direction of any **Insured**; and

    b.    not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any **Insured.**

R.    **Policy Period** under Coverages A and B means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

S.    **Pollutants** under Coverage B and under any exclusion in this policy applicable to Coverage A means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

T.    **Products-Completed Operations Hazard** under Coverage B and under any exclusion in this policy applicable to Coverage A means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.    products that are still in your physical possession; or

2.    work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

    a.    when all of the work called for in your contract has been completed;

    b.    when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

    c.    when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

U. **Property Damage** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

V. **Scheduled Underlying Insurance** under Coverages A and B means:

1. the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

W. **Self-Insured Retention** under Coverage B means the amount applicable to each occurrence for which the **Insured** is responsible that is shown in Item 4 of the Declarations.

X. **Suit** under Coverages A and B means a civil proceeding seeking damages covered by this policy. **Suit** includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

Y. **Your Product** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a. you;

    b. others trading under your name; or

    c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. the providing of or failure to provide warnings or instructions.

73756 (5/99)
AH0048
*Archive Copy* ©1999 American International Group, Inc.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

Z.   **Your Work** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1.   work or operations performed by you or on your behalf; and

2.   materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.   warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.   the providing of or failure to provide warnings or instructions.

---

## VI.  EXCLUSIONS

A.   **Asbestos**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.   the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.   any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.   any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

B.   **Various Laws**

Under Coverages A and B, this insurance does not apply to any obligation of the **Insured** under any of the following:

1.   the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world; or

2.   any Workers' Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

C.   **Securities**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.   the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

2.   any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

3.   any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

D.  **Employment Practices**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.  failure to hire any prospective employee or any applicant for employment;

2.  termination of any employee;

3.  failure to promote or advance any employee; or

4.  employment-related practices, policies, acts  or omissions such as  coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a present, past, future or prospective employee.

This exclusion applies:

1.  whether the **Insured** may be liable as an employer or in any other capacity; and

2.  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

E.  **Care, Custody and Control**

Under Coverages A and B, this insurance does not apply to **Property Damage** to:

1.  property you own, rent or occupy;

2.  premises you sell, give away or abandon if the **Property Damage** arises out of any part of those premises;

3.  property loaned to you;

4.  personal property in the care, custody or control of the **Insured**;

5.  that particular part of real property on which you or any contractors working directly or indirectly  on your behalf are performing operations if the **Property Damage** arises out of those operations; or

6.  that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to **Property Damage** included  in the **Products-Completed Operations Hazard**.

F.  **Nuclear Liability**

Under Coverages A and B, this insurance does not apply to:

1.  any liability:

    a.  with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

    b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain  financial protection pursuant to the Atomic  Energy Act of 1954,  or any law amendatory thereof, or (2)

*Archive Copy* ©1999 American International Group, Inc.

the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.   resulting from the hazardous properties of nuclear material if:

   i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf or (2) has been discharged or dispensed therefrom;

   ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

   iii) the injury or damage arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion iii. applies only to **Property Damage** to such nuclear facility and any property thereat.

2.   As used in this exclusion:

   a.   "hazardous properties" includes radioactive, toxic or explosive properties;

   b.   "nuclear material" means source material, special nuclear material or by-product material;

   c.   "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

   d.   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   e.   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

   f.   "nuclear facility" means:

   i)   any nuclear reactor;

   ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

   iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   g.   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*Archive Copy* ©1999 American International Group, Inc.

h. **Property Damage** includes all forms of radioactive contamination of property.

G. **Pollution - Coverage A**

Under Coverage A, this insurance does not apply to:

1. any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants:**

    a. at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any **Insured;**

    b. at or from any premises, site or location that is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

    c. that are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom you may be legally responsible;

    d. at or from any premises, site or location  on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing  operations if the **Pollutants** are brought  on or to the premises, site or location  in  connection  with  such  operations  by  such  **Insured,**  contractor  or subcontractor;

    e. at or from any premises, site or location on which  any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of **Pollutants;**

    f. that are contained in any property that is:

        i) being transported or towed  by, handled or handled for movement  into, onto or from an **Auto** covered by **Scheduled Underlying Insurance;**

        ii) otherwise in the course of transit by or on behalf of the **Insured;** or

        iii) being stored, disposed of, treated or  processed in  or upon  an **Auto** covered by **Scheduled Underlying Insurance;**

    g. i) before the **Pollutants** or any property  in which the **Pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement  into  or  onto  an  **Auto**  covered  by  **Scheduled  Underlying Insurance;** or

        ii) after the **Pollutants** or any property in which the **Pollutants** are contained are moved from the **Auto** covered by **Scheduled Underlying Insurance** to the place where they are finally delivered, disposed of or abandoned by the **Insured.**

