# EXHIBIT J

# LEXINGTON INSURANCE COMPANY
## Wilmington, Delaware
### (A Stock Insurance Company)
Administrative Offices: 200 State Street, Boston, Massachusetts 02109
### Stand Alone Excess Liability Policy
### Declarations

Policy Number: 0151174

Renewal of: NEW

**ITEM 1.**  Named Insured:  STERLING EQUITIES, INC

Address:      111 GREAT NECK ROAD

GREAT NECK          NY 11021

**ITEM 2.**  Policy Period

From:  12/10/01      To:  12/10/02
(12:01 A.M. Standard Time at the Address of the Insured shown above.)

**ITEM 3.**  Limits of Liability

a) Per Occurrence Limit                                             $1,000,000

b) Aggregate Limits - Separately as respects:

(i)   Products Hazard and Completed Operations
Hazard Combined                                       1,000,000

(ii)  All other Coverages Combined                        3,000,000

**ITEM 4.**  Self-Insured Retention: 250,000

**ITEM 5.**  Premium

| Estimated Exposure | Rating Base | Rate | Audit Period |
|---|---|---|---|
| 9,708 | UNITS | 29.20 | ANNUAL |
| 2,933,356 | PER 1,500 SQ.FT. | 29.20 | ANNUAL |

| Advance Premium | Annual Minimum Premium | Minimum Earned Premium at Inception |
|---|---|---|
| 340,564 | 340,564 | 119,197.40 |

**ITEM 6.**  Schedule of Retained Amounts

| Type of Insurance | Amount |
|---|---|
| SELF INSURED RETENTION | 250,000 |

**ITEM 7.**  Endorsements: SEE ATTACHED FORMS SCHEDULE

**ME 03796**

Authorized Representative OR
Countersignature (In states where applicable)

LEXOCCSTA(ED.01/92)  LX0566

FORMS SCHEDULE

Named Insured: STERLING EQUITIES, INC.

Policy No:      015 1174

Effective Date: 12/10/2001

| Form Number | Edition Date | END. NUMBER | Title |
|---|---|---|---|
| LEXOCCSTA | 01/92 | | STAND ALONE EXCESS LIAB |
| LEX-OCC-STA-T | 07/94 | | STAND ALONE EXCESS LIAB TEXT |
| LEXOCC271 | 03/92 | ENDT #001 | EMPLOY-RELATED PRACTICES EXC. |
| LEXCME094 | 03/86 | ENDT #002 | PROFESSIONAL LIABILITY EXC. |
| LX9407 | 09/00 | ENDT #003 | PUNITIVE DAMAGES EXCLUSION |
| LEXOCC262 | 06/91 | ENDT #004 | SECURITIES/FINANCIAL INT EXC. |
| LEXOCC227 | 04/90 | ENDT #005 | SELF INSURED RETENTION PER OCC. |
| LX7100 | 11/94 | ENDT #006 | IL 00 21 NUCLEAR ENERGY EXC. |
| LEXCM077 | 03/86 | ENDT #007 | MINIMUM EARNED PREMIUM |
| | | ENDT #008 | AMENDATORY ENDORSEMENT |
| | | ENDT #009 | AMENDMENT AGGREGATE LIMITS |
| | | ENDT #010 | FUNGUS (MOLD) |
| LX7151 | 07/93 | ENDT #011 | TOTAL LEAD EXCLUSION |

ME 03797

**LEXINGTON INSURANCE COMPANY**

**Stand Alone Excess Liability Policy**

**READ THIS POLICY CAREFULLY**

The terms and conditions of this policy are not necessarily consistent with the terms and conditions of any policy which may insure the Retained Amount, or of any policy which shares the same layer of coverage as this policy.

Such inconsistency may result in a gap in coverage which may require the **Insured** to bear financial responsibility and/or obligation at the time of loss.

Certain provisions in this policy restrict coverage.  Please read the entire policy carefully to determine **the Insured's** rights and duties, and what is and is not covered.

The words "we," "us" and "our" refer to the Lexington Insurance Company which provides this insurance.  The word **Insured** means the first Named Insured shown in the Declarations, and any person or organization qualifying as such under the section entitled, DEFINITIONS - **PERSONS INSURED.**

In consideration of the payment of the premium, in reliance upon the statements in the Declarations made a part hereof and subject to the limits of liability, exclusions, conditions and other terms of this policy, we agree with the first Named Insured named in the Declarations as follows:

## INSURING AGREEMENTS

I.   COVERAGE

We will pay on behalf of the **Insured** that portion of the **ultimate net loss**, in excess of the Retained Amounts as determined in Section III B of this policy, which the **Insured**. shall become legally obligated to pay as compensatory damages (excluding all fines, penalties, punitive or exemplary damages) because of **personal injury, property damage or advertising injury,** caused by an **occurrence** to which this insurance applies, due to:

A.   liability imposed upon the **Insured** by law, or

B.   liability for wrongful acts of others assumed by the **Insured** under any written contract entered into prior to the time of **occurrence**

II.   DEFENSE

A.   After any aggregate limits of the Retained Amounts are exhausted through payment of compensatory damages for claims that would otherwise be covered under this policy:

1.   We will defend any subsequent suit(s) against the **Insured** alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof, even if such suit is groundless, false or fraudulent, but we will have the right to make such investigation and negotiation and settlemnt of any **claim(s)** or suit(s) as may be deemed expedient by us.

2.   We will pay: (a) all premiums on bonds to release attachments for an amount not in excess of the applicable limits of liability of this policy; (b) all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds; (c) all costs taxed against the **Insured** in any such suit; (d) all expenses incurred by us; and (e) all interest accruing after entry of judgment until we have paid, tendered or deposited in court that part of any judgment as does not exceed the limit of our liability thereon.

3.   We will reimburse the **Insured** for all reasonable expenses incurred at our request, (including actual loss of wages or salary, but not loss of other income  (not to exceed one hundred (100) dollars per day) because of the **Insured's** attendance at hearings or trials at such request.

– 1 –

**ME 03798**

4. We will pay pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on the period of time after the offer.

B. We will pay the amounts incurred under IIA above, but any such payments shall:

1. serve to reduce the Limits of Liability of this policy as stated in the Declarations, and

2. be subject to the **Insured's** retention of an amount equal to that stated in the Declarations as Self Insured Retention. The Self Insured Retention applies separately to each and every **occurrence**.

C. In all other instances except IIA above:

we shall not be called upon to assume, charge of the investigation, settlement or defense of any **claim** made or suit brought or proceedings instituted against the **Insured** but shall have the right and be given the opportunity to be associated in the defense and trial of any such **claims**, suits or proceedings relative to any **occurrence** which, in our opinion, may create liability for us under the terms of this policy. If we avail ourselves of such right and opportunity, we shall do so at our own expense.

## III. LIMITS OF LIABILITY

A. Aggregate

This policy is subject to the aggregate limits of liability as stated in Item 3.b of the Declarations. The aggregate limits of liability are the maximum amounts we will pay under this policy for the total of all **occurrence** during the policy period, applying separately to:

1. the **products hazard**: and **completed operations hazard** combined;

2. all other coverages combined, except **automobile** liability which is not subject to any aggregate limit.

