

Page 1

1           UNITED STATES DISTRICT COURT

2                    FOR THE

3           DISTRICT OF MASSACHUSETTS

4 LEXINGTON INSURANCE COMPANY    )

5 AND NATIONAL UNION FIRE        )

6 INSURANCE COMPANY OF           ) No. 04-11109 RGS

7 PITTSBURGH,                    )

8           Plaintiffs,          )

9      vs.                       )

10 VIRGINIA SURETY COMPANY,      )

11 INC.,                         )

12          Defendant.           )

13           The deposition of JOHN GORING, called for

14 examination, taken pursuant to the Federal Rules of

15 Civil Procedure of the United States District Courts

16 pertaining to the taking of depositions, taken

17 before JENNIFER L. BERNIER, CSR No. 84-4190, a

18 Notary Public within and for the County of Cook,

19 State of Illinois, and a Certified Shorthand

20 Reporter of said state, at Suite 800, 200 East

21 Randolph Street, Chicago, Illinois, on the 14th day

22 of July, A.D. 2006, at 10:58 a.m.

23

24 Job No. 191493B

1    A.    We can.

2    MR. STEPHAN:  I'm sorry.  I don't mean to
3  interrupt.

4         Can we agree to Endorsement 27 so that
5  we're consistent with the term that we used in
6  Mr. Baliga's deposition?

7  BY MR. MASELEK:

8    Q.    Would you agree with that, sir?

9    A.    That's fine.

10    Q.    You said that you were familiar with that
11  form?

12    A.    I am.

13    Q.    Give me one moment.

14         If you look at the first page of the
15  endorsement, under the heading, "Supplementary
16  Payments-Coverages," after the seventh item, it
17  reads, "These payments will reduce the limits of
18  insurance," correct?

19    A.    Yes.

20    Q.    To your understanding, what is the intent
21  of adding this endorsement to the policy?

22    MR. STEPHAN:  Objection.

23  BY THE WITNESS:

24    A.    That would amend the general liability

1  coverage part to include those seven things within

2  the limits.

3  BY MR. MASELEK:

4      Q.    Okay.  So if this form were made part of

5  an NPS program policy, for that policy, defense

6  costs would erode the limits of insurance; is that

7  correct?

8      A.    That's what this form would say, yes.

9      Q.    To your knowledge, was this form used on

10 any NPS program policies?

11     A.    It was not used.

12     Q.    It was not used by NPS, correct?

13     A.    It was not used by NPS, nor Virginia

14 Surety in their role after NPS went away.

15     Q.    Okay.  So to your knowledge, all of the

16 NPS program policies -- whether issued by NPS or

17 Virginia Surety, itself -- excluded defense costs

18 from the limit of liability?

19     MR. STEPHAN:  Objection.  You're referring to

20 the policies written on Virginia Surety paper?

21     MR. MASELEK:  Both.  Yes, I'm sorry.  Yes.

22 BY THE WITNESS:

23     A.    Well, you asked it in sort of a

24 roundabout way.

Page 26

```
 1              I would answer you by saying this form
 2 was not part of any of the NPS policies, either
 3 issued in New Jersey or in Fort Wayne.
 4 BY MR. MASELEK:
 5      Q.   And are you aware of any other forms that
 6 may have been endorsed to any NPS program policies
 7 issued, on behalf of Virginia Surety, that would
 8 have made defense costs be included within the limit
 9 of liability?
10      A.   There were none to my knowledge.
11      Q.   Okay.  To your knowledge, did the
12 Virginia Surety policies provide first-dollar
13 defense coverage?
14      A.   First-dollar defense coverage?
15      Q.   Do you know what I mean by that?
16      A.   Why don't you explain that?
17      Q.   To your knowledge, were there any
18 deductibles or self-insured retentions issued to any
19 insureds by NPS under the program?
20      A.   You're sort of asking a different
21 question now.
22      Q.   Yes.  Actually, I did.
23      A.   With respect to the Virginia Surety
24 policies, there were no deductibles or self-insured
```

1 retentions.

2          Now, obviously, I am aware that there
3 were AIG policies written that had that, but not
4 Virginia Surety policies.

5     Q.    Right.  And unless I indicate otherwise
6 today, if I refer to "the program policies," I'm
7 only referring to the ones issued on behalf of
8 Virginia Surety.

9     A.    Okay.

10    Q.    Do you know if NPS issued any policies on
11 behalf of National Union?

12    A.    I don't know if NPS issued them or they
13 were issued by National Union.  I know that there
14 were such things.  Who actually issued them, I'm not
15 aware of.

