

Page 1

```
 1                                    VOLUME 1

 2                                    PAGES 1 - 186

 3                                    EXHIBITS 1 - 11

 4            IN THE UNITED STATES DISTRICT COURT

 5            FOR THE DISTRICT OF MASSACHUSETTS

 6                                    No. 04-11109 RGS

 7      - - - - - - - - - - - - - - - - - - - - - - - - -

 8      LEXINGTON INSURANCE COMPANY and NATIONAL UNION FIRE

 9      INSURANCE COMPANY OF PITTSBURGH, PA,

10      VIRGINIA SURETY COMPANY, INC.,

11                              Plaintiffs

12                 vs.

13      VIRGINIA SURETY COMPANY, INC.,

14                              Defendants

15      - - - - - - - - - - - - - - - - - - - - - - - - -

16      RULE 30(b)(6) DEPOSITION OF LEXINGTON INSURANCE COMPANY

17           BY AND THROUGH WILLIAM R. EDDOWS, ESQUIRE

18               Thursday, June 8, 2006 10:05 a.m

19                    Mintz Levin

20           One Financial Center, Boston, MA 02111

21           Reporter:  Janet M. Konarski, RMR, CRR

22                    LegaLink Boston

23           320 Congress Street, Boston, MA 02210

24                    (617)542-0039
```

William R. Eddows, Esq.

06/08/2006

Page 153

1          A.    It was.

2          Q.    Do you know as the master policies issued

3    there were ever any other changes made to the forms?

4          A.    I don't.

5          Q.    Was the master policy negotiated with

6    anybody?  In other words, was it the result of any

7    negotiation or was it simply the form that was

8    submitted by Lexington and NUFIC?

9          A.    Well, I'm sure at some point there was

10   negotiation and agreement on the policy form.

11         Q.    And that would have been the wholesale

12   broker and Mr. Massery, presumably?

13         A.    And perhaps individual insureds, as well.

14         Q.    It says, "Three various unrelated entities

15   were scheduled to the policy endorsement."  That is the

16   Endorsement No. 1 we talked about earlier?

17         A.    That's correct.

18         Q.    "We invoiced the broker, First Capital

19   Group, for the total premium."  So, Lexington would

20   submit an invoice for premium to the wholesale broker?

21         A.    Yes.  They would add up all of the premium

22   for all of the individual insureds and send one total

23   bill to First Capital.

24         Q.    And it says, "First Capital, who was

William R. Eddows, Esq.                                                      06/08/2006

Page 154

1    acting as a wholesaler, was responsible for invoicing

2    NPS, the risk purchasing group, for the total premium."

3    So, then if I understand this correctly, First Capital

4    would take your invoice and turn around and submit an

5    invoice to NPS?

6           A.    Correct.

7           Q.    And then it says, "It was NPS's

8    responsibility to invoice each individual insured for

9    their portion of the premium and send us a check for

10   the total policy premium."  Is that right?

11          A.    That is what this says.

12          Q.    What is a risk purchasing group?

13          A.    I'm not sure.

14          Q.    Do you know whether this structure of the

15   program was in place from the beginning?  In other

16   words, was this the negotiated structure at the time of

17   the issuance of the first policy under the program?

18          A.    This would be my understanding.

19          Q.    So, if I understand this correctly, the

20   premiums would be paid by the policyholders to NPS.

21   Correct?

22          A.    Correct.

23          Q.    And NPS is in New Jersey?

24          A.    I believe so.