```
                                                                            1307QH
Time of Request: Thursday, February 01, 2007   12:15:15 EST
Client ID/Project Name: 64.20182/Virginia Surety
Number of Lines: 387
Job Number:      1841:9984197

Research Information

Service:   LEXSEE(R) Feature
Print Request: Current Document: 1
Source: Get by LEXSEE(R)
Search Terms: 2006 U.S.Dist.LEXIS 78193
```

```
Send to:  FRIM, GERALD
          MCCORMACK FIRM LLC
          1 INTERNATIONAL PL
          BOSTON, MA 02110-2602
```

LEXSEE 2006 U.S.DIST.LEXIS 78193

**Genie Indus., Inc. v. Fed. Ins. Co.**

No. C05-1616MJP

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

*2006 U.S. Dist. LEXIS 78193*

**October 26, 2006, Decided**
**October 26, 2006, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an insurance dispute concerning priority of coverage for a settlement agreement entered into between plaintiff insured, a corporation, and the victims of an automobile accident, defendant automobile insurer moved for summary judgment against defendant excess insurer. The excess insurer cross-moved for summary judgment and also moved for summary judgment on the insured's claims. The insured also sought summary judgment.

**OVERVIEW:** Pursuant to the settlement, the victims agreed to dismiss their claims against the insured in exchange for $4,000,000. The insured contributed $500,000, the automobile insurer contributed $750,000, another insurer contributed $1,000,000, and the excess insurer contributed $1,750,000. The insured settled independently with the other insurer. In ruling on the motions, the court held that (1) because the excess insurer was not estopped from relying on its other insurance clause and because its other insurance clause effectively avoided coverage until all other insurance was exhausted, the excess insurer was not required to indemnify the insured until the automobile insurer's coverage was exhausted; (2) because the $3,000,000 not covered by the other insurer in the underlying settlement was within the limits of the automobile policy, the automobile insurer had to pay that $3,000,000; (3) the automobile insurer was not required to pay the excess insurer's fees or costs; (4) the insured was entitled to recover attorney fees from the automobile insurer; and (4) because the automobile insurer was found liable, the insured's claim against the excess insurer required dismissal.

**OUTCOME:** The court denied the automobile insurer's motion for summary judgment against the excess insurer regarding priority of coverage. The court granted the excess insurer summary judgment on the issue of coverage priority but denied attorney fees. The court denied in part the insured's motion against the automobile insurer but granted its request for attorney fees. The court dismissed the insured's claims against the excess insurer.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1] Summary judgment is not warranted if a material issue of fact exists for trial.

*Civil Procedure > Summary Judgment > Standards > Appropriateness*
[HN2] The underlying facts are viewed in the light most favorable to the party opposing a summary judgment motion. Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
[HN3] A party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of

fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.

*Insurance Law > Claims & Contracts > Policy Interpretation > General Overview*
[HN4] In Washington, insurance policies are to be construed according to the rules of contract construction. Insurance contracts should be interpreted to effectuate the intent of the contracting parties. The intent of the parties is discerned from the language of the contract and the circumstances in which it is formed.

*Insurance Law > Excess Insurance > Apportionment of Liability*
*Insurance Law > Excess Insurance > Umbrella Policies*
[HN5] In a coverage dispute, a court's first inquiry is whether multiple insurers provide the same layer of coverage. This is an important first step because "other insurance" clauses only become relevant where several insurers insure the same risk at the same level of coverage. An "other insurance" dispute cannot arise between excess and primary insurers. A "primary" policy is the first line of defense in the event of accident or injury. An "excess" or "umbrella" policy is intended to protect the insured in the event of catastrophic loss and does not activate until a primary policy has been exhausted.

*Insurance Law > Excess Insurance > General Overview*
[HN6] A policy that is subject to a self-insured retention is an "excess" policy. A self-insured retention is "primary" coverage, and the coverage provided subsequent to a self-insured retention is "excess" insurance.

*Insurance Law > Claims & Contracts > Relationship Between Clauses*
[HN7] A "super escape" clause is "one type of other insurance clause which provides that insurance will not apply to any liability for loss that is covered by primary, excess, contributory, or any other basis by other insurance.

*Insurance Law > Claims & Contracts > Relationship Between Clauses*
[HN8] Super escape clauses are enforceable under Washington law.