2. any loss, cost or expense arising out of any:

    a. request, demand order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants;** or

    b. claim or **Suit** by  or on  behalf of  a governmental  authority for  damages because of testing  for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any  way responding to or assessing the effects of **Pollutants.**

However, the following exceptions to Paragraph 1. of this Pollution exclusion for Coverage A shall apply:

1) **Products-Completed Operations Hazard:** Paragraphs 1a through 1d of this exclusion do not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

   a)   discarded, dumped, abandoned, thrown away; or

   b)   treated or handled as waste;

   by anyone.

2) **Hostile Fire:** Paragraphs 1a and 1d do not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire.**

3) **Equipment to Heat the Building and Contractor/Lessee Operations:** Paragraph 1a of this exclusion does not apply to:

   a)   **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

   b)   **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured.**

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment:** Paragraph 1d of this exclusion does not apply to:

   a)   **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

   b)   **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto:** Paragraph 1f of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts if:

   a)   the **Pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

*Archive Copy* ©1999 American International Group, Inc.

        b)     the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment listed in Paragraphs 6b and 6c of the definition of **Mobile Equipment**.

6)     **Upset, Overturn or Damage of an Auto**: Paragraph 1g of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

        a)     the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance**; and

        b)     the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

**H.**    **Pollution - Coverage B**

Under Coverage B, this insurance does not apply to:

1.    **Bodily Injury, Property Damage, Personal Injury** or **Advertising Liability** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world;

2.    any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or assess the effects of **Pollutants**; or

3.    any loss, cost or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

**I.**    **Damage to Impaired Property**

Under Coverage B, this insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.    a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.    a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**J.**    **Damage to Your Product**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

**K.**    **Damage to Your Work**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**L.**    **Product Recall**

Under Coverage B, this insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

*Archive Copy*

    1.    **Your Product**

    2.    **Your Work**; or

    3.    **Impaired Property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**M.**    **Employee to Employee**

Under Coverage B, this insurance does not apply to liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

**N.**    **Willful Violation, Falsity, Prior Publication, Criminal, Assumed Liability**

Under Coverage B, this insurance does not apply to **Personal Injury** or **Advertising Injury**:

    1.    caused by or at the direction of any **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury** or **Advertising Injury**;

    2.    arising out of oral, written or electronic publication of material if done by or at the direction of any **Insured** with knowledge of its falsity;

    3.    arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the **Policy Period**;

    4.    arising out of a criminal act committed by or at the direction of any **Insured**; or

    5.    for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

**O.**    **Various Advertising**

Under Coverage B, this insurance does not apply to **Advertising Injury**:

    1.    arising out of a breach of contract, except an implied contract to use another's advertising idea;

    2.    arising out of the failure of goods, products or services to conform with any statement of quality or performance made;

    3.    arising out of the wrong description of the price of goods, products or services; or

    4.    committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

**P.**    **Watercraft, Aircraft**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

**Q.**    **War**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

*Archive Copy* ©1999 American International Group, Inc.

R.  **Expected or Intended**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to:

1.  **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property; or

2.  liability of the **Named Insured** for damages as the result of an act committed by the **Named Insured's** employee(s) which results in **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Named Insured's** employee(s), provided such act was not committed at the direction of the **Named Insured**.

S.  **Liquor Liability**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

T.  **"No-Fault," "Uninsured Motorist" or "Underinsured Motorist" Laws**

Under Coverage B, this insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law.

---

| **VII. CONDITIONS - APPLICABLE TO COVERAGES A AND B** |
|---|

A.  **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we shall be liable for, in addition to the applicable Limits of Insurance of this policy, all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

B.  **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C.  **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D.  **Cancellation**

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.     We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.     The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.     If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 5 of the Declarations.