B. Retained Amounts

1. Coverage applies only to the amount in excess of the amounts as stated in Item 6 of the Declarations, Schedule of Retained Amounts (herein referred to as Retained Amounts), and only for those coverages for which an amount is shown.

2. These Retained Amounts apply whether or not the **Insured** maintains applicable underlying insurance.

3. These Retained Amounts shall consist of payments for compensatory damages only. The **Insured** shall bear all legal costs and defense expenses incurred until such time as the applicable Retained Amounts are exhausted by the payment of compensatory damages.

4. In the event of the reduction or exhaustion of the aggregate limits of the Retained Amounts by payments of **claims** that would be insured by our policy, we will, subject to the terms and conditions of this policy and the applicable Limit of Liability stated in the Declarations:

   a. in the event of reduction, pay the excess of the reduced Retained Amount, or

   b. in the event of exhaustion, apply as insurance, subject to the **Insured's** retention of an amount equal to the stated in the Declarations as Self-Insured Retention. The Self-Insured Retention applies separately to each and every **occurrence**

5. The Retained Amounts will only be reduced or exhausted by payments of **claims** that would be insured by this policy.

C. **Occurrence** Limit

Subject to the above provision respecting aggregates, the Limit of Liability stated in the Declarations as per **occurrence** is the total limit of our liability for **ultimate net loss** including damages for care, loss of services or loss of consortium because of **personal injury, property damage and advertising injury** alone or in combination, sustained by one (1) or more persons or organizations as a result of any one (1) **occurrence**.

D. Limit Exhaustion

This policy shall cease to apply after the applicable aggregate limits of liability have been exhausted by payment of defense costs and/or judgments and/or settlements.

## EXCLUSIONS

This policy does not apply:

1. to any obligation for which the **Insured** or any carrier as his insurer may be held liable under any Workers' Compensation, Occuptional Disease, Unemployment Compensation, or Disability Benefits Law, or under any similar law, or to Employers' Liability as respects any occupational disease;

2. to **bodily injury** to an employee of any **Insured** arising out of and in the course of the employment by any **Insured**, or to any **claims** of the spouse, child, parent, legal guardian, brother or sister of that employee as a consequence of said **bodily injury**;

   This exclusion also applies:

   a. whether any **Insured** may be liable as an employer or in any other capacity; and

   b. to any obligation to share damages with or repay someone else who must pay damages because of the injury;

3. to any obligation incurred or imposed upon the **Insured** (or which are imputed to the **Insured**) under the Employee Retirement Income Security Act of 1974. Public Law 93-406 and any law amendatory thereof;

4. to any obligation for which the **Insured** may be liable under no fault or uninsured motorist or underinsured motorists law :

5. to any liability for **property damage** to:

   a. real property occupied by or leased by the **Insured**;

   b. real personal property used by the **Insured**;

   c. personal property in the **Insured's** care, custody or control or as to which the **Insured** is for any purpose exercising control;

6. to the loss of use of tangible property which has not been physically injured or destroyed, resulting from:

   a. a delay in or lack of performance of any contract or agreement by the **Insured** or on the **Insured's** behalf, or

   b. the failure of the **Insured's products** or work performed by the **Insured** or on the **Insured's** behalf to meet the level of performance, quality, fitness or durability warranted or represented by the **Insured**; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the **Insured's products** or work performed by the **Insured** or on the **Insured's** behalf after such **products** or work have been put to use by any person or organization other than the **Insured**;

   to **property damage** to

   a. the **Insured's products** arising out of such **products** or any part of such products;

b.   work performed by the **Insured** or on the **Insured's** behalf arising out of such work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

c.   property owned by the **Insured;**

d.   aircraft or watercraft rented to the **Insured,** used by the **Insured,** entrusted to, or in the **Insured's** care, custody or control;

8.   to damage claimed for the withdrawal, inspection, repair, replacement or loss of use of the **Insured's products** or work completed by the **Insured** or of any property to which such **products** or work form a part, if such **products,** work or property are withdrawn from the market or from use by anyone because of any known or suspected defect or deficiency therein;

9.   to liability of any employee with respect to **personal injury** to another employee of the same employer injured in the course of such employment, unless insurance therefor is provided by a policy listed in the Schedule of Retained Amounts, and then not for broader coverage than is afforded to such employee by that policy;

10.  to **personal injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading, unloading or entrustment of:

a.   any watercraft

b.   any aircraft owned by the **Insured** or rented to the **Insured** without a crew:

11.  to **personal injury** or advertising injury:

a.   arising out of the oral or written publication of material, if done by the **Insured,** or at the **Insured's** direction with knowledge of its falsity;

b.   arising out of the willful violation of a penal statute or ordinance committed by the **Insured** or with the **Insured's** consent;

12.  to **advertising injury** arising out of;

a.   failure of performance of any contract or breach of contract, other than misappropriation of advertising ideas under an implied contract;

b.   an offense committed by the **Insured** if the **Insured's** business is advertising, broadcasting, publishing or telecasting;

c.   infringement of trade name, registered trade mark or service mark, other than titles or slogans, by use on or in connection with goods or services sold, offered for sale or advertised;

d.   incorrect description of any article or commodity;

e.   mistake in advertised prices;

13.  to **personal injury** or **property damage:**

a.   with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability or resulting from the hazardous properties of nuclear material and with respect to which (i) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b.   under any liability coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

- 4 -

ME 03801

1) the nuclear material (a) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (b) has been discharged or dispersed therefrom:

2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

3) the injury, sickness, disease, death or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such nuclear facility and any property thereat;

c.  as used in this exclusion;

1) hazardous properties includes radioactive, toxic or explosive properties;

2) nuclear material means source material, special nuclear material or by-product material;

3) source material, special nuclear material and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4) spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

5) waste means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (b) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below:

6) nuclear facility means:

a) any nuclear reactor,

b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes,

c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than twenty-five (25) grams of plutonium or uranium 233 or any combination thereof, or more than two hundred fifty (250) grams of uranium 235.

d) any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

7) nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8) with respect to injury to or destruction of property, the word injury or destruction includes all forms of radioactive contamination of property;

14. to **personal injury** or **property damage** (including the loss of use thereof) caused by, contributed to or arising out of the actual or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic, chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course or body of water, whether above or below ground. It is understood and agreed that the intent and effect of this exclusion is to delete from any and all coverages afforded by this policy any **claim**, action, judgment, liability, settlement, defense or

expenses (including any loss, costs, or expense arising out of any government direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, dispersal, release or escape, whether such results from the **Insured's** activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable, and whenever such occurs;

15.    to any liability the **Insured** may have, directly or indirectly occasioned by, happening through, or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, terrorism, military terrorism, military or usurped power or confiscation or nationalization or acquisition or destruction of or damage to property by or under the order of any government or public or local authority;

16.    to any liability resulting from **personal injury** or **property damage** which is expected or intended by the **Insured,** except that this exclusion does not apply to **personal injury** resulting from the use of reasonable force to protect persons or property;

17.    to any liability for **personal injury** or **property damage**, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust, or

to any obligation of the **Insured** to indemnify any party because of damages arising out of such **property damage, personal injury** , sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result o f the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust, or

to any obligation to defend any suit or **claims** against the **Insured** alleging **personal injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish, mental injury or **property damage** resulting from or contributed by any and all manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

18.    to discrimination or humiliation;

19.    to any **claim** in respect of which the **Insured** either has given written notice to the insurers of any other insurance before the policy period as stated in Item 2 of the Declarations, or gives written notice of potential **claims** which notice is treated as received by any insurers before the policy period as stated in Item 2 of the Declarations.