16    Q.    Okay.  To your knowledge, was
17 Endorsement 27 approved for use in any states?

18    A.    To my knowledge, it was not; and,
19 therefore, it was not used.

20    Q.    I guess, to your knowledge, do you have
21 an understanding as to why Endorsement 27 was not
22 used?

23    A.    Because it was not approved by the
24 states.

Page 68

1    Q.    Okay.  Are you aware that, in this

2 litigation, Virginia Surety is taking the position

3 that, once defense costs or indemnity payments equal

4 $250,000, that it has no further obligation to pay

5 any expenses above that amount?

6    MR. STEPHAN:  Objection.

7 BY THE WITNESS:

8    A.    I'm sort of, basically, aware of what the

9 disagreement is.  But I can't speak to the details

10 of what Virginia Surety's exact position is on this.

11    MR. MASELEK:  Give me a moment.  I think I'm

12 done.

13    MR. STEPHAN:  Absolutely.  No problem.

14         (WHEREUPON, a recess was had.)

15         (WHEREUPON, a certain document was

16          marked Goring Deposition Exhibit

17          No. 7, for identification, as of

18          07/14/06.)

19 BY MR. MASELEK:

20    Q.    Mr. Goring, I'd ask you to take a look at

21 Exhibit 7, which is another compilation exhibit of

22 some different documents.

23    A.    Okay.

24    Q.    In your review of the NPS program files,

Page 69

1  you've seen documents similar to this?

2      A.     Yes.

3      Q.     And as to the first document, do you know
4  who Art Cucuzzella was?

5      A.     He was an NPS account exec, or an
6  employee of some kind.

7      Q.     Okay.  And this first document purports
8  to be an interoffice memorandum from Mr. Cucuzzella
9  to a Wes at Barclay Program Services?

10     A.     Mm-hmm.

11     Q.     Do you know who Barclay Program Services
12 was?

13     A.     That's a more difficult question than it
14 might seem, because -- in some respects -- they were
15 a broker just like many brokers that did business
16 with NPS.  But there was something more to it than
17 that.

18            They were actually in the same building
19 as NPS.  And I think they had some greater
20 relationship than the normal broker.  I couldn't
21 tell you what that was, but that's what it seemed.

22     Q.     It seemed based upon your review of the
23 documents?

24     A.     Based upon the fact that they were in the

1 building -- and I don't even know how I remember
2 this. But, supposedly, they had the same computer
3 system or something.
4      Q.    If you look under the "Subject" heading,
5 it indicates, presumably, for an insured,
6 "B.P. Slavitt, GL Virginia Surety," and then a
7 policy number, and, "XSGL National Union," with a
8 policy number, correct?
9      A.    That's what it says.
10     Q.    Okay. If you look at the second page, it
11 purports to be an interoffice memo from a Patty to
12 "Art C.," which, I presume, is Art Cucuzzella.
13           Do you know who Patty was?
14     A.    Patty King was a NPS employee.
15     Q.    Okay. And in this document, am I correct
16 that Ms. King writes, "We bound the primary GL with
17 Virginia Surety, excess GL with Lexington, an
18 umbrella with American Guarantee & Liability
19 Insurance Co." Is that correct?
20     A.    That's what it says.
21     Q.    If you could, turn to the next page,
22 please.
23           This document purports to be a facsimile
24 from Mr. Gruppuso to an individual from Alliance

1 Brokerage Corp.; is that correct?

2    A.    Yes.

3    Q.    And in this facsimile, Mr. Gruppuso
4 writes:

5          "Thank you for your payment with regards
6 to the 'primary' liability coverage for the
7 above-captioned account. As discussed, your check
8 did not include payment for the 'excess' liability
9 and the non-owned and hired auto coverage."

10         Correct? Did I read that correctly?

11   A.    You did.

12   Q.    And the next line indicates, "Our records
13 show that a balance of, approximately, 146,000 is
14 still due for this account."

15         Is that correct?

16   A.    Yes.

17   Q.    Did I ready that correctly?

18         And then there is a handwritten note from
19 a "Sally." Do you know of a Sally that was involved
20 with NPS?

21   A.    That may have been Sally Martin that we
22 talked about before, an Aon Service Center person
23 that was involved with the NPS program.