*Insurance Law > Bad Faith & Extracontractual Liability > Elements of Bad Faith*
*Insurance Law > Claims & Contracts > Estoppel & Waiver > Equitable Estoppel*
[HN9] The Washington Supreme Court has held that estoppel is the appropriate remedy for an insurer's bad faith conduct. An insurer may therefore not deny coverage where it has acted in bad faith. Equitable estoppel focuses on the insured's justifiable reliance. It has three elements: (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. Additionally, in some contexts it requires that the party claiming injury by conduct of another have no knowledge of the true facts or no means of acquiring the facts. The reliance must be reasonable, but estoppel can arise by silence when one has a duty to speak out.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > General Overview*
*Insurance Law > Excess Insurance > Obligations > General Overview*
[HN10] An insured has the right to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured. Where a primary insurer should have defended and indemnified an underlying lawsuit in which the insured was defended by an excess insurer, the insured could recover from the primary insurer attorney's fees that would then be reimbursed to the excess insurer. Such a rule is necessary to discourage foot dragging and vexatious litigation by insurers, to encourage the prompt payment of claims, and to prohibit an insurer who improperly refused coverage from profiting by the insured's foresight to have other insurance protection.

**COUNSEL:** [*1] For Genie Industries Inc, a Washington corporation, Plaintiff: John David Dillow, LEAD ATTORNEY, John S Rossiter, Jr, LEAD ATTORNEY, Nicholas Peter Gellert, LEAD ATTORNEY, PERKINS COIE, SEATTLE, WA; Marie G Aglion, LEAD ATTORNEY, PERKINS COIE (SEA), SEATTLE, WA.

For Federal Insurance Company, an Indiana corporation, Defendant: John D. Wilson, Jr., LEAD ATTORNEY,Alfred E Donohue, WILSON, SMITH,

COCHRAN & DICKERSON, SEATTLE, WA.

For Liberty Mutual Insurance, Company, a Massachusetts corporation, Defendant: Michael H Runyan, Stanton Phillip Beck, LANE POWELL PC (SEA), SEATTLE, WA.

For Royal Surplus Lines Insurance Company, a Connecticut corporation, Royal Indemnity Company, a Delaware corporation (as successor in interest to Royal Insurance Company of America), Defendants: Paul F Cane, LEAD ATTORNEY, Russell Charles Love, LEAD ATTORNEY, THORSRUD, CANE & PAULICH, SEATTLE, WA

**JUDGES:** Marsha J. Pechman, United States District Judge.

**OPINION BY:** Marsha J. Pechman

**OPINION:**

ORDER ON SUMMARY JUDGMENT RE: DEFENDANT LIBERTY'S MOTION FOR SUMMARY JUDGMENT REGARDING PRIORITY OF COVERAGE, DEFENDANT ROYAL'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PRIORITY OF COVERAGE, PLAINTIFF GENIE'S MOTION FOR [*2] SUMMARY JUDGMENT REGARDING LIBERTY'S DUTY TO INDEMNIFY, AND DEFENDANT ROYAL'S MOTION FOR SUMMARY JUDGMENT REGARDING GENIE'S CLAIMS AGAINST ROYAL

This matter comes before the Court on Defendant Liberty Mutual's Motion for Summary Judgment (Dkt. No. 26), Defendant Royal's Cross-Motion for Summary Judgment (Dkt. No. 32), Plaintiff Genie's Motion for Summary Judgment (Dkt. No. 41), and Defendant Royal's Motion for Summary Judgment (Dkt. No. 39). Having reviewed the parties' briefing, as well as all pertinent documents and exhibits, the Court DENIES Liberty's Motion for Summary Judgment against Royal regarding priority of coverage, GRANTS in part and DENIES in part Royal's Cross-Motion for Summary Judgment against Liberty regarding priority of coverage, GRANTS in part and DENIES in part Genie's Motion for Summary Judgment regarding Liberty's duty to indemnify, and GRANTS Royal's Motion for Summary Judgment regarding Genie's claims against Royal.

**Background**

This case arises from a 2001 accident involving the transport of industrial lifts manufactured by Genie Industries ("Genie"). On September 1, 2001, a truck driven by a System Transport employee was transporting two Genie industrial [*3] lifts through Indiana. The driver of the truck lost control of the load, causing the load to strike a nearby vehicle. As a result of the accident, Allen J. Pierce Sr. lost his leg and his son, 6-year old Allen Pierce Jr., died.