5.     If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 5 of the Declarations.

6.     Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.     The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.     Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.    **Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

F.    **Duties in the Event of an Occurrence, Claim or Suit**

1.     You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

     a.     how, when and where the **Occurrence** took place;

     b.     the names and addresses of any injured persons and any witnesses; and

     c.     the nature and location of any injury or damage arising out of the **Occurrence**.

2.     If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing:

     a.     under Coverage A, as soon as practicable and in accordance with the reporting provisions of **Scheduled Underlying Insurance**.

     b.     under Coverage B, as soon as practicable.

Written notice should be mailed or delivered to: AIG Excess Casualty Claim Department, 70 Pine Street, New York, NY 10270.

3.     You and any other involved **Insured** must:

     a.     immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

     b.    authorize us to obtain records and other information;

     c.    cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

     d.    assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.    No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**G.**   **Headings**

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

**H.**   **Inspection**

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

**I.**   **Knowledge of Occurrence or Claim**

Knowledge of an **Occurrence,** claim or **Suit** by your agent, servant or employee shall not in itself constitute knowledge by you, unless a principal of yours shall have received notice of such **Occurrence**, claim or **Suit** from said agent, servant or employee.

**J.**   **Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

1.    you have complied with all the terms of this policy; and

2.    the amount you owe has been determined with our consent or by actual trial and final judgment.

**K.**   **Maintenance of Scheduled Underlying Insurance**

During the **Policy Period,** you agree:

1.    to keep **Scheduled Underlying Insurance** in full force and effect;

2.    that the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3.    that the total applicable limits of **Scheduled Underlying Insurance** shall not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss**; and

4.    that any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have had you fully complied with these requirements.

L.    **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M.    **Premium**

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 5 of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 5 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we shall retain the Minimum Premium as shown in Item 5 of the Declarations for each twelve months of the **Policy Period.**

N.    **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1.    as if each **Named Insured** were the only **Named Insured**; and

2.    separately to each **Insured** against whom claim is made or **Suit** is brought.

O.    **Transfer of Rights of Recovery**

1.    If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2.    Any recoveries shall be applied as follows:

   a.    any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b.    we then will be reimbursed up to the amount we have paid; and

   c.    lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery shall be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3.    If, prior to the time of an **Occurrence**, you and the insurer of **Scheduled Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, as that term is defined under Coverage B, we will also waive any rights we may have against such person or organization.

P.    **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.    **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R.    **When Damages are Payable**

We will not make any payment under this policy unless and until:

1.    under Coverage A, the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss.**

2.    under Coverage B, the **Self-Insured Retention** has been exhausted by the payment of **Loss.**

When the amount of **Loss** has finally been determined, we will promptly pay on behalf of the **Insured** the amount of such **Loss** within the applicable Limits of Insurance of this policy.

You shall promptly reimburse us for any amount within the **Self-Insured Retention** paid by us on behalf of the **Insured.**

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

President
American Home Assurance Company

President
American International South
Insurance Company

President
National Union Fire Insurance
Company of Pittsburgh, PA

President
Illinois National Insurance Company

President
National Union Fire Insurance
Company of Louisiana

Secretary

American Home Assurance Company
American International South
Insurance Company
National Union Fire Insurance
Company of Pittsburgh, PA
Illinois National Insurance Company
National Union Fire Insurance
Company of Louisiana

## SCHEDULE OF UNDERLYING INSURANCE

Issued to:                                                          Policy Number:
    AIMCO PROPERTIES L.P.                                          BE    7396968

By:
    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | CHICAGO INS CO<br>TBD<br>06/01/00<br>06/01/02 | $1,000,000<br>EACH OCCURRENCE<br>$2,000,000<br>GENERAL AGGREGATE<br>$1,000,000<br>PRODUCTS/COMPLETED OPERATIONS |
| AUTO LIABILITY | LIBERTY MUTUAL<br>TBD<br>06/01/00<br>06/01/02 | $1,000,000<br>COMBINED SINGLE LIMIT |
| EMPLOYEE BENEFITS | CHICAGO INS CO<br>TBD<br>06/01/00<br>06/01/02 | $1,000,000<br>EACH OCCURRENCE<br>$1,000,000<br>GENERAL AGGREGATE |

_____
**AUTHORIZED REPRESENTATIVE**

UNDSCH (5/99)
AH0006          *Archive Copy*