## DEFINITIONS

1.    **Advertising injury** means injury arising out of one or more of the following offenses:

   a.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b.    oral or written publication of material that violates a person's rights of privacy;

   c.    misappropriation of advertising ideas or style of doing business; or

   d.    infringement of copyright, title or slogan.

2.    **Automobile (or Auto)** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **Automobile (or Auto)** does not include **mobile equipment**

   **Claim** means a written demand upon the **Insured** for compensatory damages or services and shall include the service of suit or institution of arbitration proceedings against the **Insured**.  **Claim** does not include reports of accidents, acts, errors, **occurrences,** offenses or omissions which may give rise to a **claim** under this policy.

- 6 -

LEX-OCC-STA-T(Ed. 07/94)
LX0567

**ME 03803**

4.  **completed operations hazard** includes **personal injury** and **property damage** arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the **personal injury** or **property damage** occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the **Insured**. Operations includes materials, parts or equipment furnished therewith.

Operations shall be deemed completed at the earliest of the following times:

a.  when all operations to be performed by or on the **Insured's** behalf under the contract have been completed;

b.  when all operations to be performed by or on behalf of the **Insured** at the site of operations have been completed;

c.  when that portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Operations which may require further service or maintenance work, or correction, repair, or replacement because of any defect or deficiency but which are otherwise complete, shall be deemed completed.

The **completed operations hazard** does not include **personal injury** or **property damage** arising out of:

(i)  operations in connection with the transportation of property, unless the **personal injury** or **property damage** arises out of a condition in or on a vehicle created by the loading or unloading thereof;

(ii)  the existence of tools, uninstalled equipment or abandoned or unused materials.

5.  **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

a.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.  vehicles maintained for use solely on or next to premises you own or rent;

c.  vehicles that travel on crawler treads;

d.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

1.  power cranes, shovels, loaders, diggers or drills, or

2.  road construction or resurfacing equipment such as graders, scrapers or rollers;

e.  vehicles not described in a. b. c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

1.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment, or

2.  cherry pickers and similar devices used to raise or lower workers;

f.  vehicles not described in a. b. c. or d. above maintained primarily for purposes other than the transportation or persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

1.  equipment designed primarily for:

ME 03804

      a.    snow removal;

      b.    road maintenance, but not construction or resurfacing;

      c.    street cleaning;

  2.    cherry pickers and similar devices mounted on **automobile** or truck chassis and used to raise or lower workers; and

  3.    air compressors, pumps and generators, including spraying, welding, building cleaning, geographical exploration, lighting and well servicing equipment.

**6.   Occurrence**

  a.    With respect to **personal injury and property damage**, the term **occurrence** means an event, including continuous or repeated exposures to conditions, which result in **personal injury** and/ or **property damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be deemed one (1) **occurrence**.

  b.    With respect to **advertising injury**, all damages involving the same injurious material or act, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants shall be deemed to arise out of one (1) **occurrence**.

**7.   Personal injury means:**

  a.    **bodily injury**, sickness or disease sustained by a person, including mental anguish, mental injury or death resulting therefrom;

  b.    false arrest, false imprisonment, wrongful detention or malicious prosecution;

  c.    wrongful entry into, or eviction of any person from a room, dwelling or premises that the person occupies;

  d.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e.    oral or written publication of material that violates a person's right of privacy;

  except b, c, d, and e, do not apply to advertising, publishing, broadcasting or telecasting done by or for the **Insured**.

**8.   Persons insured means each of the following to the extend set forth below:**

  a.    The Named Insured as shown in the Declarations. The Named Insured shall also include:

    1.    such subsidiary or owned or controlled companies of the Named Insured as are in existence at the inception date of this policy;

    2.    any subsidiary or owned or controlled company of the Named Insured created or acquired subsequent to the inception date of this policy, but coverage hereunder will not apply:

      a.    to personal **injury, property damage** and/or **advertising injury** which is a result of exposure to the same general harmful conditions, happening prior to the date of such creation or acquisition;

      b.    for a period greater than thirty (30) days from the date of such creation or acquisition. However, of the Named Insured shall give us notice of any such created or acquired subsidiary or owned or controlled company within the aforesaid period of thirty (30) days and the Named Insured shall:

        (i)    pay any additional premium, and

        (ii)   accept such terms

**ME 03805**

as may be required by us, then this policy shall continue to apply to such subsidiary or owned or controlled company.

b.  If the Named Insured set forth in the Declarations is a partnership or joint venture, any partner or member thereof, but only with respect to the liability incurred in the operation of that partnership or joint venture; however, this policy does not apply to any **autos** owned by or registered in the name of any partner.

c.  If the Named Insured set forth in the Declarations is an individual, their spouse, if a resident of the same household; but this policy will only apply to the conduct of a business or business properties of which the Named Insured is sole proprietor.

d.  Any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to operations conducted by the Named Insured or on the Named Insured's behalf or to the facilities of or used by the Named Insured. The insurance extended by this definition shall in no event be broader in scope or limits than the obligation imposed upon the Named Insured by the written contract.

e.  Except with respect to the ownership, maintenance or use, including loading, unloading or entrustment of any auto, aircraft or watercraft, any of the **Insured's** partners, executive officers, directors, stockholders or employees, while acting within the scope of their duties.

f.  Any organization or proprietor while acting as the **Insured's** real estate manager.

g.  Any persons while using any **auto** owned by the **Insured** or any auto loaned to the **Insured** or hired for use on the **Insured's** behalf, and any person legally responsible for the use thereof, provided that actual use thereof is with the **Insured's** permission, and any of the **Insured's** executive officers, directors or stockholder with respect to the use of an **auto** or watercraft not owned by the **Insured** but used in the **Insured's** business. The insurance with respect to any person or organization other than the **Insured** does not apply under this division:

1.  to any person or organization, or to any agent or employee thereof, operating an **auto** sales agency, repair shop, service station, storage garage or public parking place, with respect to any **occurrence** arising out of the operation thereof;

2.  with respect to any **auto** hired by or loaned to the **Insured**, to the owner or lessee thereof other than the **Insured**, or to any agent or employee of such owner or lessee.

9.  **Products** means goods or **products** manufactured, sold, handled or distributed by the **Insured** or by others trading under th Insured's name, including any container thereof (other than a vehicle), but products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

10. **Products hazard** includes **personal injury** and **property damage** arising out of the **Insured's products** or reliance upon a representation or warranty with respect thereto, but only if the **personal injury or property damage** occurs away from premises owned by or rented to the **Insured** and after physical possession has been relinquished to others.

11. **Property damage** shall mean: (a) physical injury to or destruction of tangible property, including loss of use thereof at any time resulting therefrom; or (b) loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by a covered **occurrence**.