24   Q.    Okay. And she writes, "This is the

Page 72

1  amount due for Lexington on Selective policies only,
2  not VSC's."  Is that correct?
3       A.    That's what it says.
4       Q.    Okay.
5       A.    I don't know how she would know that.
6  But if there's any other Sally, I don't know who it
7  is.
8       Q.    Okay.  And if you look at that facsimile,
9  it's dated April 22nd, 2002, correct?
10      A.    Yes.
11      Q.    And do you know the date that the
12 managing general agency agreement was terminated?
13      A.    Not exactly; but it was, approximately,
14 the first week of May of 2002.  I'm pretty sure.
15      Q.    Okay.  So in any event, this facsimile
16 was sent a week or two before?
17      A.    The demise of NPS, apparently so, yes.
18      Q.    Okay.  And do you have two more pages to
19 the exhibit that you have?
20      A.    One more.
21      MR. MASELEK:  Do you have an objection if I
22 added this?
23      MR. STEPHAN:  No.
24      MR. MASELEK:  Thanks.

Page 73

1  BY MR. MASELEK:

2      Q.    Take a moment to review the documents
3  that are Bates Stamped VSCU/W 004859 and 4860.

4      A.    Okay.

5      Q.    Do you see this appears to be a
6  "Certificate of Liability Insurance Form," correct?

7      A.    Evidently.

8      Q.    Would these certificates typically be
9  created by the broker?

10     A.    I think so.  If it was something NPS
11 would have done on a regular basis, I would
12 recognize that.  And this was not.

13           So I would agree with your assertion that
14 this is, probably, done by, what, "LHH," I guess --
15 or "HRH," excuse me.

16     Q.    And if you look under the "Coverages
17 provided," under "Category A," there is a box
18 checked for "Commercial General Liability," correct?

19     A.    Right.

20     Q.    And then, in the next column over, under
21 "Policy Number," there is a, "Policy
22 No. IPGA 7000000010003."

23     A.    Isn't that a terrific policy number.

24     Q.    Now, in your experience, is that a policy

```
 1  number that would conform with the NPS program?
 2       A.    That would be a Virginia Surety policy
 3  number for the NPS program.
 4       Q.    And if you look over to the right, under
 5  "Limits," it says it has limits of 250,000 per
 6  occurrence; is that correct?
 7       A.    Right.
 8       Q.    And above that, under "Company A," it
 9  says, "Virginia Surety Insurance Co."  Is that
10  correct?
11       A.    It does.
12       Q.    And under "Policy Number," it also says,
13  "See attached for additional GL coverages."  Is that
14  true?
15       A.    Yes.
16       Q.    Okay.  And the next page --
17       A.    So that would be this, apparently.
18       Q.    Right.  That document refers to the
19  National Union policy as excess general liability
20  coverages; is that true?
21       A.    That's what it says.
22       Q.    For an insured NHP Foundation?
23       A.    Yes.
24       Q.    You can just attach that to the rest of
```



## INTEROFFICE MEMORANDUM

**NATIONAL PROGRAM SERVICES INCORPORATED**

TO: BARCLAY PROGRAM SERVICES
ATT: WES
FROM: ART CUCUZZELLA
SUBJECT: B.P. SLAVITT
    GL VIRGINIA SURETY IPGA7000000060032
    XSGL NATIONAL UNION 1073202060032
    UNBRELLA AMERICAN GUARANTEE & LIABILITY AUO359778200137060003A
    AUTO SELECTIVE S1323569060032
    301 IRVINE TURNER BLVD
DATE: 04/19/02

Wes,

Enclosed are your copies of binders and invoices for the deletion of the above captioned location.

If any questions please advise.

Thanks,

Art

Total # of pages: 10

Gorinc DEP. EX. NO. 7
FOR ID., AS OF 7/14/06

240 Cedar Knolls Rd.
P.O. Box 0388
Cedar Knolls, NJ
07927-0388
Tel 973.267.4242
Fax 973.285.9190

VSCU/W 000019

| INTEROFFICE MEMO |
|---|

DATE: JANUARY 3, 2002

TO: ART C.

FROM: PATTY

RE: COVERED BRIDGE CONDO ASSOCIATION
    BOUND – 12/31/01

ART:

HERE IS A NEW BUSINESS ACCOUNT AS BOUND EFFECTIVE 12/31/01.

**WE BOUND THE PRIMARY GL WITH VIRGINIA SURETY, EXCESS GL WITH LEXINGTON, AND UMBRELLA WITH AMERICAN GUARANTEE & LIABILITY INS. CO.** WE DID NOT WRITE THE HIRED / NON-OWNED AUTO.

PER ROB'S E-MAIL DATED TODAY, WE CANNOT USE ANY OF THE PRIOR BINDING SPECIFICATIONS FOR THE LEXINGTON THAT ARE IN THE SYSTEM UNTIL WE ARE ADVISED.