On November 1, 2001, Allen Pierce, his wife, Mary Pierce, and the estate of their son filed a lawsuit in Illinois against System Transport, the driver of the System truck, and Genie ("the Pierce action"). The lawsuit was removed to the United States District Court for the Northern District of Illinois and was amended to add Market Transport, Ltd., the trucking logistics manager, as a defendant.

Just before the Pierces filed their lawsuit, Genie informed its general liability insurer - Royal Surplus Lines Insurance Company ("Royal") - of the accident. Genie did not inform its automobile liability carriers of the accident at that time. In the summer of 2005, Genie informed its automobile liability carriers - Federal Insurance Company ("Federal") and Liberty Mutual Insurance Company ("Liberty") - that Royal had informed Genie that Royal's general liability coverage was excess to all automobile coverage.

At the time of the accident, Genie was protected with a [*4] number of different insurance policies. Federal provided primary business auto coverage with a policy limit of $ 1,000,000 subject to a $ 25,000 deductible. Liberty provided excess liability coverage with a policy limit of $ 4,000,000. Liberty's policy was explicitly excess to the Federal auto coverage. Federal also provided a $ 10,000,000 policy that was excess to Liberty's excess policy. And Royal provided $ 1,000,000 in commercial general liability coverage subject to a $ 4,000,000 per occurrence and $ 6,000,000 aggregate self-retained limit ("SIR"). Royal also provided $ 25,000,000 in catastrophic coverage excess to Royal's underlying commercial general liability policy.

On September 22, 2005, Genie initiated this action against all three insurers to make sure that Genie would be able to obtain sufficient funds from its insurers to settle the Pierce action. On November 17, 2005, Genie

filed an amended complaint and requested the following relief: (1) a declaratory judgment that Federal was obligated to defend Genie with respect to the Pierce action; (2) an injunction requiring Federal to pay for Genie's defense and to reimburse Genie for funds already expended in defending the [*5] Pierce action; (3) a declaratory judgment against all defendants declaring that defendants are jointly and severally obligated to pay in full on behalf of Genie all sums that Genie was or would become obligated to pay regarding the Pierce action; (4) a judgment and damages against Royal for breaching its contract and its fiduciary duties to Genie; and (5) attorneys' fees.

On February 16, 2006, representatives of Genie, Federal, Liberty, and Royal attended a mediation of the Pierce action and reached a settlement whereby the Pierces agreed to dismiss their claims against Genie in exchange for a payment of $ 4,000,000. The parties provided the following contributions to the settlement:

   1. Genie - $ 500,000

   2. Liberty - $ 750,000

   3. Federal - $ 1,000,000 (the full limits of its primary policy)

   4. Royal - $ 1,750,000

Each of the parties made its contribution to the settlement package under a reservation of rights to seek redistribution of responsibility through this case.

After the settlement, Genie requested that Liberty reimburse Genie the $ 500,000 Genie contributed to the settlement. Liberty declined. In early September 2006, Genie settled its claims against Federal. Pursuant [*6] to a stipulated order, on September 12, 2006, the Court dismissed with prejudice all claims between Genie and Federal. (Dkt. No. 54).

Liberty and Royal disagree about which insurer is responsible for the $ 3,000,000 not covered by Federal in the settlement. Liberty has moved for summary judgment against Royal arguing that Royal is either responsible for the entirety of the remaining $ 3,000,000 or that, in the alternative, Royal is obligated to pay $ 1,000,000 from its primary policy and a pro rata share of any remaining amount from its excess policy. Royal has cross-moved for summary judgment against Liberty, arguing that it owes nothing because its policies are excess to the Liberty policy. Royal argues that Liberty should reimburse Royal the $ 1,750,000 Royal contributed to the settlement. In addition, Genie has moved for summary judgment against Liberty alleging that Liberty must immediately reimburse Genie the $ 500,000 Genie contributed to the settlement. Finally, Royal has moved for summary judgment against Genie, arguing that Genie's claims for breach of contract, bad faith, and estoppel should be dismissed. Genie has stated in response that if the Court grants Genie's summary [*7] judgment motion vis-a-vis Liberty, then the Court should dismiss Genie's claims against Royal.

**Discussion**

**A. Summary Judgment Standard**

This matter is before the Court on the parties' motions and cross-motion for summary judgment. Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995)*, cert. denied, *516 U.S. 1171, 116 S. Ct. 1261, 134 L. Ed. 2d 209 (1996)*. The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*. "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*. However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue [*8] of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id. at 324*.