12. **Ultimate net loss** means the total sum which the **Insured**, or any company as its insurer, or both, become legally obligated to pay by reason of **personal injury, property damage** or **advertising injury claims** covered by this policy, either through adjudication or compromise (with our written consent), and shall also include hospital, medical and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, or expense for doctors, nurses, and investigators and other persons, and for settlement, adjustment, investigation and defense of **claims** but excluding the **Insured's** salaries or the salaries of any of the underlying insurer's permanent employees.

- 9 -

ME 03806

## CONDITIONS

1. **Premium** If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premiums may be required for any additional **Insureds** as outlined in Definition 8, **Persons Insured**, or as provided in Condition 12, Cancellation.

   If the policy is subject to audit adjustment, the premium will be based upon the rating bases as set forth in the Declarations. Upon expiration of this policy or its termination during the policy period or at the end of each policy year, the earned premium shall be computed as follows: a) if the earned premium is more than the advance premium paid, the first Named Insured will promptly pay the excess to us; b) if less, we will return to the first Named Insured the unearned portion, subject to the Annual Minimum Premium stated in the Declarations, which in no case shall be less than the Minimum Earned Premium at inception as stated in the Declarations.

2. **Prior Insurance and Non-Cumulation of Liability** It is agreed that if any loss is also covered in whole or in part under any other excess policy issued to any **Insured** prior to the inception date hereof, our Limit of Liability as stated in the Declarations shall be reduced by any amounts due any **Insured** on account of any such prior insurance.

3. **Severability of Interest** In the event of **claims** being made by reason of **personal injury, property damage or advertising injury** suffered by one (1) **Insured** herein for which another **Insured** herein is or may be liable, this policy shall cover the **Insured** against whom a **claim** is made or may be made in the same manner as if separate policies had been issued to each **Insured** herein. Nothing contained herein shall operate to increase our limit of liability as set forth in the Limits of Liability section.

4. **Notice of Occurrence, Claim or Suit**

   a. Notice of **occurrence** - the first Named Insured shall immediately notify us in writing of any **occurrence** which may reasonably be expected to result in a **claim** against this policy. Notice shall include:

      1) how, when and where the **occurrence** took place; and

      2) the names and addresses of any injured persons and any witnesses.

   b. Notice of **claim** or suit - It is a condition precedent for this policy to apply that:

      1) the first Named Insured give us immediate written notice of any **claim** or suit which is reasonably likely to involve this policy. In determining whether any such **claim** or suit is likely to involve this policy, the first Named Insured shall assume that the **Insured** is liable and liable for any amount(s) claimed.

      2) the first Named Insured give us immediate written notice of any **claim** or suits, which, alone or in combination with any other **claims** for injury or damage to which this policy may apply may exceed 25% of the applicable amount set forth in the Schedule of Retained Amounts. The first Named Insured will notify us on the assumption that an **Insured** is liable and that an **Insured** is liable for any amount(s) claimed.

      3) As respects 1. and 2. above, the first Named Insured and any other involved **Insured** must:

         a. immediately send us copies of any demands, notices, summonses or other legal papers received in connection with the **claim** or suit;

         b. authorize us to obtain records and other information;

         c. cooperate with us in the investigation, settlement or defense of the **claim** or suit; and

         d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of the injury or damage to which this insurance applies.

LEX-OCC-STA-T(Ed. 07/94)
LX0567

**ME 03807**

4) No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense for any **claim** or suit covered by this policy, without our consent.

5. **Inspection** We are permitted but not obligated to inspect the **Insured's** property and obligations at any time.

Neither our right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on the **Insured's** behalf or for the **Insured's** benefit or others to determine or warrant that such property or operations are safe or healthful or that they comply with laws, regulations, codes, or standards.

6. **Audit** We may examine and audit the **Insured's** books and records at any time during the policy period and extensions thereof and within three (3) years after the final termination of this policy as far as they relate to the subject matter of this insurance.

7. **Appeals** In the event the first Named Insured or the first Named Insured's underlying insurer (if applicable) elect(s) not to appeal a judgment in excess of the underlying limits, we may elect to make such appeal at our own cost and expense, and we shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall our liability for the **ultimate net loss** exceed the sum set forth in the Declarations for any one **(1) occurrence**, including the cost and expense of such appeal.

8. **Other Insurance** If other valid and collectible insurance with any other insurer is available to the **Insured** covering a loss also covered hereunder, this insurance shall be excess of, and shall not contribute with such other insurance. Excess insurance over the limits of liability expressed in this policy is permitted without prejudice to this insurance, and the existance of such insurance shall not reduce any liability under this policy.

9. **Application of Salvages - Subrogation** All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this insurance shall be applied as if recovered or received prior to such settlement, and all necessary adjustments shall then be made between the **Insured** and us, provided always that nothing in this clause shall be construed or mean that losses under this insurance are not recoverable until the **Insured's ultimate net loss** has been fully ascertained. Inasmuch as this policy is excess coverage, the **Insured's** right of recovery against any person or other entity cannot always be exclusively subrogated to us. It is therefore understood and agreed that in case of any payment hereunder, we shall act in concert with all other interests (including the **Insured's**) concerned in the exercise of such rights of recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interest (including the **Insured's**) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them. We shall then be reimbursed out of any balance then remaining, up to the amount paid hereunder.

Lastly, the interests ( including the **Insured's**) of whom this coverage is excess are entitled to claim the residue, if any. Expense necessary to the recovery of any such amounts shall be apportioned between the interests (including the **Insured's**) concerned in the ratio of their respective recoveries as finally settled.

10. **Changes** Notice to or knowledge possessed by any person shall not affect a waiver or change in any part of this policy or stop us from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by our authorized representative.

11. **Assignment** Assignment of interest under this policy shall not bind us until our consent is endorsed hereon; if, however, the first Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the first Named Insured's legal representative as **Insureds**; provided that notice of cancellation addressed to the first Named Insured in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

12. **Cancellation** This policy may be cancelled by the first Named Insured by surrender thereof to us or any of our authorized agents, written notice stating when thereafter such cancellation shall be effective. The policy may be cancelled by us by mailing to the first Named Insured at the address shown in Item 1 of the

LEX-OCC-STA-T(Ed. 07/94)
LX0567

**ME 03808**

Declarations, written notice stating when, not less than thirty (30) days thereafter (ten (10) days with respect to cancellation for non-payment of premium), such cancellation shall be effective.

Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the first Named Insured or by us shall be equivalent to mailing.

If we cancel, earned premium shall be computed pro rata. If the first Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table procedure. In the event of such cancellation, the earned premium shall in no case be less than the Minimium Earned Premium at Inception as stated in the Declarations.

Premium adjustment may be made at the time cancellation is effected or as soon as practible thereafter. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due the first Named Insured.

If this policy insurers more than one (1) Named Insured, cancellation may be effected by the first Named Insured for the account of all **Insureds**. Notice of cancellation by us to such first Named Insured shall be notice to all **Insureds**. Payment of any unearned premium to such first Named Insured shall be for the account of all interests in such payment.

13. **Bankruptcy and Insolvency** In the event of the Named Insured's bankruptcy or insolvency or any entity compromising the Named Insured, we shall not be relieved thereby of the payment of any **claims** hereunder because of such bankruptcy or insolvency. However, the inability of the Named Insured to pay any amount of self insurance in any Retained Amount, or the inability of any insurer to pay any Retained Amount will in no way increase or expand our liability under this policy.