THE FOLLOWING ITEMS ARE OUTSTANDING:
- INSPECTION REPORT – IT HAS BEEN ORDERED WITH A DUE DATE OF 1/23/02.
- COMPLETED LEAD QUESTIONNAIRE.

REVIEW THE FILE AND LET ME KNOW IF YOU HAVE ANY QUESTIONS.

THANKS,
PATTY

VSCU/W 003754

**NATIONAL PROGRAM SERVICES, INC.**
240 Cedar Knolls Road; PO Box 388
Cedar Knolls, NJ 07927-388
Tel: (973)267-4242   Fax: (973)285-9190

### FACSIMILE

TO:     Mr. Michael Vescovo
        Alliance Brokerage Corp.

FROM:   Mr. Vito B. Gruppuso
        National Program Services, Inc.

DATE:   April 22, 2002

RE:     ~~Bassur Brokers,~~ *Bassuk Brothers* Inc.
        Commercial General Liability

*[handwritten: Policy # IPGA7-30067 3/22/c .03]*

Dear Mike:

Thank you for your payment with regards to the 'primary' liability coverage for the above captioned account.

As discussed, your check did not include payment for the 'excess' liability and the non-owned and hired auto coverage.

Our records show that a balance of $146,830 is still due for this account. Kindly advise.

Very truly yours,
National Program Services, Inc.

*Vito*

Vito B. Gruppuso, CPIA, CIC
President

*[handwritten: This is the amt due for Lexington and Selective policies only, not VSC. Sally]*

THE INFORMATION CONTAINED HEREIN IS TAKEN FROM OUR RECORDS OR FROM DATA SUPPLIED TO US BY OTHERS. IT IS,
TO THE BEST OUR KNOWLEDGE AND ABILITY REFLECTIVE OF THE DATA THAT HAS BEEN REQUESTED.

# OF PAGES INCLUDING COVER  1

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YY):** 5/30/02

**PRODUCER**
Hilb, Rogal & Hamilton Co.
700 King Farm Blvd., #125
Rockville, MD 20850
(301) 948-2422

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

| COMPANY A | Virginia Surety Ins Co |
| COMPANY B | Amer. Guarantee & Liab Ins Co |
| COMPANY C | |
| COMPANY D | |

**INSURED**
Piedmont Affordable
Housing Inc/The NHP Foundation
1090 Vermont Avenue, #400
Washington, DC 20005

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR [ ] OWNER'S & CONTRACTOR'S PROT | IPGA7000000010003 See attached for additional GL coverages | 1/31/01 | 1/31/04 | GENERAL AGGREGATE | $ |
| | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | PERSONAL & ADV INJURY | $ 250000 |
| | | | | | EACH OCCURRENCE | $ 250000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 50000 |
| | | | | | MED EXP (Any one person) | $ |
| | **AUTOMOBILE LIABILITY** [ ] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [ ] HIRED AUTOS [ ] NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE | $ |
| | **GARAGE LIABILITY** [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN AUTO ONLY: EACH ACCIDENT | $ |
| | | | | | AGGREGATE | $ |
| B | **EXCESS LIABILITY** [X] UMBRELLA FORM [ ] OTHER THAN UMBRELLA FORM | AUO35977820101003 | 2/28/02 | 1/31/03 | EACH OCCURRENCE | $ 50000000 |
| | | | | | AGGREGATE | $ 50000000 |
| | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** THE PROPRIETOR/ PARTNERS/EXECUTIVE OFFICERS ARE: [ ] INCL [ ] EXCL | | | | WC STATUTORY LIMITS / OTHER | |
| | | | | | EL EACH ACCIDENT | $ |
| | | | | | EL DISEASE - POLICY LIMIT | $ |
| | | | | | EL DISEASE - EA EMPLOYEE | $ |
| | **OTHER** | | | | | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS**
Re: Brook Valley, 640 DeAnna Lane, Charlotte, NC 28217. Certificate Holder is listed as Additional Insured for General Liability only.

VSCU/W 004859

**CERTIFICATE HOLDER**
Corcoran Jennison Management
150 Mt. Vernon St., #520
Boston, MA 02125

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE** /s/ Joseph A. Colletta

(1/95)    3-11    © ACORD CORPORATION 1988

# NHP FOUNDATION

*THIS ATTACHMENT IS PART OF THE CERTIFICATE OF INSURANCE FORM FOR THE ABOVE REFERENCED INSURED:*

Excess General Liability Coverages

National Union Fire Insurance Company
Policy # 0151131010003
1/31/01 to 1/31/04

$1,000,000 Per Occurrence
$2,000,000 General Aggregate

VSCU/W 004860