**B. Summary Judgment on Liberty's Motion and Royal's Cross-Motion**

Liberty argues that Royal's commercial general liability policy must contribute before Liberty's excess

2006 U.S. Dist. LEXIS 78193, *8

policy and that any remaining contribution should be split between Liberty and Royal on a pro rata basis; Liberty also argues that, under the doctrine of estoppel, Royal is responsible for the entire contribution made by the excess carriers. Royal argues that Royal's policies are excess to all the other policies. It argues that Liberty should reimburse both Royal and Genie. Royal also argues that Liberty should be required to pay Royal's attorney's fees.

**1. The Royal Policy is Excess to the Liberty Policy.**

This coverage dispute turns on the relevant language in the insurers' respective policies. The parties have presented no [*9] factual disputes regarding the terms of those policies.

Liberty contracted with Genie to provide "excess liability" coverage between January 1, 2001 and January 1, 2002. That excess liability policy provides $ 4,000,000 of coverage excess to the $ 1,000,000 Federal auto policy. The policy states:

> We will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period." We will pay "loss" in excess of the Underlying Insurance shown in Item 5 of the Declarations, but only up to an amount not exceeding our Limits of Liability as shown in Item 4 of the Declarations.

Item 5 of the Declarations lists the Federal Commercial Auto Liability $ 1,000,000 policy. Item 4 of the Declarations specifies that the policy will not exceed a $ 4,000,000 per occurrence limit. In addition, the Liberty policy states that it will apply excess of other applicable insurance:

> If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance. Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this [*10] provision will not apply if the other insurance is specifically written to be excess of this policy.

Royal contracted with Genie to provide commercial general liability ("CGL") coverage and catastrophic commercial general liability coverage ("catastrophic") during the relevant time period. The CGL policy contains a $ 1,000,000 policy limit for bodily injury. The catastrophic policy provides $ 25,000,000 in coverage, but that coverage is excess to Royal's CGL policy limit. Like the Liberty policy, the CGL policy includes an "other insurance" clause:

> If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> a. Primary Insurance
>
> This insurance is primary except when b. below applies. . . .
>
> b. Excess Insurance
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis: . . .
>
> (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g of Coverage A (Section I).

The CGL policy is also subject to a self-insured [*11] retention of $ 4,000,000 per occurrence / $ 6,000,000 aggregate. n1

> n1 A "self-insured retention" program is a way for an insured to lower its insurance premiums by assuming a certain amount of its own liability risk up to a certain amount. THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 31.1 (2d ed. 2006). In Washington, a self-insured retention is different than a deductible because it is considered its own layer of "primary" insurance. Id.

In Washington, insurance policies are to be construed according to the rules of contract construction. *Safeco Ins. Co. of Illinois, et al. v. Auto. Club Ins. Co.,*

*108 Wn. App. 468, 478, 31 P.3d 52 (2001)*. Insurance contracts should be interpreted to effectuate the intent of the contracting parties. See *New Hampshire Indem. Co. v. Budget Rent-A-Car Sys., Inc., 148 Wn.2d 929, 935, 64 P.3d 1239 (2003)*. The intent of the parties "is discerned from the language of the contract and the circumstances in which it is formed." *Safeco, 108 Wn. App. at 478*. [*12]

In a coverage dispute like this one, the Court's first inquiry is whether the insurers provide the same layer of coverage. HARRIS § 51.2. This is an important first step because "other insurance" clauses only become relevant where several insurers insure the same risk at the same level of coverage. An "other insurance" dispute cannot arise between excess and primary insurers. See *Safeco, 108 Wn. App. at 480*. A "primary" policy is "the first line of defense in the event of accident or injury." *Id. at 479*. An "excess" or "umbrella" policy is intended to protect the insured in the event of catastrophic loss and does not activate until a primary policy has been exhausted. Id.

Here, it is undisputed that the Liberty policy is an "excess" policy. Liberty asserts that the Royal CGL policy is a "primary" policy. But as the Washington court of appeals has indicated, a policy that is subject to a self-insured retention is an "excess" policy. *Odessa Sch. Dist. No. 105 v. Ins. Co. of Am., 57 Wn. App. 893, 903, 791 P.2d 237 (1990)*. The Odessa court explained that a self-insured retention is "primary" coverage and that the coverage [*13] provided subsequent to a self-insured retention is "excess" insurance. *Id. at 902-03*. Royal's CGL policy which is subject to a $ 4,000,000 self-insured retention is therefore an "excess" policy. See id.; see also *Pacific Employers Ins. Co. v. Domino's Pizza, Inc., 144 F.3d 1270, 1276-77 (9th Cir. 1998)* ("It is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted.").