14. **First Named Insured**. The first Named Insured in Item 1 of the Declarations shall be responsible for payment of all premiums, and shall act of behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any return premium that may become payable under this policy.

15. **Legal Actions Against Us** No person or organization has a right under this policy:

a. to join us as a party or otherwise bring us into a suit asking for damages from an **Insured**; or

b. to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured** obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of liability. An agreed settlement means a settlement and release of liability signed by us, the first Named Insured and the claimant or the claimant's legal representative.

16. **Arbitration** Notwithstanding the Service of Suit Clause 17, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators, consisting of two (2) party- nominated (non-impartial) Arbitrators and a third (impartial) Arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The Party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it. The two (2) Arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, each Arbitrator shall submit to the other Arbitrator a list of three (3) proposed individuals, from which list each Arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire. Said hearings shall be held within thirty (30) days of the selection of the umpire.

- 12 -

ME 03809

The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the Arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear the expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of Boston, Massachusetts. The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

17.  **Service of Suit**

In the event of our failure to pay any amount claimed to be due hereunder, we at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 200 State Street, Boston, Massachusetts, 02109 or his or her representative, and that in any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this policy of insurance and h ereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of our duly authorized representatives.

**Secretary**                     **Chairman of the Board and CEO**

**ME 03810**

**ENDORSEMENT #21**

This endorsement, effective 12:01 AM,  December 12, 2001

Forms a part of policy no.:  0151174

Issued to:  STERLING EQUITIES, INC.

By:  LEXINGTON INSURANCE COMPANY

In consideration of a return premium of $10,740.00, it is hereby understood and agreed that endorsement #12 is null and voided.


All other terms and conditions of this policy are applicable to this endorsement.


_____
**Authorized Representative OR
Countersignature (In state where applicable)**

**ME 03811**

ENDORSEMENT #020

This endorsement, effective 12:01 A.M.  10/30/2002

Forms a part of policy no.:  0151174

Issued to: STERLING EQUITIES, INC.

By:    LEXINGTON INSURANCE COMPANY

In consideration of a Return Premium of $1,069, it is hereby agreed and understood that the following location is deleted from the policy.

Park West, 11845 West Avenue , San Antonio, TX

All other terms and conditions of the policy remain the same.

_Joseph J. George_

_____
Authorized Signature OR
Countersignature(In states where applicable)

LEXDOC021
LX0404

ME 03812

ENDORSEMENT #019

**This endorsement, effective 12:01 A.M. 10/22/2002**

**Forms a part of policy no.:** 0151174

**Issued to:** STERLING EQUITIES, INC.

**By:** LEXINGTON INSURANCE COMPANY

In consideration of a Return Premium of $5,086, it is hereby agreed and understood that the following locations are deleted from the policy.

Cedar Trails, 3700 McDonald Oaks ,Tyler, TX
Whispering Hills, 13658 O'Conner Road, San Antonio, TX
Quail Creek, 4901 Kinsey Dr., Tyler, TX
Logan's Mill, 1912 East William Cannon Dr., Austin, TX
Bristol Pointe,765 Polk Drive, Arlington, TX
Ridge Apts,., 11200 Perin Beitel Road, San Antonio, TX

All other terms and conditions of the policy remain the same.

_Joseph J George_

**Authorized Signature OR**
**Countersignature(In states where applicable)**

LEXDOC021
LX0404

**ME 03813**

ENDORSEMENT #018

This endorsement, effective 12:01 A.M.  10/21/2002

Forms a part of policy no.:   0151174

Issued to: STERLING EQUITIES, INC.

By:    LEXINGTON INSURANCE COMPANY

In consideration of a Return Premium of $2,017, it is hereby agreed and understood that the following location is deleted from the policy.

Summit of Thousand Oaks, 1550 Thousand Oaks Dr., San Antonio, TX

All other terms and conditions of the policy remain the same.

_____
Authorized Signature OR
Countersignature(In states where applicable)

LEXDOC021
LX0404

ME 03814

**ENDORSEMENT # 017**
**(Revised)**

This endorsement, effective 12:01 A.M.    06/07/2002

Forms a part of policy No. 0151174

Issued to: STERLING EQUITIES, INC.

By: LEXINGTON INSURANCE COMPANY

In consideration of a return premium of $6,937, it is hereby understood and agreed that the following location is deleted from the policy.

8849 Pearl Street
Thornton, CO

All other terms and conditions remain unchanged.

_Joseph J George_

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

ME 03815

**ENDORSEMENT # 016**
**(Revised)**

**This endorsement, effective 12:01 A.M.     04/12/2002**

**Forms a part of policy No. 0151174**

**Issued to: STERLING EQUITIES, INC.**

**By: LEXINGTON INSURANCE COMPANY**

In consideration of a return premium of $232, it is hereby understood and agreed that the following locations are deleted from the policy.

248 E. 50th Street and 253 E. 49th Street, New York, NY

All other terms and conditions remain unchanged.

_Joseph J Seiger_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

**LEXDOC021**
**LX0404**

**ME 03816**

ENDORSEMENT #013

This endorsement, effective 12:01 A.M. 02/06/2002

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC.

By: LEXINGTON INSURANCE COMPANY

ADDITIONAL NAMED INSURED

In consideration of the additional premium charge of $6,876., it is understood and agreed that the following new entity is hereby added to this policy as an additional named insured with respect to the following location:

> Park Crossing
> 2700 Park Crossing Way
> Lilburn, GA 30047

Units 280, Total Square Feet- 286,512

All other terms and conditions remain unchanged.

ME 03817

_____
Authorized Representative or
Countersignature (In state where applicable)

ENDORSEMENT # 017

**This endorsement, effective 12:01 AM** 06/07/2002

**Forms a part of policy no.:** 0151174

**Issued to:** STERLING EQUITIES, INC

**By:** LEXINGTON INSURANCE COMPANY

It is hereby understood and agreed that following location is deleted
from the policy.

8849 Pearl Street
Thornton, CO

All other terms and conditions remain unchanged.

**ME 03818**

*Joseph J. George*

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 016

**This endorsement, effective 12:01 AM** 04/12/2002

**Forms a part of policy no.:** 0151174

**Issued to:** STERLING EQUITIES, INC

**By:** LEXINGTON INSURANCE COMPANY

It is hereby understood and agreed that the following location is
deleted from the policy.

248 E. 50th Street and 253 E. 49th Street, New York, NY.


All other terms and conditions remain unchanged.

ME 03819

*Joseph J. George*

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 015

**This endorsement, effective 12:01 AM 12/10/2001**

**Forms a part of policy no.:** 0151174

**Issued to:** STERLING EQUITIES, INC

**By:** LEXINGTON INSURANCE COMPANY

It is hereby understood and agreed that following changes are made to
the policy.

Location #017 (15 W. 72nd Street)- is amended to Apt. 1K in lieu of
3C & 3R.

Location #018 is amended to read (255 W. 49th Street)-Apts.
7D,20C,26C and retail space only.