Liberty argues that the premium price paid for the Royal CGL policy indicates that policy is "primary." Given the multitude of factors involved in premium pricing, the premium price is not a good indicator of the type of insurance. And even if the premium price for the Royal contract were high enough to indicate a "primary" policy, that indication would not override the express terms of the insurance contract.

The second inquiry for the Court is the effect of the "other insurance" clauses in the policies. HARRIS § 51.2. Royal argues that its "other insurance" clause is [*14] a "super escape" clause like the one enforced in New Hampshire v. Budget Rent-A-Car Systems. In that case, the Washington Supreme Court stated that a "super escape" clause is "one type of other insurance clause which provide[s] that insurance will not apply to any liability for loss that is covered by primary, excess, contributory, or any other basis by other insurance." *New Hampshire, 148 Wn.2d at 935 n.2*. The clause at issue in New Hampshire stated:

> 5) BUDGET PROVIDES AUTOMOBILE LIABILITY PROTECTION FOR BODILY INJURY (INCLUDING DEATH) AND PROPERTY DAMAGE CAUSED BY NEGLIGENT USE OR OPERATION OF THE VEHICLE LIMITED AS FOLLOWS: A. BUDGET'S LIABILITY DOES NOT APPLY until after exhaustion of all automobile liability insurance and/or other protection available to the driver of the Vehicle (personal automobile insurance, employer's insurance and/or any other protection or indemnification whether primary, excess or contingent) . . . .

*Id. at 934*. The Court held that the provision was a "super escape" clause, that such clauses are enforceable under Washington law, and that the super escape clause was effective to avoid primary coverage [*15] and to make coverage excess to that of any other applicable insurers. *Id. at 936*.

Royal's other insurance clause is a "super escape" clause. Liberty argues that the Royal policy is not a "super escape clause" because unlike the clause in New Hampshire, Royal's other insurance clause does not contain the words "does not apply." It is true that the clause at issue in New Hampshire included the "does not apply" language. But the *New Hampshire* court did not indicate that those words were requisite components of a "super escape" clause. And other courts have suggested that the "super escape" characterization encompasses other insurance clauses as long as they specify that they are excess to all other applicable insurance, "whether

primary, excess or contingent." See *Brown v. Travelers Ins. Co., 610 A.2d 127, 129 (R.I. 1992)* (noting that operative language is "whether primary, excess, or contingent"); see also *Bowers v. Alamo Rent-A-Car, Inc., 88 Haw. 274, 283, 965 P.2d 1274 (1998)* (Ramil, J., concurring) (stating that insurance clause that provides that "[i]f there is no other valid and collectible insurance, whether [*16] primary, excess, or contingent, available to the renter of any authorized driver while operating the car, then [this policy] shall pay damages not to exceed minimum limits" is a "super escape" clause); APPLEMAN, INSURANCE LAW & PRACTICE § 4906 (1981) (giving examples of super escape clauses). Royal's "other insurance" clause therefore qualifies as a "super escape" clause.

Even if Royal's other insurance clause does not contain the exact words required for "super escape" status, the clause nevertheless operates to make Royal's CGL policy excess to Liberty's policy. The CGL policy states that it is excess "over any of the other insurance, whether primary, excess, contingent or on any other basis . . . [i]f the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I)." There is no question here that the loss arises out of the use of an auto and that the loss is not subject to Exclusion g. of Coverage A. n2 The terms of the policy make Royal's coverage excess to Liberty's coverage.

> n2 Exclusion g of Coverage A excludes coverage for bodily injury or property damage arising out of the use of an auto owned or rented by the insured.

[*17]

The Court notes Liberty's argument that the Liberty policy specifies that "[n]othing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of [other applicable] insurance." Liberty argues that a decision that Royal's "other insurance" clause trumps Liberty's would contradict Liberty's intent because it would make the Liberty policy subject to the terms of the Royal policy. Although it is difficult to reconcile opposing other insurance clauses, the Court finds that under *New Hampshire*, the Royal other insurance clause effectively avoids coverage until all other insurance, including excess insurance, has been exhausted.