Location #045 the following Named Insureds are deleted:
Chester 2711 LLC ,Chester 25-35 Stewart Place LLC,
Chester Wilshire Road LLC

The location address 755 Bronx River Rd., Unit #1L is amended to read
Unit 11.

The location address 86-10 109th Street, units C, C1 should read unit
CC1.

Location #046 Named Insured Chester Rego Park, LLC is amended to
read: Chester Rego Park Gardens, LLC.

The following Named Insured's are added to the policy.

SAP II Apartment Investors
Brittany Phase 11 Apartments LLC
SAP 111 Cedar Trails GP, LLC
157 J.E.S. LLC
Park Crossing Apartments LLC

All other terms and conditions remain unchanged.

**ME 03820**

_Joseph J. George_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

**ENDORSEMENT # 14**

**This endorsement, effective 12:01 AM** December 10, 2001

**Forms a part of policy no.:** 0151174

**Issued to:** Sterling Equities Inc.

**By:** Lexington Insurance Company

In consideration of the premium charged, it is hereby understood and agreed that coverage
is limited to the following Named Insureds and Locations only:

Named Insureds & Locations

1 *Ruskin Garden Apartments, L.L.C.*
  *& Cohen-Esrey Real Estate Service,*
  *Inc., as managing agent*
  11320-22 Blue Ridge Blvd.
  11324-26 Blue Ridge Blvd.
  11328-30 Blue Ridge Blvd.
  11332-38 Blue Ridge Blvd.
  11340-42 Blue Ridge Blvd.
  11344-46 Blue Ridge Blvd.
  11348-50 Blue Ridge Blvd.
  11400-08 Blue Ridge Blvd.
  11410-16 Blue Ridge Blvd.
  11410-18 Blue Ridge Blvd.
  11422-24 Blue Ridge Blvd.
  11426-28 Blue Ridge Blvd.
  11430-32 Blue Ridge Blvd.
  11434-36 Blue Ridge Blvd.
  11438-40 Blue Ridge Blvd.
  11442-44 Blue Ridge Blvd.
  11446-48 Blue Ridge Blvd.
  11450-54 Blue Ridge Blvd.
  Kansas City, MO 64141


3 *Dorchester Associates, L.L.C.*
  665 Skinker Blvd.
  St. Louis, MO 63155


4 *Montclair Carleton Associates, L.L.C.*
  18 South Kings Highway
  St. Louis, MO 63155


5 *Sterling Equities & Frontenac Associates*
  40 North Kings Highway
  St. Louis, MO 63155


6 *49-50 Second Associates &*
  *53rd & 3rd General Corp., General*
  *Partners*
  248 East 50th Street and
  253 East 49th Street
  New York, NY 10022

**ME 03821**

**Named Insureds & Locations**

7  *Clearwater Associates*
   (all locations New York, NY)
   24 St. Marks Place

   111-115 East 7th Street

   141-143 2nd Avenue

   145 2nd Avenue

   147-149 2nd Avenue

   151-153 2nd Avenue

   156-158 2nd Avenue

   213-215 East 4th Street

   244-246 East 21st Street

9  *Northwinds Apartments, L.L.C.*
   9556 Glen Owen Drive
   Ferguson, MO 63110

10 *Sterling Equities and Lake Louise*
   *Apartments Associates*
   3201 Henderson Mill Road &
   3444 Evans Road
   Atlanta, GA

11 *Brunswick/Park Associates L.P.*
   *Sterling Brunswick Corp.*
   Brunswick Park (Gothals Park)
   2525 Brunswick Avenue
   Linden, NJ 07036

12 *Regency Lakes Apartments Assoc.*
   355 Monument Road
   Jacksonville, FL

**ME 03822**

Named Insureds & Locations

13  *SAP II 62 Broadway, L.L.C.*
    1875 Broadway
    New York, NY

14  *Sterling Equities & Fred Wilpon &*
    *Saul B. Katz d/b/a Sterling Equities*
    *Sterling Properties of Georgia, Inc.,*
    *Sterling Properties of New Jersey, Inc.*
    *The Towers— Landlord*
    111 Great Neck Road
    Great Neck, NY

15  *College Place Enterprises, LLC*
    42-50 Love Ln.b/a 1-9,11,13-15,17-23 and
    12-14 College Pl., Brooklyn, NY

16  *575 Fifth Associates & Sterling*
    *Equities, Fifth Avenue Associates*
    *Management Company*
    575 Fifth Avenue
    New York, NY

17  *Saul Katz*
    15 West 72nd Street
    New York, NY
    Apts. 3C, 3R

18  *Second Avenue Apartment Associates*
    *Saul Katz Family Trust, Fred Wilpon*
    *Family Trust, Leonard Schreier, Richard*
    *Wilpon, Thomas Osterman, Arthur Freidman*
    *and Michael Katz, 49-50 Second Avenue*
    *Associates*
    255 East 49th Street
    New York, NY
    15B, 7D, 9D, 20C, 28C, 12B, 21C,
    Penthouse II, 30D, 25A, 26C, 18C, 27C
    Retail Space

ME 03823

Named Insureds & Locations

19 *Sterling Properties of Missouri, Inc., and
Mary Ann Mueller, Coronado Associates*
3718 Westminster Place
St. Louis, MO

20 *FranRay Apartments Associates*
147 Capri D, Kings Point
Delray Beach, FL

21 *Coronado Associates*
3822 Westminster Place
St. Louis, MO

22 *N.S. REO #6*
1459-1471 Second Avenue
New York, NY

23 *Frontenac Associates, L.L.C.*
*Lessee: Fleet Bank, New York Bank Co.*
North Kings Highway & West Pine St.
St. Louis, MO

24 *Sevens St. Louis, L.L.C.*
The Sevens Building
7777 Bonhomme, Clayton, MO

25 *1776 Peachtree Building Assoc., L.L.C.*
1776 Peachtree
Atlanta, GA

26 *Midway Plaza Associates, L.P.*
5701 North University Drive
Tamarac, FL

27 *C. C. Commercial Delaware, L.L.C.*
415 Walnut Street
Knoxville, TN

ME 03824

**Named Insureds & Locations**

29 *Kings Glen, L.L.C.*
2571 Candler Road
Decatur, GA

30 *2296 Henderson Mill Road, L.L.C.*
2296 Henderson Mill Road
Atlanta, GA

31 *Westchase Apartments, L.L.C.*
7200 Six Flags Parkway
Austell, GA

32 *Pelican Run Associates, L.P.*
*Pelican Run G.P., L.L.C.*
2915 N.W. 60th Avenue
Sunrise, FL

33 *Wichita Point, LLC*
*SAP II Riverbend, LLC*
2150 N. Meridian
Wichita, KS

34 *900 N. Federal Hwy, Associates, L.L.C.*
900 N. Federal Highway
Boca Raton, FL

35 *Blue Ridge Farm Associates, L.L.C.*
12121-12127 Blue Ridge Blvd.
Grandview, MO

36 *Bouldercrest Apartments, L.L.C.*
26 Bouldercrest Lane
Atlanta, GA

ME 03825

<u>Named Insureds & Locations</u>

37  *Laclede Towers Associates, LLC*
    *SAP III Originating, LLC*
    *Sterling American Property III, LP*
    <u>*Sterling American Property III-B, LP*</u>
    720 Olive Street
    St. Louis, MO