Liberty also argues that Royal should be estopped from relying on its other insurance clause because "Royal acknowledged the defense of Genie at the outset and waited four years, or until August 12, 2005, to issue a reservation of rights letter to Genie."

The Washington Supreme Court has held that estoppel is the appropriate remedy for an insurer's bad faith conduct. *Safeco Ins. Co. v. Butler, 118 Wn.2d 383, 394, 823 P.2d 499 (1992)*. An insurer may therefore not deny coverage where it has [*18] acted in bad faith. In Saunders v. Lloyds of London, the Washington Supreme Court explained the elements of an estoppel claim in the insurance context:

Equitable estoppel focuses on the insured's justifiable reliance. It has three elements:

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.
>
> Additionally, in some contexts it requires that the party claiming injury by conduct of another have no knowledge of the true facts or no means of acquiring the facts. The reliance must be reasonable, but estoppel can arise by silence when one has a duty to speak out.

*Saunders v. Lloyd's of London, 113 Wn.2d 330, 340, 779 P.2d 249 (1989)* (en banc) (internal citations omitted). Using this analysis, Liberty's argument fails. Under the plain terms of Royal's policy, Royal's coverage was not triggered until Genie had exhausted the self-insured retention. The CGL policy specifically states that "[e]xpenses [*19] incurred in the investigation, settlement or defense of a claim . . . are . . . included in the [r]etained limit." (Emphasis added). The policy also states that Royal has the right (but not the duty, as Royal points out) in all cases to assume charge of the defense of any claim where the insured's liability is reasonably expected to exceed the self-insured retention. Because Royal was not under any contractual duty to issue a

reservation of rights letter, it did not act in a way that is inconsistent with its present position. And even if its inaction could be construed as being inconsistent with its present position, Liberty has not asserted that it acted in reliance on that action or that it was harmed, nor has it provided any evidence suggesting as much.

Liberty cites only one case - Transamerica Insurance Group v. Chubb & Son - in support of its argument. In Transamerica, an insured covered by multiple insurers suffered a covered loss. *Transamerica Ins. Group v. Chubb & Son, Inc., et al.,16 Wn. App. 247, 248, 554 P.2d 1080 (1976)*. One of the insurers - Federal - immediately accepted the defense without reservation and proceeded to conduct the defense [*20] for ten months. *Id. at 249*. After ten months, Federal denied coverage. Id. The court reasoned that Federal could not deny liability for three reasons: (1) by undertaking the defense, Federal deprived the insured of their right to retain private counsel; (2) the party who will eventually pay has the right to arrange the investigation, settlement negotiations, and conduct of the law suit; and (3) there was a potential conflict of interest in that Federal may have been conducting the defense while simultaneously building up its own case *against* providing coverage for the insured. *Id. at 251-52*. The court held that Federal prejudiced the insured by conducting the defense and then denying coverage and that Federal was therefore estopped from denying coverage vis-a-vis the insured. *Id. at 252*.

In this case, Royal never accepted or conducted the defense. Its actions therefore did not prejudice Liberty. Royal is therefore not estopped from asserting its other insurance clause against Liberty.

Because Royal is not estopped from relying on its other insurance clause and because its other insurance clause effectively avoids coverage [*21] until all other insurance is exhausted, Royal is not required to indemnify Genie in this case until the Liberty coverage has been exhausted. Because the $ 3,000,000 not covered by Federal in the Pierce settlement is within the limits of the Liberty policy, Liberty must pay that $ 3,000,000. Liberty must therefore reimburse Genie the $ 500,000 Genie contributed to the settlement and must reimburse Royal the $ 1,750,000 Royal contributed to the settlement.

**2. Liberty is Not Responsible for Royal's Attorney's Fees.**

Royal argues that because it paid on behalf of Genie amounts that Liberty should have paid under Liberty's policy, Royal is entitled to recovery its attorneys' fees in this coverage dispute under Olympic Steamship Co. v. Centennial Insurance Co. In Olympic Steamship, the Washington Supreme Court held that an insured has the "right . . . to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured." *Olympic Steamship, 117 Wn.2d 37, 52, 811 P.2d 673 (1991)*. In McRory v. Northern Insurance Co. of New York, the Washington Supreme Court expanded the holding of Olympic Steamship [*22] and held that where a primary insurer should have defended and indemnified an underlying lawsuit in which the insured was defended by the excess insurer, the insured could recover from the primary insurer attorney's fees that would then be reimbursed to the excess insurer. *McRory v. Northern Ins. Co. of New York, 138 Wn.2d 550, 560-61, 980 P.2d 736 (1999)*. The McRory Court reasoned that such a rule was necessary to discourage foot dragging and vexatious litigation by insurers, to encourage the prompt payment of claims, and to prohibit an insurer who improperly refused coverage from profiting by the insured's foresight to have other insurance protection. *Id. at 559-60*.