38  *Logan's Mill Apartments Associates*
    *SAP II – III,  Logan's Mill GP L.L.C.*
    <u>*SAP II – III,  Logan's Mill L.P.*</u>
    1912 East William Cannon Drive
    Austin, TX

39  *Champions Village Apartments Associates*
    *SAP II – III, Champions Village GP L.L.C.*
    <u>*SAP II – III, Champions Village L.P.*</u>
    12811 Greenwood Forest Drive
    Houston, TX

40  *Summit of Thousand Oaks Apartment Asso*
    *SAP II – III, Summit GP LLC*
    <u>*SAP II – III, Summit L.P.*</u>
    1550 Thousand Oaks Drive
    San Antonio, TX

41  *Park West Apartments Associates*
    *SAP II – III, Park West GP L.L.C.*
    <u>*SAP II – III, Park West L.P.*</u>
    11845 West Avenue
    San Antonio, TX

42  <u>*Sunchase Apartments, LLC*</u>
    790 N. Cedar Bluff Road
    Knoxville, TN

43  <u>*Wilmington Center, LLC*</u>
    919 Market Street
    Wilmington, DE

ME 03826

**Named Insureds & Locations**

44 *SAP II-III Stellar Housing Partners V LLC*
140 South Van Dorn Street
Alexandria, VA

45 *Chester Apartments Investors, LLC, Chester Ramapo, LLC*
*Chester Mamaroneck Gardens, LLC*
*Chester Buckingham, LLC, Chester Tudor Woods, LLC*
*Chester Hudson Courts, LLC, Chester Riverwood, LLC,*
*Chester Park Courts, LLC, Chester 2711, LLC*
*Chester Hartsdale Towers, LLC, Chester Westwater, LLC,*
*Chester Brady Avenue, LLC, Chester Westchester III, LLC*
*Chester Tudor Woods III, LLC, Chester Windsor III, LLC*
*Chester 505 Central, LLC, Chester 25-35 Stewart Place, LLC,*
*Chester 281 Garth Road, LLC, Chester Wiltshire Road, LLC,*
*Chester 120 East Hartsdale, LLC, Chester 45 East*
*Hartsdale, LLC, Chester 111-119 East Hartsdale, LLC*
*Chester Westchester, LLC, Chester Windsor, LLC*
*Chester Holliswood, LLC, Chester 109th Street, LLC*
*Chester BBR, LLC, Chester CPW, LLC*
Various - New York *(SEE ATTACHED)*

46 *SAP III Apartment Investors*
*Chester Rego Park LLC , Chester Fleetwood Court, LLC,*
*Chester Westower, LLC*
Various - New York *(SEE ATTACHED)*

47 *4625 Lindell Associates, LLC*
4625 Lindell Avenue
St. Louis, MO

48 *Summer Chase Apartments, LLC*
3650 Summer Wind Drive
Winter Park, FL

49 *Whispering Hills Apartments, LP*
*SAP III Whispering Hills GP, LLC*
13658 O'Conner Road
San Antonio, TX

ME 03827

Named Insureds & Locations

50 *Ridge Apartments LP*
   11200 Perin Beitel Road
   San Antonio, TX

51 *Centerpoint SC Properties L.P.*
   5000 West Waco Drive
   Waco, TX

52 *71 Park Avenue Condominium*
   71 Park Avenue
   New York, NY

53 *15 Charles at Waverly Place – A Condominium*
   *Charles 15 Associates*
   15 Charles Street
   New York, NY

54 *SAP III Quail Creek G.P., LLC*
   4901 Kinsey Drive
   Tyler, TX

55 *Brittany Apartments LLC*
   8849 Pearl Street
   Thornton, CO

56 *Cedar Trails*
   3700 McDonald Road
   Tyler, TX

57 *The Bristol Point Apartments L.P.*
   765 Polk Drive
   Arlington, TX

   *TBA*
   157 Second Avenue
   New York, NY

All other terms and conditions of this policy remain unchanged

_Joseph J George_

_____
**Authorized Representative OR
Countersignature (In state where applicable)**

**ME 03828**

ENDORSEMENT #013

**This endorsement, effective 12:01 A.M. 02/06/2002**

**Forms a part of policy no.: 0151174**

**Issued to: STERLING EQUITIES, INC.**

**By: LEXINGTON INSURANCE COMPANY**

ADDITIONAL NAMED INSURED

In consideration of the additional premium charge of $6,876., it is understood and agreed that the following new entity is hereby added to this policy as an additional named insured with respect to the following location:

Park Crossing
2700 Park Crossing Way
Lilburn, GA 30047

Units 280, Total Square Feet- 286,512

All other terms and conditions remain unchanged.

**ME 03829**

_____

Authorized Representative or
Countersignature (In state where applicable)

ENDORSEMENT #012

This endorsement, effective 12:01 A.M. 12/10/2001

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC.

By: LEXINGTON INSURANCE COMPANY

ADDITIONAL NAMED INSURED

In consideration of the additional premium charge of $10,740., it is understood and agreed that the following new entity is hereby added to this policy as an additional named insured with respect to the following location:

    SAP III Summerstone Apartments
    9301 Dairy View Lane
    Houston, TX

Units 242, Total Square Feet- 188,734

All other terms and conditions remain unchanged.

**ME 03830**

_____
Authorized Representative or
Countersignature (In state where applicable)

E NO.

**RISK SPECIALISTS CO.**
**OF NEW YORK, INC.**
80 PINE STREET, 3RD FLOOR
NEW YORK, N.Y. 10005

CORDIA COVERAGE
80 SOUTH STREET
NEW YORK, NY 10038

ATTENTION:    MARIO BULONE

BROKER CODE:

DATE:    2/8/02    BP

| INSURED | COMPANY | POLICY NO. | TRANSACTION | | | |
|---------|---------|-----------|-------------|--------|----------|----------------|
| | | | EFF. DATE | EXP. DATE | | GROSS PREMIUM |
| STERLING EQUITIES, INC. | LEXINGTON INSURANCE | 015 1174 | 12/10/01 | 12/10/01 | | $10,740.00 |
| 111 Great Neck Road | | | | | | |
| Great Neck, NY 11021 | | | | | | |

DATE DUE:

DESCRIPTION:    A/P ENDORSEMENT

COMMISSION                    12.5%                    $1,342.50

NET PREMIUM                                           $9,397.50

TOTAL AMOUNT DUE                                      $9,397.50

NOTE: BROKER NAMED HERE ON IS RESPONSIBLE FOR COLLECTION & PAYMENT OF ALL
SURPLUS LINES TAXES AND FEES.

Remit Payment to:-
Risk Specialists Co. of NY Inc.
P.O. Box 10777
Newark, NJ 07193

ME 03831

ENDORSEMENT # 001

This endorsement, effective 12:01 AM 12/10/2001

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC

By: LEXINGTON INSURANCE COMPANY

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of the Insured's employees and/or Discrimination involving the Insured's employees and/or Sexual Harassment of the Insured's employees.

The following definitions apply to the foregoing:

Wrongful Termination means termination of an employment relationship in a manner which is against the law and wrongful or in breach of an implied agreement to continue employment.