Royal does not deserve attorneys' fees under McRory or Olympic Steamship. First, unlike the excess insurer in *McRory*, Royal did not defend Genie in this matter. Second, *Olympic Steamship* and *McRory* speak to an insured's right to recover attorney's fees, not an insurer's right. And third, the purposes underlying McRory - the prompt payment of claims and avoidance of vexatious litigation - would not be served by awarding Royal fees. Royal did not promptly [*23] indemnify Genie once it realized that Genie had nearly exhausted the self-insured retention; instead, Royal denied coverage. Liberty is therefore not required to pay Royal's attorneys' fees or costs.

**C. Summary Judgment on Genie's Motion**

Genie has moved for summary judgment against Liberty arguing that Liberty is liable for the $ 500,000 payment Genie made in the Pierce settlement and that Liberty must make this indemnity payment before it is entitled to seek recovery of such an amount from Royal. Genie also argues in its motion that it is entitled to attorneys' fees from Liberty.

Because the Court has already decided that Liberty is

Case 1:04-cv-11109-RGS    Document 52-2    Filed 02/01/2007    Page 10 of 11

Page 9
2006 U.S. Dist. LEXIS 78193, *23

responsible for the $ 3,000,000 remaining contribution to the settlement, the issue of whether Liberty should indemnify Genie before settling its coverage dispute with Royal is moot.

Nevertheless, Genie is entitled to Olympic Steamship attorneys' fees and costs from Liberty. Liberty has refused to pay even though it is contractually required to cover Genie's loss excess to that covered by Federal. Liberty is therefore responsible for Genie's attorneys' fees. See *Olympic Steamship, 117 Wn.2d at 52*.

Genie may file a motion [*24] for attorneys' fees and costs. Liberty has raised an issue about the period of time for which it may owe attorneys' fees. The Court will consider whether Liberty should reimburse all or just a portion of Genie's attorneys' fees when it considers Genie's motion for fees and costs.

### D. Summary Judgment on Royal's Motion

Royal moves for summary judgment against Genie, arguing that Genie's breach of contract, bad faith, and estoppel claims against Royal should be dismissed. Genie has made clear that if the Court determines that Liberty is liable for Genie's $ 500,000 contribution and Genie's attorneys' fees and costs, "Genie's contract claims against Royal can be dismissed."

Because the Court has decided that Liberty is liable for Genie's $ 500,000 contribution, attorneys' fees, and costs, the Court dismisses, per Genie's request, Genie's breach of contract, bad faith, and estoppel claims against Royal.

### Conclusion

For these reasons, the Court DENIES Liberty's motion for summary judgment against Royal regarding priority of coverage, and GRANTS in part and DENIES in part Royal's cross-motion for summary judgment against Liberty regarding priority of coverage. The Court GRANTS [*25] in part and DENIES in part Genie's motion for summary judgment against Liberty regarding Liberty's duty to indemnify. And the Court GRANTS Royal's motion for summary judgment regarding Genie's claims against Royal. Liberty is required to reimburse Genie the $ 500,000 Genie contributed to the Pierce settlement and reimburse Royal the $ 1,750,000 Royal contributed to the Pierce settlement. Liberty is also responsible for Genie's attorneys' fees. Genie must file its motion for attorneys' fees within fourteen (14) calendar days of the date of this Order. The parties shall file a notice within ten (10) days of this Order informing the Court whether any further issues, other than the attorneys' fees and costs issue referenced above, remain in this litigation.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 26th day of October, 2006.

Marsha J. Pechman

United States District Judge

1307QH

\*\*\*\*\*\*\*\*\*\* Print Completed \*\*\*\*\*\*\*\*\*\*

Time of Request: Thursday, February 01, 2007   12:15:15 EST

Print Number:    1841:9984197
Number of Lines: 387
Number of Pages: 9

Send To:  FRIM, GERALD
          MCCORMACK FIRM LLC
          1 INTERNATIONAL PL
          BOSTON, MA 02110-2602