Discrimination means termination of an employment relationship or a demotion or a failure or refusal to hire or promote any individual because of race, color, religion, age, sex, disability, pregnancy or national origin.

Sexual Harassment means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

**ME 03832**

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXOCC271(Ed. 03/92)

ENDORSEMENT #  002

This endorsement, effective 12:01 AM 12/10/2001

Forms a part of policy no.:  0151174

Issued to: STERLING EQUITIES, INC

By: LEXINGTON INSURANCE COMPANY

### PROFESSIONAL LIABILITY EXCLUSION

It is agreed that this policy shall not apply to liability arising out of the rendering of or failure to render professional services, or any error or omission, malpractice or mistake of a professional nature committed by or on behalf of the "Insured" in the conduct of any of the "Insured's" business activities.

**ME 03833**

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXCME094(Ed.03/86)
LX0099

### ENDORSEMENT # 003

This endorsement, effective 12:01 AM 12/10/2001

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC

By: LEXINGTON INSURANCE COMPANY

### EXCLUSION FROM COVERAGE FOR PUNITIVE, EXEMPLARY AND AGGRAVATED DAMAGES, FINES AND PENALTIES

It is agreed that this policy does not apply to any claim or "suit" seeking punitive, exemplary or aggravated damages, nor does it apply to any fines or penalties.

**ME 03834**

_____
Authorized Representative OR
Countersignature (In states where applicable)

LX9407 (09/00)

ENDORSEMENT # 004

This endorsement, effective 12:01 AM 12/10/2001

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC

By: LEXINGTON INSURANCE COMPANY

### SECURITIES AND FINANCIAL INTEREST EXCLUSION

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in any respect loss, injury or damage in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, bank deposit, or financial interest or instrument.

**ME 03835**

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXOCC262(Ed.06/91)
LX0522

**ENDORSEMENT # 005**

This endorsement, effective 12:01 AM 12/10/2001

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC

By: LEXINGTON INSURANCE COMPANY

**SELF INSURED RETENTION - PER OCCURRENCE**

It is agreed that:

1.   The Company's obligation, under the coverages provided by this policy, to pay "Ultimate Net Loss" on behalf of the "Insured", applies only to the "Ultimate Net Loss" in excess of the Self Insured Retention stated below, and subject to the Limits of Liability stated in the policy.  The terms of this policy including those with respect to the Company's rights and duties with respect to defense of suits apply in excess of the application of the Self Insured Retention amount.

2.   The "Insured" shall immediately notify the Company in writing of any "Claim" to which this policy applies which

     a)   involved serious "Bodily Injury" or fatality;

     b)   the "Insured" has received notice of suit in which the damage demand exceeds the Self Insured Retention;

     c)   may exceed 25% of the Self Insured Retention.

3.   The "Insured" shall at all times maintain a Company approved claims handling service with respect to the Self Insured Retention.

4.   The Self Insured Retention stated below shall apply to the coverages afforded by this policy on a "Per Occurrence" basis to the "Ultimate Net Loss" as a result of any one "Occurrence" regardless of the number of persons or organizations who sustain damages because of the occurrence.

Self Insured Retention:

     250,000          per "Occurrence" including expenses.

**ME 03836**

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

POLICY NUMBER: 0151174     ENDORSEMENT # 006     IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
–TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.
   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or
   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

ME 03837

Copyright, Insurance Services Office, Inc., 1994     Page 1 of 2

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**ME 03838**

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 11 94

ENDORSEMENT # 007

This endorsement, effective 12:01 AM 12/10/2001

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC

By: LEXINGTON INSURANCE COMPANY

### MINIMUM EARNED PREMIUM

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of          $119,197.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

"If the Insured cancels this policy, earned premium will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

ME 03839

_____
Authorized Representative OR
Countersignature (In states where applicable)

LEXCME077 (Ed.03/86)
LX0082

**ENDORSEMENT # 008**

This endorsement, effective 12:01 A.M.  12/10/2001

Forms a part of policy no.:    0151174

Issued to: STERLING EQUITIES, INC.

By: LEXINGTON INSURANCE COMPANY

It is hereby understood and agreed that Item 3. Limits of Liability of Form LEX-OCC STA (ED.01/92) LX 0566 is amended as follows:

Item 3. Limits of Liability
    a)  per Occurrence Limit: $1,000,000
    b)  Aggregate Limits – Separately as respects:
        (i) Products Hazard and Completed Operations
        Hazard Combined  $1,000,000
        (ii) All other Coverages Combined (Autos Are Excluded) $3,000,000

It is further understood and agreed the following is added to Form LEXOCCSTA (ED.07/94) LX 0567 Exclusions, Paragraph 10.;

      c. any auto

All other terms and conditions remain unchanged.

**ME 03840**

_____
Authorized Representative or
Countersignature (In States where applicable)

ENDORSEMENT # 009

**This endorsement, effective 12:01 A.M.** 12/10/2001

**Forms a part of policy no.:** 0151174

**Issued to:** STERLING EQUITIES, INC.

**By:** LEXINGTON INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDMENT- AGGREGATE LIMITS OF INSURANCE PER LOCATION
    -    OVERALL POLICY AGGREGATE LIMIT
This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Subject to the Overall Policy Aggregate Limit stated in Item 3 of the Declarations, the General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations" owned by or rented to you.

**"Location"** means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right –of way of a railroad.

It is further understood and agreed that the following changes are made to the policy:

    (1) Item 3, Limits of Insurance in the Declarations is amended by the addition thereto of the following Limit:

        Overall Policy Aggregate Limit - $12,000,000

    (2) SECTION III- LIMITS OF INSURANCE is amended by the addition thereto of the following paragraph under paragraph 6.

        7. The Overall Policy Aggregate Limit is the most we will pay under this Coverage Part for the sum of all Limits of Insurance as provided in this SECTION III regardless of the number of your "locations."

All other terms and conditions remain unchanged.

**ME 03841**

------------------------------------
Authorized Representative or
Countersignature (In States where applicable)

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**ENDORSEMENT #010**

This endorsement, effective 12:01 A. M. 12/10/2001

Forms a part of Policy No.: 0151174

Issued to: STERLING EQUITIES, INC.

By: LEXINGTON INSURANCE COMPANY

**FUNGUS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost or expense, including, but not limited to losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any "fungus(i)", "molds(s)", mildew or yeast, or
    b.  Any "spore(s)" or toxins created or produced by or emanating from such fungus(i), "mold(s)", mildew or yeast, or
    c.  Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)" , "mold(s)", mildew or yeast, or
    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

    "Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, and mushrooms.
    "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

    "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**ME 03842**

_____
Authorized Representative OR
Countersignature (In state where applicable)

ENDORSEMENT # 011

This endorsement, effective 12:01 AM 12/10/2001

Forms a part of policy no.: 0151174

Issued to: STERLING EQUITIES, INC

By:    LEXINGTON INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY

TOTAL LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY

This insurance does not apply to any "bodily injury", "property damage", "personal injury", or "advertising injury", or any other loss, cost or expense arising out of the presence, ingestion, inhalation, or absorption of or exposure to lead in any form or products containing lead.

ME 03843

Authorized Representative OR
Countersignature (In states where applicable)

58332 (7/93)
LX7151